1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PROVIDENCE PUBLICATIONS, LLC, a California limited liability company;<br><br>    Plaintiff,<br><br>    v.<br><br>NBCUNIVERSAL MEDIA, LLC, a Delaware limited liability company,<br><br>    Defendant. | Case ID.: 2:23-cv-08551-HDV-SK<br><br>Assigned to Hon. Hernán D. Vera<br><br>**DEFENDANT NBCUNIVERSAL MEDIA, LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT;**<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES;**<br><br>**DEFENDANT'S REPLY**<br><br>DATE:  February 20, 2025<br>TIME:  10:00 a.m.<br><br>Discovery Cut-off:  December 2, 2024<br><br>Trial Date:  May 27, 2025 |

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Loeb & Loeb LLP
A Limited Liability Partnership
Including Professional
Corporations

240638071.11
231389-10014

CASE NO. 2:23-CV-08551-HDV-SK
NBCU'S MOTION FOR SUMMARY JUDGMENT

# <u>TABLE OF CONTENTS</u>

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ........................................... 1

I.     INTRODUCTION ........................................................................... 1

II.    FACTUAL BACKGROUND .......................................................... 2

    A.     Providence Promotes The Cal-OSHA Reporter, Promising That It "May Be Forwarded" On A Not-For-Profit Basis. ........................ 2

    B.     Providence Never Communicates Any Other License Terms. ............... 3

    C.     Providence Does Not Disclose That It Tracks Customer Emails. .......... 5

    D.     After Years Of Encouraging Not-For-Profit Forwarding And Tracking Those Forwards, Providence Begins Suing Its Customers. .................... 6

    E.     Providence Fails To Secure Proper Copyright Protection For The Cal-OSHA Reporter. ........................................................... 7

    F.     Providence's Harassing And Improper Litigation Tactics. ................... 8

III.   ARGUMENT ................................................................................ 11

    A.     Summary Judgment Is Appropriate In This Case ................................ 11

    B.     Providence's Infringement Claim Fails Because It Unequivocally Granted NBCU A License To Engage In The Conduct At Issue. ........ 11

        1.     Providence's License To NBCU Allows Forwarding. ............... 12

        2.     Providence Granted NBCU An Implied License That Permitted Forwarding. ............................................................... 15

    C.     Providence Is Estopped From Asserting An Infringement Claim. ....... 19

    D.     Providence's Claim Is Barred By The Doctrine Of Unclean Hands. .... 20

    E.     Providence's Claims Are Barred By The Statute Of Limitations. ....... 21

    F.     Providence Cannot Recover For Untimely Registered Works. ............ 24

IV.    CONCLUSION ............................................................................. 24

**PLAINTIFF'S OPPOSITION** ........................................................... 25

I.     INTRODUCTION ......................................................................... 25

II.    LEGAL STANDARD .................................................................... 27

Loeb & Loeb LLP
A Limited Liability Partnership
Including Professional
Corporations

240638071.11
231389-10014

i

CASE NO. 2:23-CV-08551-HDV-SK
NBCU'S MOTION FOR SUMMARY JUDGMENT

III.   ARGUMENT ........................................................................................... 28

    A.    Providence Did Not Grant NBC An Express License to Forward the COR Publication. .................................................................................... 28

    B.    Providence Did Not Grant NBC An Implied License That Permitted Forwarding. .......................................................................................... 32

    C.    NBC'S Estoppel Defense Should Be Dismissed As A Matter of Law. 36

    D.    Providence's Claim Is Not Barred By The Doctrine Of Unclean Hands. ..................................................................................................... 39

    E.    There is a Question of Fact as to Whether Providence's Claims Are Barred By The Statute Of Limitations. ................................................... 40

    F.    Providence Is Not Pursuing Statutory Damages For Works That Were Registered More Than Three Months From Publication. ...................... 46

IV.   CONCLUSION ....................................................................................... 47

**DEFENDANT'S REPLY** ......................................................................... 48

I.   INTRODUCTION ...................................................................................... 48

II.   ARGUMENT ............................................................................................ 48

    A.    Providence Presents No Evidence That Forwarding Was Not Permitted Under The Express License. .............................................................. 48

    B.    Providence Fails To Negate The Existence Of An Implied License.... 51

    C.    Providence Fails To Present Facts To Invoke The Discovery Rule. ..... 52

    D.    NBCU Is Entitled To Summary Judgment On Its Estoppel Defense... 56

    E.    NBCU Is Entitled To Summary Judgment On Unclean Hands. ........... 56

    F.    Providence Does Not Dispute That It Failed To Timely Register. ...... 57

III.   CONCLUSION ....................................................................................... 57

Loeb & Loeb LLP
A Limited Liability Partnership
Including Professional
Corporations

240638071.11
231389-10014

ii

CASE NO. 2:23-CV-08551-HDV-SK
NBCU'S MOTION FOR SUMMARY JUDGMENT

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 ...................................................................................... 11, 27, 28

*In re Apple Computer Sec. Litig.*,
886 F.2d 1109 (9th Cir. 1989) ........................................................................ 11

*Asset Mktg. Sys. v. Gagnon*,
542 F.3d 748 (9th Cir. 2008) ...................................................................... 14, 50

*Bangkok Broad. & T.V. Co. v. IPTV Corp.*,
742 F. Supp. 2d 1101 (C.D. Cal. 2010) .......................................................... 36

*Bean v. Pearson Educ., Inc.*,
949 F. Supp. 2d 941 (D. Ariz. 2013) .............................................................. 35

*Blue Ridge Ins. Co. v. Stanewich*,
142 F.3d 1145 (9th Cir. 1998) ........................................................................ 11

*Bourne v. Walt Disney Co.*,
68 F.3d 621 (2d Cir. 1995) ........................................................................ 12, 48

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ........................................................................................ 11

*Dollar Sys., Inc. v. Avcar Leasing Sys., Inc.*,
890 F.2d 165 (9th Cir. 1989) .......................................................................... 39

*Dream Games of Arizona, Inc. v. PC Onsite*,
561 F.3d 983 (9th Cir. 2009) .......................................................................... 39

*Eastman Kodak Co. v. Image Tech. Servs., Inc.*,
504 U.S. 451, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992) .................................. 28

*Eid v. Alaska Airlines, Inc.*,
621 F.3d 858 (9th Cir. 2010) .......................................................................... 41

Loeb & Loeb LLP
A Limited Liability Partnership
Including Professional
Corporations

240638071.11
231389-10014

iii

CASE NO. 2:23-CV-08551-HDV-SK
NBCU'S MOTION FOR SUMMARY JUDGMENT

*Eight Mile Style, LLC v. Spotify USA Inc.*,
No. 3:19-cv-0736, 2024 U.S. Dist. LEXIS 145597 (M.D. Tenn.
Aug. 15, 2024) ................................................................................. 20

*El-Shawary v. U.S. Bank Nat'l Ass'n*,
No. 21-36011, 2022 U.S. App. LEXIS 34636 (9th Cir. Dec. 15,
2022) ................................................................................................. 54

*Energy Intel. Grp., Inc. v. Kayne Anderson Cap. Advisors, L.P.*,
948 F.3d 261 (5th Cir. 2020) ........................................................... 31

*Entous v. Viacom Int'l, Inc.*,
151 F. Supp. 2d 1150 (C.D. Cal. 2001) ........................................... 40

*Evox Prods. LLC v. Kayak Software Corp.*,
No. 15-cv-5053, 2017 WL 5634858 (C.D. Cal. Apr. 4, 2017) .......... 36

*Evox Prods. LLC v. Yahoo, Inc.*,
No. 22-cv-2907, 2023 WL 5506894 (C.D. Cal. July 28, 2023) ......... 32

*Experexchange, Inc. v. Doculex, Inc.*,
No. 08-cv-03875, 2009 WL 3837275 (N.D. Cal. Nov. 16, 2009) ...... 33

*ExperExchange, Inc. v. Doculex, Inc.*,
No. C-08-03875 JCS, 2009 U.S. Dist. LEXIS 112411 (N.D. Cal.,
Nov. 16, 2009) .................................................................. 17, 33, 34

*Field v. Google, Inc.*,
412 F. Supp.2d 1106 (D. Nev. 2006) ......................................... *passim*

*Free Speech Sys., LLC v. Menzel*,
390 F. Supp. 3d 1162 (N.D. Cal. 2019) ...................................... 41, 53

*Great Minds v. Office Depot, Inc.*,
945 F.3d 1106 (9th Cir. 2019) ................................................... 11, 12

*Hampton v. Paramount Pictures Corp.*,
279 F.2d 100 (9th Cir. 1960) ............................................ 37, 38, 56

*Interscope Records, Motown Record Co., L.P. v. Time Warner, Inc.*,
No. CV 10-1662 SVW, 2010 U.S. Dist. LEXIS 151460 (C.D. Cal.
June 28, 2010) ................................................... 15, 20, 52, 57

Loeb & Loeb LLP
A Limited Liability Partnership
Including Professional
Corporations

240638071.11
231389-10014

iv

CASE NO. 2:23-CV-08551-HDV-SK
NBCU'S MOTION FOR SUMMARY JUDGMENT

*Interscope Recs. v. Time Warner, Inc.*,
  No. 10-cv-1662, 2010 WL 11505708 (C.D. Cal. June 28, 2010) .......... 32, 33, 36

*Keane Dealer Servs., Inc. v. Harts*,
  968 F. Supp. 944 (S.D.N.Y. 1997) ........................................................ 15, 16, 33

*Keilholtz v. Lennox Hearth Prods.*,
  No. C 08-00836 CW, 2009 U.S. Dist. LEXIS 81108 (N.D. Cal. Sept.
  8, 2009) .................................................................................................... 22, 53

*Kuhmstedt v. Enttech Media Grp., LLC*,
  2022 WL 1769126 (C.D. Cal. Apr. 11, 2022) ................................................... 44

*In re Lua*,
  529 B.R. 766 (Bankr. C.D. Cal.), *aff'd*, 551 B.R. 448 (C.D. Cal.
  2015), *rev'd and remanded on other grounds*, 692 F. App'x 851 (9th
  Cir. 2017) ........................................................................................................ 37

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986) ......................................................................................... 11

*Mavrix Photo, Inc. v. Rant Media Network, LLC*,
  2020 WL 8028098 (C.D. Cal. Nov. 2, 2020) ..................................................... 41

*Mavrix Photo, Inc. v. Rant Media Network, LLC*,
  No. CV 19-7270-DMG, 2020 U.S. Dist. LEXIS 248485 (C.D. Cal.
  Nov. 2, 2020) ................................................................................................... 53

*MDY Industries, LLC v. Blizzard Ent., Inc.*,
  629 F.3d 928 (9th Cir. 2010) ............................................................................ 12

*Media Rts. Techs., Inc. v. Microsoft Corp.*,
  922 F.3d 1014 (9th Cir. 2019) ..................................................................... 31, 42

*Meyer v. Benko*,
  55 Cal.App.3d 937 (1976) .......................................................................... 13, 52

*Minden Pictures, Inc. v. Complex Media, Inc.*,
  No. 22-CV-4069 (RA), 2023 U.S. Dist. LEXIS 52070 (S.D.N.Y.
  Mar. 27, 2023) .................................................................................... 22, 23, 55

*Netbula, LLC v. Bindview Dev. Corp.*,
  516 F. Supp. 2d 1137 (N.D. Cal. 2007) ........................................... 48, 49, 50, 54

Loeb & Loeb LLP
A Limited Liability Partnership
Including Professional
Corporations

240638071.11
231389-10014

v

CASE NO. 2:23-CV-08551-HDV-SK
NBCU'S MOTION FOR SUMMARY JUDGMENT

*Oracle Am., Inc. v. Hewlett Packard Enter. Co.*,
   No. 16-cv-01393, 2017 WL 2311296 (N.D. Cal. May 26, 2017)......................39

*Payless Shoesource, Inc. v. Joye*,
   No. 2:12-cv-00517-MCE-DAD, 2014 U.S. Dist. LEXIS 14372 (E.D.
   Cal. Feb. 4. 2014) ..........................................................................................19

*Polar Bear Prods., Inc. v. Timex Corp.*,
   384 F.3d 700 (9th Cir. 2004)..........................................................................46

*Precision Airmotive Corp. v. Rivera*,
   288 F. Supp. 2d 1151 (W.D. Wash. 2003) ..................................................53, 55

*Saaremets v. Whirlpool Corp.*,
   No. S-09-2337 FCD/EFB, 2010 U.S. Dist. LEXIS 26165, at *17-18
   (E.D. Cal. Mar. 18, 2010)...............................................................................55

*Saaremets v. Whirlpool Corp.*,
   No. S-09-2337 FCD/EFB, 2010 U.S. Dist. LEXIS 26165, at *17-18
   (E.D. Cal. Mar. 18, 2010)...........................................................................22, 23

*Smothers v. BMW of N. Am., LLC*,
   No.: 18-CV-1391-CAB-AGS, 2019 U.S. Dist. LEXIS 89160 (S.D.
   Cal. May 28, 2019)....................................................................................22, 55

*Starz Ent., LLC v. MGM Domestic Television Distribution, LLC*,
   510 F. Supp. 3d 878 (C.D. Cal. 2021), *aff'd*, 39 F.4th 1236 (9th Cir.
   2022)................................................................................................................44

*Starz Enter., LLC v. MGM Domestic Television Dist., LLC*,
   39 F.4th 1236 (9th Cir. 2022) ....................................................................21, 40

*Stevens v. Corelogic, Inc.*,
   194 F. Supp.3d 1046 (S.D. Cal. 2016) ........................................................15, 16

*Stokes v. Honeydu, Inc.*,
   No. 22-cv-5598, 2023 WL 2628685 (C.D. Cal. Feb. 9, 2023) .........................43

*Sun Microsystems, Inc. v. Microsoft Corp.*,
   188 F.3d 1115 (9th Cir. 1999).........................................................................12

*Synoptek, LLC v. Synaptek Corp.*,
   309 F. Supp. 3d 825 (C.D. Cal. 2018).............................................................27

Loeb & Loeb LLP
A Limited Liability Partnership
Including Professional
Corporations

240638071.11
231389-10014

vi

CASE NO. 2:23-CV-08551-HDV-SK
NBCU'S MOTION FOR SUMMARY JUDGMENT

*T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n,*
    809 F.2d 626 (9th Cir. 1987) ........................................................................ 28

*Taylor Holland LLC v. MVMT Watches, Inc.,*
    No. 2:15-cv-03578, 2016 WL 6892097 (C.D. Cal. Aug. 11, 2016) ...... 39, 40, 57

*Taylor Holland LLC v. MVMT Watches, Inc.,*
    No. 2:15-cv-03578-SVW-JC, 2016 U.S. Dist. LEXIS 187379 (C.D.
    Cal. Aug. 11, 2016) ................................................................................... 56

*UMG Recordings, Inc. v. Glob. Eagle Ent., Inc.,*
    2016 WL 3457179 (C.D. Cal. Apr. 20, 2016) .............................................. 40, 41

*United States v. Diebold, Inc.,*
    369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962) ........................................... 28

*United States v. Garan,*
    12 F.3d 858 (9th Cir. 1993) ........................................................................ 36

*Warner Chappell Music, Inc. v. Nealy,*
    601 U.S. 366 (2024) (J. Gorsuch dissenting) ...................................................... 21

*Westhoff Vertriebsges mbH v. Berg,*
    No. 22-cv-0938, 2023 WL 5811843 (S.D. Cal. Sept. 6, 2023) ......................... 35

**Statutes**

17 U.S.C. § 404 ........................................................................................................ 37

17 U.S.C. § 412 ................................................................................................... 8, 24

17 U.S.C. § 507(b) ............................................................................................. 21, 41

**Court Rules**

Fed. R. Civ. P. 30(b)(6) ...................................................................................... 10, 27

Fed. R. Civ. P. 56 ................................................................................................ 11, 27

Fed. R. Civ. P. 56(c) ........................................................................................... 11, 27

**Other Authorities**

Milgrim on Licensing § 5.41 (2010) ........................................................................ 15

Loeb & Loeb LLP
A Limited Liability Partnership
Including Professional
Corporations

240638071.11
231389-10014

vii

CASE NO. 2:23-CV-08551-HDV-SK
NBCU'S MOTION FOR SUMMARY JUDGMENT

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

The facts of this case are very simple.  Plaintiff Providence Publications, LLC ("Providence") told its customers, including Defendant NBCUniversal Media, LLC ("NBCU"), that they could forward the Cal-OSHA Reporter.  Providence solicited NBCU for years in an attempt to convince NBCU to purchase a license to the Cal-OSHA Reporter, which costs a few hundred dollars per year and contains factual summaries of administrative decisions and regulations.  Providence affirmatively and repeatedly represented that: "The Cal-OSHA Reporter may be forwarded, copied or distributed," so long as it was not "distributed for profit."  Consistent with its pre-contract communications, after NBCU purchased a license, Providence continued to tell NBCU's employees receiving the Cal-OSHA Reporter that "The Cal-OSHA Reporter may be forwarded, copied or distributed."

Providence never told NBCU otherwise.  However, at some point in the decade before the filing of this lawsuit, Providence changed its mind and decided that it no longer permitted forwarding of the Cal-OSHA Reporter.  However, instead of communicating with NBCU, Providence sat back and collected data about NBCU's use of the Cal-OSHA Reporter without ever disclosing it, and then (many years later) retained counsel to assert claims that are entirely reliant on an argument that the very use they encouraged and expressly permitted constitutes "copyright infringement."

This lawsuit falls far short of good faith litigation.  Providence never disclosed to the Court that it had repeatedly provided NBCU, and its other customers, express written permission to forward the Cal-OSHA Reporter, nor was Providence able to produce a single document communicating that forwarding was restricted by the terms of its license (and Judge Kim ordered Providence to produce all such documents).  Providence's conduct throughout discovery – which includes refusing

Loeb & Loeb LLP
A Limited Liability Partnership
Including Professional
Corporations

240638071.11
231389-10014

1

CASE NO. 2:23-CV-08551-HDV-SK
NBCU'S MOTION FOR SUMMARY JUDGMENT

1  to appear for a single noticed deposition without even serving objections – is clearly
2  designed to make litigation costly, burdensome, and unproductive.

3      Providence's claims are self-evidently barred for a host of legal reasons,
4  including the existence of an express license and/or implied license, estoppel, unclean
5  hands and expiration of the statute of limitations. The Court should dismiss this action.

6  **II.  FACTUAL BACKGROUND**

7      **A.  Providence Promotes The Cal-OSHA Reporter, Promising That It**
8         **"May Be Forwarded" On A Not-For-Profit Basis.**

9      Providence operates a website (located at www.cal-osha.com) that provides
10  factual reports on happenings in occupational health and safety laws and regulations,
11  as well as administrative decisions by the California Division of Occupational Safety
12  and Health (known as "Cal/OSHA").  Statement of Undisputed Facts ("SUF") 1.  In
13  addition to maintaining its website, Providence also regularly sends email news
14  bulletins to professionals working in occupational health and safety roles with
15  Cal/OSHA updates.  SUF 2.  In its bulletins, Providence solicits sales of "site licenses"
16  and Providence's weekly publication called the Cal-OSHA Reporter.  SUF 3.

17      For years, Providence sent such solicitations to Defendant NBCU and others.
18  SUF 4.  On December 21, 2012, Providence sent an email with the subject line "Cal-
19  OSHA Reporter News Digest" to NBCU's Laura Tankenson.  SUF 5.  The email
20  states:

21         The News Digest provides daily, comprehensive access to
22         important events in the world of occupational health and
       safety.  Our editors seek out the most interesting and timely
23         stories, compile them in an easy-to-navigate format and
       provide one-click access to the source.  Timely California
24         news and other original content are covered in our premium
       edition.  Cal-OSHA Reporter, since 1972, is the most
25         widely read publication in occupational safety and health in
       California.

26  *Id.*  The email also says, "Don't miss out on exclusive news in our premium edition,"
27  followed by a hyperlinked "Subscribe Now!"  *Id.*  It contains hyperlinks labeled

28

Loeb & Loeb LLP
A Limited Liability Partnership
Including Professional
Corporations

240638071.11
231389-10014

2

CASE No. 2:23-Cv-08551-HDV-SK
NBCU'S MOTION FOR SUMMARY JUDGMENT

"Email to a Colleague" and "Get Your Own." *Id.* The email concludes with another solicitation: "Visit www.cal-osha.com/subscribe.aspx to order the premium version of the Cal-OSHA Reporter … **The Cal-OSHA Reporter may be forwarded, copied or distributed.**" *Id.* Ms. Tankenson, who worked in a health and safety role at NBCU, forwarded the email to her team, pointing to a news item and noting, "FYI – a couple of interesting articles."  SUF 6.

This type of solicitation – asking customers to sign up for the Cal-OSHA Reporter with the representation that it could be forwarded and copied so long as the recipient did not do so for profit – was not uncommon.  SUF 7.  In fact, Providence had sent Ms. Tankenson another email several months earlier with a "Flash Report" news blurb, also promoting the Cal-OSHA Reporter and, again stating that "**The Cal-OSHA Reporter may be forwarded, copied or distributed.**" SUF 8.

**B.    Providence Never Communicates Any Other License Terms.**

On February 19, 2013, after Ms. Tankenson received yet another email from Providence promoting the Cal-OSHA Reporter and again promising that "**The Cal-OSHA Reporter may be forwarded, copied or distributed,**" (SUF 9), Ms. Tankenson forwarded the email to her team and noted: "Several interesting articles. Also, based on your votes/feedback, I will be getting a membership for the Cal-OSHA reporter." SUF 10.

When users go to Providence's website, Providence refers to its "premium" content as a "Site License." SUF 11.  Providence advertises that there are "significant discounts for multiple user licenses," and then provides annual pricing based on the number of site "members."  SUF 12.  After receiving the February 19, 2013 email, NBCU purchased a license.  SUF 13.  NBCU made a senior employee on each of the production, TV station, corporate, studio lot, and theme park employee health and safety teams the "members" with accounts to access the password-protected sections of Providence's website, as those were the individuals who might need and be

Loeb & Loeb LLP
A Limited Liability Partnership
Including Professional
Corporations

240638071.11
231389-10014

3

Case No. 2:23-Cv-08551-HDV-SK
NBCU'S MOTION FOR SUMMARY JUDGMENT

interested in the more detailed information contained in the "premium" content. SUF 14. NBCU's site members received accounts with passwords to access Providence's website, and did not share those log-in (nor does Providence allege there was any password sharing or unauthorized site access by NBCU). SUF 15-17.

Providence sends site members (including those at NBCU) issues of the Cal-OSHA Reporter. SUF 18-19. For each issue of the Cal-OSHA Reporter, it sends members an electronic "Cal-OSHA Reporter Premium Summary Version" and a PDF version. *Id.* From 2013 until June 30, 2017, Providence's emails transmitting the "Cal-OSHA Reporter Premium Summary Version" **confirmed** what was stated in its solicitations, *i.e.* that the "**Cal-OSHA Reporter may be forwarded, copied or distributed**..." SUF 20.

The employees at NBCU who had password-protected access to Providence's website and received the Cal-OSHA Reporter believed that the only restriction on the license was the use of their login for the website (for which they never shared their password), and that they were permitted to forward and share the Cal-OSHA Reporter with their colleagues. SUF 21. At no point after NBCU purchased its site license did **anyone** from Providence ever send any other license terms or conditions. SUF 22. No one at Providence ever communicated to NBCU, be it in writing, in person, on the phone or otherwise, that forwarding the Cal-OSHA Reporter was not permitted under NBCU's license, that Providence ever modified the scope of NBCU's license, or that Providence changed its policy permitting forwarding. SUF 23. While Providence appears to have surreptitiously stopped including the statement that the "Cal-OSHA Reporter may be forwarded, copied or distributed" in its post-June 2017 email messages to its customers, it never replaced that statement with anything that told NBCU that its license terms had changed, or that the Cal-OSHA Reporter could no longer be forwarded, or otherwise communicated this to NBCU. *Id.* When purchasing or renewing the license, Providence did not require NBCU to accept any

Loeb & Loeb LLP
A Limited Liability Partnership
Including Professional
Corporations

240638071.11
231389-10014

4

CASE NO. 2:23-CV-08551-HDV-SK
NBCU'S MOTION FOR SUMMARY JUDGMENT

terms and conditions that said forwarding was not permitted.  SUF 24.  In fact, to this day, the "Terms and Conditions" section of Providence's website remains blank, perhaps intentionally so.  SUF 25.  Accordingly, NBCU's site members did not share their log-in information for the password-protected sections of Providence's website and, they had no reason to believe there was a restriction on forwarding any of the many email blasts that they regularly received from Providence.  SUF 16, 20-23.

**C.**     **Providence Does Not Disclose That It Tracks Customer Emails.**

Providence asserts that the factual basis for its infringement claims in this case comes from "email data" which it collected using an "invisible .gif," commonly known as "tracking pixel," that it inserted into emails to its licensee's members.   SUF 26.  Providence alleges specifically that data collected from this tracking pixel shows unauthorized "forwarding" of the Cal-OSHA Reporter.  SUF 27.

In 2006, Providence began using a software called "Lyris," also known as "Aurea Email Marketing," to perform its marketing and delivery function for the Cal-OSHA Reporter.  SUF 28.  Providence used the Lyris software to create tracking pixels that collected data including email "deliverability, open, clickthrough, and forward metrics." SUF 29.  Lyris users, like Providence, "rely on the functionality of [Lyris's products] ListManager and ListHosting for email deliverability and tracking metrics…." SUF 30.  Lyris's basic functionality includes tracking forwards, and Lyris provides to users of its software, like Providence, training documentation which explains this tracking functionality.  SUF 30-31.

Providence never sent NBCU a copy of any privacy policy, let alone one disclosing that it was collecting email tracking data, and did not produce any privacy policies during discovery in this case.  SUF 32.  Nevertheless, Providence used Lyris to embed invisible pixels into its emails to NBCU's members and to collect data from them beginning no later than 2013.  SUF 33.

Loeb & Loeb LLP
A Limited Liability Partnership
Including Professional
Corporations

240638071.11
231389-10014

5

CASE NO. 2:23-CV-08551-HDV-SK
NBCU'S MOTION FOR SUMMARY JUDGMENT

1   In short, Providence: (1) affirmatively purchased and used Lyris software,
2   which promotes its ability to track email deliverability metrics; (2) used that software
3   to embed invisible tracking pixels into its emails to NBCU; and (3) since at least 2013,
4   was collecting data from those pixels about, among other things, any "forwards" of
5   its emails to NBCU, including those attaching the Cal-OSHA Reporter.

6   **D.    After Years Of Encouraging Not-For-Profit Forwarding And**
7   **Tracking Those Forwards, Providence Begins Suing Its Customers.**

8   In July of 2022, Providence sent a demand letter to NBCU alleging, for the very
9   first time, that NBCU's forwarding of the Cal-OSHA Reporter constituted copyright
10  infringement.  SUF 34.  This was the first time that Providence ever informed NBCU
11  that it believed forwarding of the Cal-OSHA Reporter was not permitted under the
12  license terms—and NBCU immediately ceased any such forwarding.  SUF 22-25, 35.
13  Providence did not acknowledge that it had previously stated the opposite (*i.e.* that
14  "The Cal-OSHA Reporter may be forwarded," (SUF 5, 7-9, 20)), nor why it had
15  waited nearly **ten years** to express that forwarding was not permitted despite tracking
16  "forwards" since before NBCU purchased a license.  SUF 26-30, 33.

17  NBCU later learned that Providence had begun making it a regular practice to
18  approach its customers with the surreptitiously acquired "email data," claim that the
19  data demonstrated forwarding activity which was not permitted under its licenses, and
20  threaten costly legal action unless their longtime customers paid Providence to
21  compensate it for alleged "infringement" far in excess of the actual license costs.  SUF
22  36.  In the past year or so alone, Providence has filed four such lawsuits in federal
23  court in California, and on information and belief, it has threatened litigation against
24  many others.  *Id.*[1]  Ultimately, despite the fact that Providence had been tracking

---

[1] When it filed its Complaint in this action, Providence failed to advise the Court that
the alleged "infringements" it was suing over involved conduct – forwarding the Cal-
OSHA Reporter – that was expressly sanctioned and encouraged by Providence.  SUF
37.  This issue was subsequently raised in the parties' joint report, and in the Initial
Scheduling Conference, where Providence's counsel falsely represented to the Court
that this was a "typo" and that no such solicitations and representations about the Cal-

Loeb & Loeb LLP
A Limited Liability Partnership
Including Professional
Corporations

240638071.11
231389-10014

6

CASE NO. 2:23-CV-08551-HDV-SK
NBCU'S MOTION FOR SUMMARY JUDGMENT

alleged "forwards" for the entirety of NBCU's license, and did not alert NBCU that it considered forwarding to constitute infringement until 2022, Providence filed the present action alleging infringement by NBCU dating back to January **2013**.

Even assuming that forwarding (which Providence **explicitly** told its customers was permitted) could be found to be infringement—Providence uses the threat of expensive litigation in an effort to extract excessive sums that bear no relationship to any possible damages. SUF 36. For example, Providence has represented to the Court in this action that it believes it is entitled to nearly **$14 million** in damages. SUF 43. But, the cost of having 33 site members with the purchase of a license (the largest number of "forwards" Providence alleges in this case) is merely $10,387 per year at present-day prices (and Providence's present-day prices are nearly double what they were just a few years ago when the alleged "infringement" occurred). SUF 44. In other words, Providence claims it has suffered damages that are hundreds of times any possible measure of injury even if Providence's claim had merit (which it does not).

**E.**    **Providence Fails To Secure Proper Copyright Protection For The Cal-OSHA Reporter.**

Despite Providence's attempts to sue NBCU and its other customers for infringement, it does not actually have copyright registrations that permit recovery of statutory damages for a sizeable portion of the works at issue. Providence's production of its copyright registrations in this case reveals that a meaningful

---

OSHA Reporter existed. SUF 38. When NBCU later presented evidence of such solicitations and representations in motion practice, Providence was forced to admit that such statements existed, but claimed it was a "typo" that only appeared in "free bulletins" and not in its messages to paid licensees. SUF 39. **This too was false.** SUF 40. After Magistrate Judge Steve Kim ordered Providence to produce communications containing its license terms to its paid customers, Providence produced **more than 1,100** emails where it represented the Cal-OSHA Reporter could be forwarded **including in emails specifically to its paid licensees receiving the Cal-OSHA Reporter.** *Id.* Further, Providence undeniably violated Rule 11 in its Complaint by stating that it told NBCU in 2020 that forwarding was no longer permitted. SUF 41. **This was a false allegation** – as Providence never called, emailed or contacted NBCU in 2020 to notify the company that forwarding was no longer acceptable. SUF 42.

Loeb & Loeb LLP
A Limited Liability Partnership
Including Professional
Corporations

240638071.11
231389-10014

7

CASE NO. 2:23-CV-08551-HDV-SK
NBCU'S MOTION FOR SUMMARY JUDGMENT

percentage of its applications were not submitted until after the three-month window provided by 17 U.S.C. § 412.  *See* SUF 45-50.  Accordingly, as discussed below, as a matter of law, it cannot recover statutory damages or attorneys' fees for any alleged infringement of such works.

**F.    Providence's Harassing And Improper Litigation Tactics.**

After this action was initiated, the parties each served document requests, responses and objections thereto, and began meeting and conferring on resolving the dispute.  SUF 51.  While those discussions were ongoing, the parties were also discussing matters relating to the Joint Rule 26(f) report.  SUF 52.  In those discussions, counsel for NBCU told counsel for Providence that it believed the case, even if meritorious (which it is not), could not possibly involve significant damages, should settle, and that the case "d[id] not warrant delaying mediation until after significant and costly discovery."  SUF 53.

At the initial scheduling conference on June 18, 2024, Providence asked Judge Vera to set the mediation deadline out for 2025, just before trial.  SUF 54.  However, Judge Vera did not agree to delay mediation and ordered the parties to mediate by December 15, 2024.  SUF 55.  After the scheduling conference, Providence ceased meeting and conferring with NBCU on discovery issues and ignored repeated attempts from NBCU to schedule mediation before the parties needed to incur significant costs in discovery motion practice.  SUF 56.

Eventually, on October 17, 2024, **five months** after the parties' last email regarding discovery issues (which Providence failed to respond to), and without having responded to any of NBCU's repeated inquiries about mediation, Providence served a discovery motion set to be heard just before the fact discovery cutoff—forcing the parties to engage in costly and entirely unnecessary and avoidable motion practice.  SUF 57.  Providence itself had not yet produced any documents at the time it brought its unprompted and delayed discovery motion.  SUF 58.

Loeb & Loeb LLP
A Limited Liability Partnership
Including Professional
Corporations

240638071.11
231389-10014

8

CASE NO. 2:23-CV-08551-HDV-SK
NBCU'S MOTION FOR SUMMARY JUDGMENT

At the hearing on the discovery motion, Judge Kim ordered Providence to produce: (a) its emails to customers saying the Cal-OSHA Reporter could be forwarded; (b) "the complete text of the copyright licensing terms or conditions . . . stating the scope and limitations on the use, sharing, or redistribution of the Cal-OSHA reporter that Providence claims (explicitly or implicitly) prevents the forwarding;" and (c) financial documents, with backup, "showing the annual gross revenues from subscriptions" by customers with a number of similar health and safety professionals as NBCU.  SUF 59.  Following this order, Providence produced more than **1,100** of examples of emails sent on a weekly basis stating that the "Cal-OSHA Reporter may be forwarded" provided that it is not done for profit.[2]  SUF 60.  This is the same language that Providence had previously told Judge Vera was a "typo."  SUF 38-39.  Providence also confirmed that it **never sent any communications or documents containing terms or conditions whatsoever** to any of its licensees stating forwarding was not permitted.  SUF 62.  Thus, the terms it provided in its other communications to NBCU were the only contract terms communicated by the parties.  SUF 63.

Providence also produced no financial documents at all demonstrating that it has generated any profits or revenues from subscriptions to the Cal-OSHA Reporter, and claimed the only documents responsive to part (c) of the order were a handful of

---

[2] After more than a year of vigorously asserting copyright infringement claims on 460 works from January 2013 through July 12, 2022, on the night before this Motion was due to be submitted to Providence, long after the time to amend the Complaint expired, weeks after the close of fact discovery, after causing both parties to occur significant attorneys' fees and only after being ordered to produce the smoking gun documents that confirmed that Providence had, in fact, spent years informing **all** of its licensees, (including in emails specifically to its "Paid Premium Subscribers") that "The Cal-OSHA Reporter" may be forwarded, Providence agreed that it could not recover damages for **more than half** of the alleged infringements it frivolously asserted in this case.  SUF 61.  In light of this belated admission, NBCU's motion must be, at a minimum, granted in part.  However, the fact that Providence admits it has no basis to claim infringement on pre-July 1, 2017 works only underscores the validity of NBCU's complete defenses for express and implied license, estoppel, and unclean hands, which are discussed in detail below.

Loeb & Loeb LLP
A Limited Liability Partnership
Including Professional
Corporations

240638071.11
231389-10014

9

CASE NO. 2:23-CV-08551-HDV-SK
NBCU'S MOTION FOR SUMMARY JUDGMENT

"invoices" to third parties.  SUF 64.  Those invoices confirm that Providence charges only a few hundred dollars annually for each member on a site license.  SUF 65.

Providence also refused to produce witnesses for duly-noticed depositions. SUF 66.  On November 6, 2024, NBCU served deposition notices for the deposition of a corporate representative pursuant to Fed. R. Civ. P. 30(b)(6), Providence's principal, Dale Debber, and one of its employees, Maria Galvez, for depositions to occur on November 18, 19, and 25 respectively.  SUF 67.  Providence did not serve objections to any of the deposition notices.  SUF 68.  On November 14, NBCU inquired about who would be appearing on behalf of Providence at the 30(b)(6) deposition and offered to provide information for remote access if the witnesses or counsel would not be appearing in person.  SUF 69.  Only after that inquiry did, Providence state that it would not be producing a witness at the deposition and thereafter refused to produce **any** of its witnesses at their duly-noticed depositions.[3] SUF 70.  Instead, Providence stated it would only agree to produce witnesses if NBCU would agree to a proposal to make multiple employees and multiple corporate representatives available for a Fed. R. Civ. P. 30(b)(6) deposition on **43** improper topics (several of which appear to not even be related to this case) during the week of Thanksgiving (including the day before and Friday and Monday after).  SUF 71.

In short – despite refusing to respond to emails regarding discovery meet and confer issues for five months, and deciding not to appear for its own noticed depositions, Providence served notices for five depositions on the *last* four court days (and one on a court holiday) before the close of fact discovery and during a holiday week when NBCU and counsel were unavailable.  Further, when NBCU asked Providence for a proposed deposition schedule, it did not provide one.  SUF 72.

---

[3] NBCU will object to any attempt by Providence to introduce declarations from Mr. Debber, Ms. Galvez, or any other corporate representative in support of its defense of this motion as Providence deliberately chose not to appear for depositions of these witnesses without service of objections.

Loeb & Loeb LLP
A Limited Liability Partnership
Including Professional
Corporations

240638071.11
231389-10014

10

CASE NO. 2:23-CV-08551-HDV-SK
NBCU'S MOTION FOR SUMMARY JUDGMENT

1    **III.    ARGUMENT**

2        **A.    Summary Judgment Is Appropriate In This Case**

3        Pursuant to Fed. R. Civ. P. 56, a party is entitled to summary judgment as a

4    matter of law when there is no genuine dispute as to any material fact.  *See* Fed. R.

5    Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248(1986);

6    *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *In re Apple Computer Sec. Litig*.,

7    886 F.2d 1109, 1112 (9th Cir. 1989).  A defendant satisfies its summary judgment

8    burden where evidence negates the existence of a material element of a claim or where

9    no evidence supports an essential element of the claim.  *Celotex*, 477 U.S. at 323-25.

10   The burden then shifts to the plaintiff.  *Id.*

11       To carry its burden the non-moving party "must do more than simply show that

12   there is some metaphysical doubt as to material facts."  *Matsushita Elec. Indus. Co.*

13   *v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986).  A party opposing summary

14   judgment may not simply rest on allegations in pleadings or other unsupported

15   assertions—it must designate ***specific evidence*** to show that there is a genuine issue

16   of material fact.  *See Celotex*, 477 U.S. at 324.  If the evidence presented by the party

17   opposing summary judgment is "merely colorable" or is not "significantly probative,"

18   summary judgment should be granted.  *Liberty Lobby*, 477 U.S. at 250–51.

19   Additionally, "[i]f the factual context makes the non-moving party's claim

20   implausible, then that party must come forward with more persuasive evidence than

21   otherwise would be necessary to show that there is a genuine issue for trial."  *Blue*

22   *Ridge Ins. Co. v. Stanewich*, 142 F.3d 1145, 1149 (9th Cir. 1998).

23       **B.    Providence's Infringement Claim Fails Because It Unequivocally**

24           **Granted NBCU A License To Engage In The Conduct At Issue.**

25       A claim for copyright infringement "fails if the challenged use of the work falls

26   within the scope of a valid license." *Great Minds v. Office Depot, Inc*., 945 F.3d 1106,

27   1110 (9th Cir. 2019).  "Generally, a 'copyright owner who grants a nonexclusive

28

Loeb & Loeb LLP
A Limited Liability Partnership
Including Professional
Corporations

240638071.11
231389-10014

11

CASE NO. 2:23-CV-08551-HDV-SK
NBCU'S MOTION FOR SUMMARY JUDGMENT

license to use his copyrighted material waives his right to sue the licensee for copyright infringement' and can sue only for breach of contract." *Sun Microsystems, Inc. v. Microsoft Corp.*, 188 F.3d 1115, 1121 (9th Cir. 1999) (internal citations omitted). In this case, there is no dispute that NBCU purchased a site license from Providence. There is also no dispute that Providence told NBCU and its other customers that "The Cal-OSHA Reporter may be forwarded." Accordingly, Providence both expressly and implicitly granted NBCU a license which permitted forwarding of the Cal-OSHA Reporter and, therefore, its infringement claim fails.

### 1. Providence's License To NBCU Allows Forwarding.

The scope of NBCU's license expressly contained permission from Providence that it may forward the Cal-OSHA Reporter. There is no dispute that Providence granted NBCU a license to the Cal-OSHA Reporter. Providence therefore "bears the burden of proving that the defendant's copying was unauthorized." *Bourne v. Walt Disney Co.*, 68 F.3d 621, 631 (2d Cir. 1995). The scope of a license is a matter of contract formation and interpretation. *See MDY Industries, LLC v. Blizzard Ent., Inc.*, 629 F.3d 928, 939 (9th Cir. 2010) ("Enforcing a copyright license raises issues that lie at the intersection of copyright and contract law."). "Under California law, the interpretation of contract language is a question of law." *Great Minds*, 945 F.3d at 1110 (internal citations omitted).

Providence cannot carry its burden in this case. The only evidence of the license terms of use of the Cal-OSHA Reporter are Providence's **hundreds** of affirmative statements to NBCU and **all** of its licensees that the "Cal-OSHA Reporter may be forwarded," provided that it was "not distributed for profit." SUF 5, 7-9, 20, 40, 60. It is undisputed that, in 2012 and 2013, Providence sent emails to NBCU offering to NBCU the opportunity to purchase a license to receive the Cal-OSHA Reporter while expressly stating "[t]he **Cal-OSHA Reporter may be forwarded**." SUF 5, 7-9. It is undisputed that NBCU thereafter purchased a license. SUF 13. It

Loeb & Loeb LLP
A Limited Liability Partnership
Including Professional
Corporations

240638071.11
231389-10014

12

CASE NO. 2:23-CV-08551-HDV-SK
NBCU'S MOTION FOR SUMMARY JUDGMENT

is also undisputed that Providence thereafter continued to tell members receiving the Cal-OSHA Reporter that it may be forwarded.  SUF 20.  There is no dispute that Providence did not present any alternative or differing license terms, or publish any other terms and conditions on its website (or anywhere else) either before or after accepting payment from NBCU.  SUF 22-25.  By communicating that the Cal-OSHA Reporter could be forwarded, accepting license fees, and thereafter delivering the Cal-OSHA Reporter to NBCU, Providence granted NBCU a license which clearly allowed for the forwarding of the Cal-OSHA Reporter.  Providence even further validated and ratified that not-for-profit forwarding of the Cal-OSHA Reporter was a permitted use by stating so when it delivered the electronic summary version of the Cal-OSHA Reporter to licensees.  SUF 20.

Providence cannot point to **any evidence** to refute that NBCU's license permitted forwarding.  In prior motion practice, Providence attempted to reconcile its conflicting positions by representing to the Court that its statements that the Cal-OSHA Reporter could be forwarded were a "typographical error" in a "free bulletin" that were not part of the premium subscription for the COR [Cal-OSHA Reporter]." *See* SUF 39.  However, after Providence was ordered to produce its communications concerning forwarding of the Cal-OSHA Reporter, this representation was proven to be **false.**  SUF 40.  Providence produced documents demonstrating that it had, in fact, consistently stated that the Cal-OSHA Reporter could be forwarded not only in free bulletins soliciting license purchases, but also in communications sent to, and with content for, its "Paid Premium Subscribers." *Id.*

Moreover, it is black letter law in California that consent to the terms of a contract are determined by a party's objective manifestations, not subjective intent; and unilateral mistake does not invalidate an agreement absent a showing that the other party was aware of the mistake and unfairly utilized that mistaken belief.  *See e.g. Meyer v. Benko*, 55 Cal.App.3d 937, 942-44 (1976).  Providence's outward

Loeb & Loeb LLP
A Limited Liability Partnership
Including Professional
Corporations

240638071.11
231389-10014

13

CASE NO. 2:23-Cv-08551-HDV-SK
NBCU'S MOTION FOR SUMMARY JUDGMENT

manifestations clearly indicate the Cal-OSHA Reporter can be forwarded.  *See* SUF 5, 7-9, 20, 23-24.  And while Providence produced **hundreds** of emails that it routinely sent to its customers on a weekly basis concurrently with the Cal-OSHA Reporter stating that the Cal-OSHA Reporter could be forwarded, there are **no documents whatsoever** indicating it ever informed NBCU that such communications contained a "typo" or that the license did not permit forwarding.  SUF 62.  The employees at NBCU who had password-protected access to Providence's website and received the Cal-OSHA Reporter from Providence believed that the only restriction on the license was the use of their login for the website (for which they never shared their password), and that they were permitted to forward and share the Cal-OSHA Reporter with their colleagues.  SUF 21-23.  This is entirely consistent with Providence's own objective manifestations and requirement for a password to access its walled online content, but not to access and view the Cal-OSHA Reporter.  SUF 15, 20.

Providence's sole response points to the standard copyright language in the fine-print of the Cal-OSHA Reporter itself (the PDF attached to the email), which says on page 2 that reproduction or transmission is not permitted "without written permission."  This is unavailing.  First, Providence **had** indisputably provided express written permission in its other communications that were sent at the same time as the Cal-OSHA Reporter.  SUF 20.  Next, any argument that language in the standard copyright notice on the Cal-OSHA Reporter itself could provide a license term defies reason.  As a matter of law, a non-exclusive license granted in exchange for consideration is irrevocable—and Providence cannot unilaterally alter the terms after accepting payment.  *See Asset Mktg. Sys. v. Gagnon*, 542 F.3d 748, 757 (9th Cir. 2008).  Moreover, the language Providence points to appears only on the Cal-OSHA Reporter PDF itself, and not in any of the communications from Providence to NBCU, not even in the email delivering a copy of the Cal-OSHA Reporter.  SUF 20.  This

Loeb & Loeb LLP
A Limited Liability Partnership
Including Professional
Corporations

240638071.11
231389-10014

14

CASE NO. 2:23-CV-08551-HDV-SK
NBCU'S MOTION FOR SUMMARY JUDGMENT

1    means, "forwarding" could occur without a licensee having yet viewed the Cal-OSHA

2    Reporter's language Providence claims prohibited forwarding.

3    **2.     Providence Granted NBCU An Implied License That**

4    **Permitted Forwarding.**

5    Even if this Court finds that Providence did not grant NBCU an express license

6    to forward the Cal-OSHA Reporter (it did), Providence's statements and actions also

7    establish that it granted NBCU an implied license which included the right to not-for-

8    profit forwarding.

9    "A nonexclusive license may therefore be granted orally, or may even be

10   implied from conduct. *Where the totality of the parties' conduct indicates an intent to*

11   *grant such permission, the result is a nonexclusive license*."  *Interscope Records,*

12   *Motown Record Co., L.P. v. Time Warner, Inc.*, No. CV 10-1662 SVW (PJWx), 2010

13   U.S. Dist. LEXIS 151460, at *11 (C.D. Cal. June 28, 2010) (emphasis in original)

14   (quoting Melville B. Nimmer & David B. Nimmer, Nimmer on Copyright §

15   10.03[A][7] (revised ed. 2009)); *see also* Milgrim on Licensing § 5.41 (2010) ("Under

16   certain circumstances, the conduct of the copyright owner combined with … copying

17   on the basis of [the infringer's] reasonable reliance that it was authorized to do so,

18   may create a situation in which a license will be implied.").

19   "A copyright holder may give implied license to another 'where the copyright

20   holder engages in conduct from which [another party] may properly infer that the

21   owner consents to his use.'"  *Stevens v. Corelogic, Inc*., 194 F. Supp.3d 1046, 1053

22   (S.D. Cal. 2016).  Additionally, a license is inferred when the copyright holder knows

23   and/or encourages a particular use of a work.  *Interscope*, 2010 U.S. Dist. LEXIS

24   151460, at *11 (citing *Field v. Google, Inc*., 412 F. Supp.2d 1106, 1116 (D. Nev.

25   2006) ("Consent to use a copyrighted work need not be manifested verbally and may

26   be inferred based on silence where the copyright holder knows of the use and

27   encourages it."); *Keane Dealer Servs., Inc. v. Harts*, 968 F. Supp. 944, 947 (S.D.N.Y.

28

Loeb & Loeb LLP
A Limited Liability Partnership
Including Professional
Corporations

240638071.11
231389-10014

15

CASE NO. 2:23-CV-08551-HDV-SK
NBCU'S MOTION FOR SUMMARY JUDGMENT

1  1997) ("Consent given in the form of mere permission or lack of objection is also

2  equivalent to a nonexclusive license").

3      By including affirmative written representations in emails to NBCU prior to,

4  and after, NBCU purchased a license to receive the Cal-OSHA Reporter stating that

5  "The Cal-OSHA Reporter may be forwarded," Providence engaged in conduct which

6  expressly encouraged forwarding.  As a matter of law, it cannot now allege that it did

7  not consent to forwarding and seek damages for conduct it expressly stated was

8  allowed.  Nor can Providence claim that its permission to forward the Cal-OSHA

9  Reporter was a "typo" or that forwarding was a use beyond the scope of NBCU's

10  license, particularly as there is **no evidence whatsoever** that Providence ever told

11  NBCU that it did not permit not-for-profit forwarding.  *See Corelogic, Inc.*, 194 F.

12  Supp.3d at 1054 (finding an implied license and granting summary judgment where

13  there was no evidence plaintiff warned defendant against an implicitly-permitted use).

14      Not only did Providence inform NBCU that it could forward the Cal-OSHA

15  Reporter both before and after NBCU purchased a license, it also knew or should have

16  known that forwarding was or could have been occurring throughout the relevant

17  period—yet it said nothing.  In 2006, Providence began using Lyris to embed "pixels"

18  in its emails to its potential and existing customers to track "deliverability, open,

19  clickthrough, and forward metrics."  SUF 28.  Documents produced by Providence,

20  and relied on by its expert, confirm that Providence, at all relevant times, possessed

21  information regarding receipts and forwards of the Cal-OSHA Reporter.  SUF 33.[4]

22  Courts find implied licenses where, as here, the plaintiff knew, or could have known

23  of a particular use and allowed it to continue.  *See Keane*, 968 F. Supp. at 947 (granting

24  _____

[4] Providence even–falsely–alleged in its Complaint in this matter that it had used this
25  information to reach out to NBCU in September 2020 to ask them to stop forwarding
the emails that it had previously told them could be forwarded.  SUF 41.  This was a
26  false allegation, and there is absolutely no evidence to support it.  SUF 42.  Providence
knows this and has never sought amendment of its Complaint, nor even advised the
27  Court that it–for many years–affirmatively told NBCU that forwarding was permitted.
It is undisputed that Providence possessed data regarding forwarding of the Cal-
28  OSHA Reporter (SUF 33), but it never told NBCU it was not permitted.

Loeb & Loeb LLP
A Limited Liability Partnership
Including Professional
Corporations

240638071.11
231389-10014

16

CASE NO. 2:23-CV-08551-HDV-SK
NBCU'S MOTION FOR SUMMARY JUDGMENT

summary judgment in favor of defendant because original copyright holder was asked questions about use of the software program at issue and did not object to its use; the Court stated "a nonexclusive license . . . may even be implied from conduct. . . . In fact, consent given in the form of mere permission or lack of objection is also equivalent to a nonexclusive license and is not required to be in writing.").

Any argument by Providence that it did not actually know of the forwarding is belied by the fact that it: (1) purchased software that is used for the purpose of tracking and logging information about the use of emails, (2) embedded tracking pixels into the emails with the Cal-OSHA Reporter sent to NBCU using that software, and (3) collected, logged and maintained detailed data about NBCU's supposed use and forwards of emails containing the Cal-OSHA Reporter.  SUF 26, 28-30, 33.

Even if there was an issue of fact of Providence's knowledge (there is not) the law would still mandate finding an implied license.  Providence collected data on opening and forwards of the Cal-OSHA Reporter in 2013, yet it did not inform NBCU that forwards were not permitted, and chose instead to continue accepting annual license renewal payments. *See ExperExchange, Inc. v. Doculex, Inc.*, No. C-08-03875 JCS, 2009 U.S. Dist. LEXIS 112411, at *66-67 (N.D. Cal., Nov. 16, 2009) (finding an implied license for products that were included in "royalty reports" provided to plaintiff, yet plaintiff did not notify defendants that use of those products exceeded the scope of the License Agreement and continued to accept royalty payments and renew the License Agreement).

Additionally, courts have found implied licenses where the copyright owner could have taken steps to prevent uses it knew were reasonably likely, but chose not to do so.  For example, in *Field v. Google*, despite the copyright owner knowing–and it being industry practice–that including a certain "meta-tag" would have informed the search engine defendant (Google) not to display certain links to his pages, the plaintiff chose not to include such a tag.  412 F. Supp.2d at 1116.  The court explained

Loeb & Loeb LLP
A Limited Liability Partnership
Including Professional
Corporations

240638071.11
231389-10014

17

CASE NO. 2:23-CV-08551-HDV-SK
NBCU'S MOTION FOR SUMMARY JUDGMENT

1  that "with knowledge of how [the defendant] would use the copyrighted works . . .

2  and with knowledge that he could prevent such use, Field instead made a conscious

3  decision to permit it." *Id.* On this basis, the court found there was an implied license

4  for defendant's use. *Id.* Here, Providence should have known forwarding was likely

5  both because it affirmatively told its customers they could forward the Cal-OSHA

6  Reporter, and because it knew and expected its customers to forward its other email

7  bulletins. SUF 5, 7-9, 26-27. Providence could have taken steps to: (1) monitor the

8  forwarding data made available by its tracking software and notify licensees that

9  forwarding was not permitted and (2) require that licensees enter their password to

10 download the Cal-OSHA Reporter. Any contention that Providence chose to do

11 neither does not preclude the existence of an implied license. *See Field*, 412 F.

12 Supp.2d at 1116; SUF 18-19, 27-31.

13      Providence's complaint in this case and its conduct in bringing this case against

14 its own customer after years of telling them they may forward the Cal-OSHA Reporter

15 is the height of hypocrisy. Providence sent email solicitations promoting licenses to

16 the Cal-OSHA Reporter that said the Cal-OSHA Reporter could be forwarded. It then

17 continued for **years** to advise NBCU (and its other licensees), in writing, that the Cal-

18 OSHA Reporter could be forwarded. That is more than enough to bar Providence's

19 claims in this case. However, Providence also spent years tracking the emails it sent

20 to its licensees with the Cal-OSHA Reporter, logging data about who opened or

21 forwarded it, while remaining silent and collecting license renewal fees. There is no

22 basis for Providence to argue that its rights were violated in this case. It granted

23 NBCU the right to forward its thinly-protected summaries of administrative decisions

24 and regulations, it possessed data for more than a decade that tracked such forwards,

25 and there is no good-faith basis for the maintenance of this infringement action.

26 Providence's words and actions clearly indicate that it granted NBCU a license, both

27

28

Loeb & Loeb LLP
A Limited Liability Partnership
Including Professional
Corporations

240638071.11
231389-10014

18

CASE NO. 2:23-CV-08551-HDV-SK
NBCU'S MOTION FOR SUMMARY JUDGMENT

expressly and implicitly.  It never informed NBCU that forwarding was not permitted until it brought this case.  NBCU is entitled to summary judgment.

## C.    Providence Is Estopped From Asserting An Infringement Claim.

Even if the Court does not find that NBCU had an express or implied license, this is a quintessential case for the application of the doctrine of estoppel.  "A plaintiff is estopped from asserting a copyright claim if he has aided the defendant in infringing or otherwise induced it to infringe or has committed covert acts such as holding out . . . by silence or inaction." *Field*, 412 F. Supp.2d at 1116.  The doctrine of equitable estoppel applies "whenever one party's conduct induces a second party to detrimentally alter its position before the inducing party then attempts to exploit the circumstances its own conduct has created." *Payless Shoesource, Inc. v. Joye*, No. 2:12-cv-00517-MCE-DAD, 2014 U.S. Dist. LEXIS 14372, *26-29 (E.D. Cal. Feb. 4. 2014).  That is exactly what this Court should prevent Providence from doing here.

There is no dispute that, until at least June 30, 2017, Providence regularly sent communications to NBCU and its other customers stating: "The Cal-OSHA Reporter may be forwarded, copied or distributed."[5]  SUF 20.  Nor is there any dispute that Providence embedded tracking pixels into its emails to NBCU since at least 2013, which were used to collect and log deliverability, open, clickthrough, and forward metrics.  SUF 33.  Yet, until **2022**, Providence remained silent and was content to collect license renewal fees from NBCU each year.  SUF 34.  The law does not permit

---

[5]  NBCU has a limited email retention policy, which has made most older communications inaccessible.  By chance, NBCU still had certain copies of communications with this language from 2012 and 2013.  SUF 5, 7-9.  This was fortunate because Providence failed to disclose or produce those communications and claims it has virtually no communications with NBCU.  NBCU was also able to locate publicly available copies of Providence's emails to other customers from 2017 that also stated the Cal-OSHA Reporter could be forwarded.  SUF 20.  After NBC located these documents and brought them to the attention of the Court, Providence finally admitted that this language appeared in its regular communications to customers until at least 2017, but claimed it was limited to "free bulletins."  SUF 39.  This was **false.** SUF 40.  The Court compelled Providence to produce copies of such communications and Providence has produced more than **1,100** emails stating the Cal-OSHA Reporter can be forwarded, including in emails **specifically to paid licensees,** demonstrating this was its regular practice. *Id.*

Loeb & Loeb LLP
A Limited Liability Partnership
Including Professional
Corporations

240638071.11
231389-10014

19

CASE NO. 2:23-CV-08551-HDV-SK
NBCU'S MOTION FOR SUMMARY JUDGMENT

Providence to collect payments from customers while cultivating purported "infringement" and then later try to obtain a windfall with a claim for damages. *See e.g. Interscope*, 2010 U.S. Dist. LEXIS 151460 at *38 ("A copyright holders' silence or inaction in the face of an infringement can give rise to an estoppel defense, particularly where such inaction is prolonged.") (citing *Field*, 412 F. Supp. 2d at 1117 (granting summary judgment on an estoppel defense where plaintiff "remained silent regarding his unstated desire" that defendant not use his work in a particular way, all the while knowing that defendant would interpret the silence as permission)); *see also Eight Mile Style, LLC v. Spotify USA Inc.*, No. 3:19-cv-0736, 2024 U.S. Dist. LEXIS 145597, at *79-80 (M.D. Tenn. Aug. 15, 2024) (finding plaintiff was estopped from asserting infringement claim where it "affirmatively fostered and failed to rectify the confusion surrounding … rights and then, rather than simply making use of the already-favorable position it found itself in, allowed [defendant] to keep infringing, over and over" and thus it "improperly chose the cultivation of infringement damages over the proper functioning of the copyright system.").

Providence's prolonged silence after affirmatively stating the Cal-OSHA Reporter may be forwarded mandates a finding of estoppel. On that basis, in addition to the many others discussed above, Providence's case should be dismissed.

**D.    Providence's Claim Is Barred By The Doctrine Of Unclean Hands.**

"The unclean hands defense 'has been held available in a copyright infringement action regardless of whether the action is one at law or in equity." *Interscope*, 2010 U.S. Dist. LEXIS 151460, at *44. An unclean hands defense in a copyright infringement case will lie where a plaintiff "inequitably laid a trap for Defendants, or at least allowed Defendants to fall into one, by encouraging the unlicensed use of Plaintiffs' works, reaping the benefits of such use, and then suing years later for damages due to the alleged infringement." *Id*. at *43.

Loeb & Loeb LLP
A Limited Liability Partnership
Including Professional
Corporations

240638071.11
231389-10014

20

CASE NO. 2:23-CV-08551-HDV-SK
NBCU'S MOTION FOR SUMMARY JUDGMENT

1   Providence had a practice of sending multiple communications per week to
2   NBCU (and its other customers), both before and after NBCU purchased site licenses,
3   stating the Cal-OSHA Reporter could be forwarded.  SUF 3–5, 7–13, 18–20.  It
4   continued this practice **at least** until July 2017, when Providence now claims that it
5   removed the affirmative language in its communications advising that the Cal-OSHA
6   Reporter could be forwarded.  *Id.*  And at no time did Providence ever communicate
7   any contrary license terms or inform NBCU that it had changed its policy concerning
8   forwarding (in spite of the false allegation made to the contrary in Providence's
9   Complaint).  SUF 22–25.  Thus, even if there was no express or implied license
10  allowing forwarding (there is) – Providence's claim is barred by the doctrine of
11  unclean hands because it attempted to "lay a trap" by encouraging unlicensed usage.

12  **E.    Providence's Claims Are Barred By The Statute Of Limitations.**

13  Providence's claims prior to July 12, 2019 are also barred by the statute of
14  limitations.  Pursuant to 17 U.S.C. § 507(b), "[n]o civil action shall be maintained
15  under the provisions of this title unless it is commenced within three years after the
16  claim accrued."  The Ninth Circuit has applied a "discovery" rule as an exception to
17  the traditional time for accrual of a claim for copyright infringement, that is: "a claim
18  alternatively accrues when the copyright holder knows **or reasonably should know**
19  that an infringement occurred." *Starz Enter., LLC v. MGM Domestic Television Dist.,*
20  *LLC*, 39 F.4th 1236, 1237 (9th Cir. 2022) (emphasis added); *but see Warner Chappell*
21  *Music, Inc. v. Nealy*, 601 U.S. 366, 374-376 (2024) (J. Gorsuch dissenting) (noting
22  that the "[Copyright] Act almost certainly does not tolerate a discovery rule," but
23  stating the Court had left that antecedent question for another day.)

24  "Once a defendant shows that the action is barred under the traditional rule, a
25  plaintiff has the burden of showing that the discovery rule applies."  To invoke the
26  discovery rule, a plaintiff must plead and prove (a) lack of knowledge; (b) lack of
27  means of obtaining knowledge (*i.e.* that in the exercise of reasonable diligence the

28

Loeb & Loeb LLP
A Limited Liability Partnership
Including Professional
Corporations

240638071.11
231389-10014

21

CASE NO. 2:23-CV-08551-HDV-SK
NBCU'S MOTION FOR SUMMARY JUDGMENT

facts could not have been discovered at an earlier date); and (c) how and when the plaintiff did actually discover the infringement. *Keilholtz v. Lennox Hearth Prods.*, No. C 08-00836 CW, 2009 U.S. Dist. LEXIS 81108, *9 (N.D. Cal. Sept. 8, 2009). Providence's Complaint fails to state these factors and Providence cannot prove them now. *See Saaremets v. Whirlpool Corp.*, No. S-09-2337 FCD/EFB, 2010 U.S. Dist. LEXIS 26165, at *17-18 (E.D. Cal. Mar. 18, 2010) (discovery rule did not apply when "plaintiff's own representations clearly indicate that plaintiff had 'the opportunity to obtain knowledge from sources open to his investigation'" but did not do so).

Furthermore, "the standard for whether a plaintiff should have discovered the relevant infringement is an objective one." *Minden Pictures, Inc. v. Complex Media, Inc.*, No. 22-CV-4069 (RA), 2023 U.S. Dist. LEXIS 52070, at *5 (S.D.N.Y. Mar. 27, 2023); *see also Smothers v. BMW of N. Am., LLC*, No.: 18-CV-1391-CAB-AGS, 2019 U.S. Dist. LEXIS 89160, *6 (S.D. Cal. May 28, 2019) ("[T]he discovery rule uses an objective test that looks not to what the particular plaintiff actually knew but to what a reasonable inquiry would have revealed."). When a party employs a technological means that it claims is capable of detecting infringement, it cannot later claim that it was unaware of such infringement. *See Minden Pictures*, 2023 U.S. Dist. LEXIS 52070, at *7 ("The allegations in the Complaint make clear that Plaintiff uses sophisticated methods to detect [infringement] … and enlist[ed] technology companies that 'crawl[] the internet' to identify infringing uses. Given that Plaintiff's business is designed to protect and enforce the copyrighted works that it licenses, and employs intricate means of doing so, it is not plausible that Plaintiff, in exercising reasonable diligence, would not have discovered the alleged infringing use here until nearly ten years after the infringement occurred.").

Under the Copyright Act, Providence cannot recover for any infringement occurring more than three years before it notified NBCU of the alleged infringement (*i.e.* July 12, 2019). Providence may argue that the discovery rule exception applies

Loeb & Loeb LLP
A Limited Liability Partnership
Including Professional
Corporations

CASE NO. 2:23-CV-08551-HDV-SK
NBCU'S MOTION FOR SUMMARY JUDGMENT

1  because it did not know about the forwarding it alleges constitutes infringement until

2  2022.   This is false.   Under the discovery rule, Providence is held to its actual

3  knowledge and the knowledge of what it reasonably could have discovered from

4  sources open to them.  *See Saaremets*, 2010 U.S. Dist. LEXIS 26165, at *17-18.

5  Providence did in fact know, or reasonably should have known because of the facts

6  available to it, of the alleged "forwarding" since 2013.  Providence has had access to

7  its licensee's email data through which it could track and discover alleged

8  infringement since 2013.  SUF 26 - 33.  Providence purchased software that tracks

9  email metrics so that it could monitor the reach and usage of its Cal-OSHA Reporter

10  emails.  *Id*.  Providence also claims that it notified licensees of Providence's data

11  collection practices.  SUF 74.  Providence cannot claim that it inserted tracking pixels

12  into the emails it first sent to NBCU, provided notice to NBCU that it was tracking

13  and collecting its data, but somehow did not "discover" that it had this data 2022.  In

14  2013, Providence had access to the email data that it claims showed the alleged

15  improper forwarding.  Providence thus, knew or should have known of the alleged

16  "forwarding" back in 2013 when it starting utilizing this software in connection with

17  NBCU and as such, it is not entitled to rely on the "discovery rule" exception to

18  salvage its time barred claims.  *See Minden*, 2023 U.S. Dist. LEXIS 52070, at *7.

19       Even if Providence could claim it was unaware of the alleged forwarding in

20  2013 (and it cannot), it unquestionably was put on notice of potential infringement in

21  2017 when it claims to have stopped including language stating that the Cal-OSHA

22  Reporter may be forwarded in its emails to customers.  Providence cannot contend

23  that it discovered and corrected an alleged "typo" telling licensees they may forward

24  the Cal-OSHA Reporter, yet had no awareness of, or reason to suspect, forwarding.

25       The absolute latest Providence should have known about any forwarding is

26  September of 2020.  Providence's Complaint in this case contains an allegation that it

27  notified NBCU that forwarding was not permitted in September 2020.  SUF 41.  This

28

Loeb & Loeb LLP
A Limited Liability Partnership
Including Professional
Corporations

240638071.11
231389-10014

23

CASE NO. 2:23-CV-08551-HDV-SK
NBCU'S MOTION FOR SUMMARY JUDGMENT

allegation is false, and relates, at best, to another Providence customer.  SUF 42. Providence also admitted in other lawsuits that it commenced an "audit" of its customers for forwarding in 2020.  SUF 73.  Regardless, the fact that Providence became aware of forwarding by another customer, and asked them to stop in September 2020, demonstrates that Providence was aware no later than 2020, that its customers were forwarding its publications (as it told them they could do).

The undisputed facts disprove the contention that Providence did not "know[] or reasonably should [have] know[n]" of the forwarding it alleges in this case until July of 2022.  Accordingly, the statute of limitations precludes Providence's claims in this case.

**F.    Providence Cannot Recover For Untimely Registered Works.**

Pursuant to 17 U.S.C. § 412, "no award of statutory damages or of attorney's fees, as provided by sections 504 and 505, shall be made for—(1) any infringement of copyright in an unpublished work commenced before the effective date of its registration; or (2) any infringement of copyright commenced after first publication of the work and before the effective date of its registration, unless such registration is made within three months after the first publication of the work."

Providence failed to register at least 31 of the works it claims were infringed within three months of first publication.  SUF 45-50.  Accordingly, at a minimum, Providence cannot recover any statutory damages for such works.

**IV.    CONCLUSION**

For all of the foregoing reasons, the Court should grant NBCU's Motion for Summary Judgment and dismiss Providence's complaint in its entirety.

Dated:  December 19, 2024

LOEB & LOEB LLP
DAVID GROSSMAN
TODD J. DENSEN

By:    */s/ David Grossman*
David Grossman
Attorneys for Defendant
NBCUNIVERSAL MEDIA, LLC

Loeb & Loeb LLP
A Limited Liability Partnership
Including Professional
Corporations

240638071.11
231389-10014

24

CASE No. 2:23-Cv-08551-HDV-SK
NBCU'S MOTION FOR SUMMARY JUDGMENT

**PLAINTIFF'S OPPOSITION**

## I.    INTRODUCTION

At the outset, Plaintiff Providence Publications, LLC ("Providence") must briefly address Defendant NBC Universal Media LLC's ("NBC") continued misstatements regarding how this matter has proceeded, although such complaints are irrelevant to summary judgment. Despite NBC's misstatements, Providence took every effort to resolve this matter without the need for litigation. Shortly after first discovering NBC's misuse of the copyrighted Cal-OSHA Reporter works ("COR Copyrighted Works") in May 2022, Providence reached out to NBC relaying its concerns and asking NBC to enter a tolling agreement so that the parties could resolve this matter without litigation. At Providence's request, the parties entered into a year-long tolling agreement on July 12, 2022, which was extended 90 days to October 10, 2023. Stmt. of Fact 75, 76. Even after filing the subject suit, Providence delayed serving the Complaint to give the parties additional time for settlement discussions, and Providence further agreed to extend NBC's time to Answer by thirty days. As such, Providence undertook every measure to allow the parties to resolve this matter without incurring the cost of litigation.

Since entering a year-long tolling agreement in July 2022, Providence's counsel consistently sought relevant documents from NBC to establish the extent of NBC's infringement so the parties could resolve this matter in a cost-effective manner and avoid litigation, yet NBC repeatedly failed to produce any documents or provide information on the extent of NBC's infringement. While during the tolling period NBC's counsel represented it conducted an informal in-house investigation of NBC's infringement, NBC's counsel nonetheless refused to verify its estimates, search its subscribers' email accounts, or produce any documents, citing difficulties due to the size of its organization. Dkt. No. 37-3 at ¶ 2. Although NBC eventually agreed to search its subscribers' email accounts, NBC did not adhere to the agreed upon search

Loeb & Loeb LLP
A Limited Liability Partnership
Including Professional
Corporations

240638071.11
231389-10014

25

CASE NO. 2:23-CV-08551-HDV-SK
NBCU'S MOTION FOR SUMMARY JUDGMENT

terms and failed to produce any documents related to the search, once again resulting in incomplete information regarding the extent of NBC's infringement. *Id.*

Further, during several meet and confers as part of discovery efforts in April and May 2024, NBC confirmed that it would produce documents responsive to Providence's requests on which the parties were not at an impasse, subject to NBC's objections, including documents NBC agreed to produce in its written discovery responses to Providence's requests for documents that support NBC's affirmative defenses and allegations made in its Answer. In correspondence dated May 21, 2024, NBC further agreed to produce documents responsive to Providence's requests for production numbers 1-10 and 15—which call for NBC's documents relating to the distribution and electronic forwarding of COR, communications between the parties, internal communications relating to NBC's subscription to COR, and decision to subscribe to COR and purchase five subscriptions—for a limited time period of 2020-2022. Stmt. of Fact 77. Providence followed up several times regarding NBC's production, including on October 31, 2024 and November 20, 2024, but NBC never responded, and NBC never provided such production to Providence, and did not produce *any* documents until it was Ordered to by the Court.

Providence's approach throughout discovery was to conduct discovery sufficient to understand the facts to partake in mediation, without incurring exorbitant litigation costs. Providence reasonably expected that NBC would act in good faith and produce the discovery that NBC represented it would complete without being compelled by the Court, so that the mediation would serve as an effective means of trying to reach a resolution in a cost-effective manner. However, despite NBC's representations, NBC did not produce a single document until it was ordered to do so pursuant to the Court's November 14, 2024 Order on Plaintiff's Motion to Compel.

As for depositions, both parties noticed depositions late in the discovery period and given witness availability, it presented a challenge to take both parties depositions

Loeb & Loeb LLP
A Limited Liability Partnership
Including Professional
Corporations

240638071.11
231389-10014

26

CASE NO. 2:23-CV-08551-HDV-SK
NBCU'S MOTION FOR SUMMARY JUDGMENT

in the allotted time.  Providence's approach, once again, was to attempt to work cooperatively with NBC to agree on a deposition schedule that worked for both parties and their witnesses.  Ankrom Decl. ¶¶ 4-20.  Following the November 13, 2024 hearing on the parties' respective discovery motions, Providence reached out to NBC to coordinate a deposition schedule.  *Id*.  Providence contacted NBC on November 14, and followed up on every business day with no substantive response until NBC's counsel responded on November 18 complaining about the dates that Providence noticed depositions for, ignoring Providence's multiple attempts to cooperate on a deposition schedule, and refusing to discuss the dispute with any attorney other than Providence's lead counsel, who was unavailable due to illness at the time.  *Id*.  After further attempts by Providence to work out a deposition schedule over the following two weeks, NBC refused to cooperate at every turn, failing to meet and confer with Providence over NBC's objections to Providences Rule 30(b)(6) deposition topics, and refusing to produce a Rule 30(b)(6) representative on the noticed December 2, 2024 deposition date.  *Id*.

## II.   LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides that a court shall grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c).  Material facts are those that may affect the outcome of the case.  *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.*  In considering a motion for summary judgment, the court must examine all the evidence in the light most favorable to the non-moving party, and draw all justifiable inferences in its favor.  *Synoptek, LLC v. Synaptek Corp.*, 309

Loeb & Loeb LLP
A Limited Liability Partnership
Including Professional
Corporations

240638071.11
231389-10014

27

CASE NO. 2:23-CV-08551-HDV-SK
NBCU'S MOTION FOR SUMMARY JUDGMENT

1   F. Supp. 3d 825, 833–34 (C.D. Cal. 2018) *quoting United States v. Diebold, Inc.*, 369

2   U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *T.W. Elec. Serv., Inc. v. Pac. Elec.*

3   *Contractors Ass'n*, 809 F.2d 626, 630–31 (9th Cir. 1987). The court does not make

4   credibility determinations, nor does it weigh conflicting evidence. *Eastman Kodak*

5   *Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 456, 112 S.Ct. 2072, 119 L.Ed.2d 265

6   (1992). Summary judgment will be denied if evidence is "controverted," because

7   when evidence is controverted, assertions become colorable for purposes of motions

8   for summary judgment law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 264, 106

9   S. Ct. 2505, 2518, 91 L. Ed. 2d 202 (1986).

10  **III.    ARGUMENT**

11      As explained in greater detail below, NBC lacks factual and legal support for

12  its defenses of express license, implied license, estoppel, and unclean hands, and these

13  defenses should be dismissed.  Furthermore, there are disputed issues of fact that

14  preclude summary adjudication of NBC's statute of limitations defense.

15      **A.     <u>Providence Did Not Grant NBC An Express License to Forward</u>**

16             **<u>the COR Publication.</u>**

17      NBC, knowing that the COR Copyrighted Works were protected by copyright

18  and required a subscription for each copy, purchased five (5) subscriptions to COR.

19  Stmt. of Fact 18.  Providence took NBC at its word by virtue of the 5 subscriptions

20  that NBC did not have more people. Further Providence would have no way to know

21  how many personnel NBC had or might have in its EHS unit. The COR Copyrighted

22  Works were PDFs attached to an email delivered to the five individuals designated by

23  NBC to receive its five copies of COR.  Every COR Copyrighted Work contained

24  language specifically prohibiting copying and distribution. As a representative

25  example, the COR Copyrighted Work cover dated November 22, 2017 states:

26          Copyright 2017 Providence Publications, LLC. All rights

27          reserved … No part of this material may be reproduced or

28

Loeb & Loeb LLP
A Limited Liability Partnership
Including Professional
Corporations

240638071.11
231389-10014

28

CASE No. 2:23-CV-08551-HDV-SK
NBCU'S MOTION FOR SUMMARY JUDGMENT

transmitted in any form or by any means, electronic, optical, mechanical, or otherwise, including photocopying or recording, satellite or facsimile transmission, or in connection with an information image or object, storage or retrieval system without written permission from Cal-OSHA Reporter.

Stmt. of Fact 5(hereinafter the "COR Copyright Notice").

In addition to the emails delivering the PDFs of the COR Copyrighted Works, Providence provides subscribers (and any interested party who wishes to sign up via Providence's website) with several free and promotional emails that do not contain PDFs and are clearly distinct and separate from the COR Copyrighted Works. Subscribers to COR receive a daily complementary "News Digest," a curated email that consists of links to third party articles covering national news related to occupational health and safety that may be of interest to COR readers. Further, Providence would occasionally distribute complementary email "Flash Reports," authored by Providence, which consist of breaking news. These are published infrequently depending on events in the news cycle. Finally, Providence also distributed a free promotional email-only summary of each COR Copyrighted Work called the Electronic Summary Version which contains "grabbers," or brief descriptions of articles appearing in the COR Copyrighted Work with links to Providence's website. It is designed to pique interest in the copyright stories to encourage subscriptions. (The daily News Digests, the Flash Reports, and the Electronic Summary Versions are hereinafter collectively referred to as the "Free and Promotional Emails.")

The Free and Promotional Emails are distinct in both appearance and form from the COR Copyrighted Works. While the premium COR Copyrighted Works were

Loeb & Loeb LLP
A Limited Liability Partnership
Including Professional
Corporations

240638071.11
231389-10014

29

CASE NO. 2:23-CV-08551-HDV-SK
NBCU'S MOTION FOR SUMMARY JUDGMENT

delivered as a PDF attached to an email, the Free and Promotional Emails were merely emails without any attachment and consisted of links to articles. Stmt. of Fact 2.

As a representative example, language in Providence's Free and Promotional Emails states at the bottom of the email:

> The Cal-OSHA Reporter may be forwarded, copied or distributed subject to the following conditions: (1) The full report including text, graphics and links must be copied without modification and all pages must be included; (2) All copies must contain Providence Publications copyright notice; (3) This document may not be distributed for profit.

Stmt. of Fact 78.

The Free and Promotional Emails all clearly distinguished themselves from the COR Copyrighted Works by soliciting readers to subscribe to the COR Copyrighted Works.  A larger font at the top of the Flash Report and Daily News Digest emails state: "Don't miss out on exclusive news in our premium edition. Subscribe Now!" with a link to Providence's website.  Stmt. of Fact 79, 80.  The Electronic Summary Version similarly states at the top of the email "Here are the stories for Paid Premium Subscribers. To get the benefits of being a premium subscriber click here," providing a link to the subscriptions page to COR on Providence's website.  Stmt. of Fact 81. The Electronic Summary Version further states, "This ESV [electronic summary version] provides one-click access to stories in our premium edition.  Cal-OSHA Reporter, since 1972, is the most widely read publication in occupational safety and health in California. To get the benefits of being a premium subscriber, click here," with another link to subscribe to COR Copyrighted Works on Providence's website. *Id*.

Further, Providence's Free and Promotional Emails never included or delivered the COR Copyrighted Works, which are the subject of this lawsuit.   After July 1,

Loeb & Loeb LLP
A Limited Liability Partnership
Including Professional
Corporations

240638071.11
231389-10014

30

CASE NO. 2:23-CV-08551-HDV-SK
NBCU'S MOTION FOR SUMMARY JUDGMENT

2017, the language regarding the distribution of the Free and Promotional Emails subject to the noted conditions was removed. Stmt. of Fact 7.

The language NBC argues granted permission to copy COR Copyrighted Works only appeared in Free and Promotional Emails, and never the COR Copyrighted Works or their delivery emails. The Free and Promotional Emails are distinct in appearance and content from the COR Copyrighted Works. Clearly, the language provided permission to forward the Free and Promotional Emails, not the premium COR Copyrighted Work. Moreover, the language in question ceased appearing in any communication sent to NBC after July 1, 2017, and yet NBC continued to infringe the COR Copyrighted Works. While Providence disputes whether the existence of the language on the Free and Promotional Emails created an express license prior to July 1, 2017,[6] the COR Copyright Notice explicitly stated the COR Copyrighted Works cannot be reproduced without written permission from Cal-OSHA Reporter. The language NBC relies upon no longer existed after July 1, 2017, and therefore there can be no express license, even if, *arguendo*, NBC's disputed argument of an express license prior to July 1, 2017 is accepted as true.

NBC claims that a license to copy and distribute COR was created prior to 2017 and persisted indefinitely. However, NBC has no legal or factual support for this claim. NBC argues that a non-exclusive license granted for consideration is irrevocable. However, each COR Copyrighted Work is a separate and distinct work and every act of copyright infringement is an independently actional legal wrong. *See, e.g., Media Rts. Techs., Inc. v. Microsoft Corp.*, 922 F.3d 1014, 1023 (9th Cir. 2019); *Energy Intel. Grp., Inc. v. Kayne Anderson Cap. Advisors, L.P.*, 948 F.3d 261, 274 (5th Cir. 2020). The infringement of each separate COR Copyrighted Work was a

---

[6] In this matter, as part of the meet and confer process, and in the interests of saving costs and narrowing issues for trial, Providence only asserts claims for COR works infringed after July 1, 2017. However, Providence expressly stated that this was not an admission of the validity of NBC's express and implied license arguments, and reserved its rights to argue against any claims by NBC that an express or implied license existed after July 1, 2017.

Loeb & Loeb LLP
A Limited Liability Partnership
Including Professional
Corporations

240638071.11
231389-10014

31

CASE NO. 2:23-CV-08551-HDV-SK
NBCU'S MOTION FOR SUMMARY JUDGMENT

distinct and independent legal wrong, and NBC must point to written language permitting the copying of each issue of COR.  NBC knew no such express language existed because NBC purchased five (5) subscriptions, rather than purchasing one (1) subscription and distributing copies of the publication.   As such, there is a question of fact if NBC *ever* had an express license to copy the COR publication, but there is no question that after July 1, 2017, NBC cannot point to any express written language to support the existence of an express license.  NBC's express license defense should be dismissed.

**B.**  **Providence Did Not Grant NBC An Implied License That Permitted Forwarding.**

The Ninth Circuit has enumerated a test for implied licenses in the context of commissioned works.  An implied license "is granted when (1) a person (the licensee) requests the creation of a work, (2) the creator (the licensor) makes that particular work and delivers it to the licensee who requested it, and (3) the licensor intends that the licensee-requestor copy and distribute his work." *Evox Prods. LLC v. Yahoo, Inc.*, No. 22-cv-2907, 2023 WL 5506894, at *4 (C.D. Cal. July 28, 2023). Since the COR Copyrighted Works were not created at NBC's request, NBC cannot satisfy the test for implied license enumerated by the Ninth Circuit.  While "the Ninth Circuit has not clearly defined an implied license test for other contexts," in the limited circumstances where implied licenses are asserted for non-commissioned works, courts examine whether the "totality of the parties' conduct indicates an intent to grant a license to the work." *Evox,* 2023 WL 5506894, at *4.   Whether an implied license exists is ultimately a question of contract law, and "depends upon the objective manifestation of [the parties'] consent under the totality of the circumstances." *Interscope Recs. v. Time Warner, Inc.*, No. 10-cv-1662, 2010 WL 11505708, at *3 (C.D. Cal. June 28, 2010).

Loeb & Loeb LLP
A Limited Liability Partnership
Including Professional
Corporations

240638071.11
231389-10014

32

CASE NO. 2:23-CV-08551-HDV-SK
NBCU'S MOTION FOR SUMMARY JUDGMENT

NBC's implied license argument relies on caselaw where the courts found that an implied license existed when a copyright owner was aware of the defendant's infringement and took (or failed to take) some action that encouraged the infringing use. *See, Interscope Recs. v. Time Warner, Inc.,* No. 10-cv-1662, 2010 WL 11505708, at *9 (C.D. Cal. June 28, 2010) (motion to strike implied license defense denied where defendants alleged that plaintiffs had actual knowledge defendants were using plaintiffs' sound recordings on defendants' tv show and plaintiffs encouraged defendants to use the recordings on the show); *Field v. Google Inc.*, 412 F. Supp. 2d 1106, 1116 (D. Nev. 2006) (plaintiff "had knowledge of how Google would use the copyrighted works he placed on those pages, and [had] knowledge that he could prevent such use, [and] instead made a conscious decision to permit it."); *Keane Dealer Servs., Inc. v. Harts*, 968 F. Supp. 944, 947 (S.D.N.Y. 1997) (plaintiff's "knowledge of, and acquiescence in, [defendant's] use of the software constituted an implied license to use it."); *Experexchange, Inc. v. Doculex, Inc.*, No. 08-cv-03875, 2009 WL 3837275, at *23 (N.D. Cal. Nov. 16, 2009) (undisputed that plaintiff had actual knowledge of defendant's allegedly infringing use of the copyrighted work).

Contrary to NBC's assertions, all the cases cited by NBC involved *actual knowledge* of the allegedly infringing conduct by the copyright owner, not an argument based on alleged constructive knowledge, and there is no evidence in the record that Providence had actual knowledge of NBC's infringement prior to May 2022. Thus, NBC cannot prevail on its implied license defense and this affirmative defense should be dismissed as a matter of law. At the very least, there remains an issue of fact.

NBC claims that Providence's acceptance of subscription fees annually gave rise to an implied license, citing *ExperExchange*, 2009 WL 3837275, at *23. However, in the *ExperExchange* case, unlike here, the defendant communicated to the copyright owner expressly that it was using the copyright owner's software in

Loeb & Loeb LLP
A Limited Liability Partnership
Including Professional
Corporations

240638071.11
231389-10014

33

CASE NO. 2:23-CV-08551-HDV-SK
NBCU'S MOTION FOR SUMMARY JUDGMENT

products other the product covered by the parties' license agreement. *Id.* at *24. The copyright owner thus undisputedly had actual knowledge of the defendant's infringement. *Id.*   Here, not only was Providence misled by NBC's purchase of five copies, but it had no such knowledge, as NBC never informed Providence that it was copying and distributing COR.  Stmt. of Fact 82.

Further, NBC purchased five (5) copies of the COR Copyrighted Works and thus, NBC itself knew the publication could not be copied and there was no implied license.  NBC includes declarations from several employees who infringed the COR Copyrighted Works with a general statement that "[p]rior to this dispute, it was always my understanding that while I could not share my log-in information for Providence's website, Providence allowed NBCU's site members to forward the Cal-OSHA Reporter."  Stmt. of Fact 21.  However, it must be noted that these statements do not provide any indication where this alleged belief originated.  NBC is a sophisticated company that has created copyright content for decades and has been a plaintiff protecting such copyrights for the same period, being a party to approximately 60 copyright lawsuits since 2015. As such, NBC knows when a license does not exist, and by purchasing a five (5) copy subscription clearly understood there was no implied license to copy.

NBC points to the email delivery data collected by Lyris as argument that Providence "should have known" of NBC's infringement.  However, an implied license is not formed on a "should of known" standard.  For an implied license to arise, Providence must have actual knowledge; alleged constructive knowledge does not suffice.  NBC cannot and does not dispute that Providence lacked actual knowledge of NBC's infringement prior to 2022. Stmt. of Fact 82.  Moreover, the record demonstrates that Providence was not aware that Lyris data could be analyzed to detect potential infringement prior to 2020, and Providence did not become aware of the Lyris data associated with NBC's subscriptions until May 2022.

Loeb & Loeb LLP
A Limited Liability Partnership
Including Professional
Corporations

240638071.11
231389-10014

34

CASE NO. 2:23-CV-08551-HDV-SK
NBCU'S MOTION FOR SUMMARY JUDGMENT

Further, NBC cannot show an implied license because the defense is based in contract law, and for an implied license to arise, there must be a meeting of the minds. *Westhoff Vertriebsges mbH v. Berg*, No. 22-cv-0938, 2023 WL 5811843, at \*9 (S.D. Cal. Sept. 6, 2023); *Bean v. Pearson Educ., Inc.*, 949 F. Supp. 2d 941, 947 (D. Ariz. 2013).   There cannot be a meeting of the minds here because Providence never intended to provide NBC an implied license to copy. Stmt of Fact 83.   The facts of this case do not indicate that NBC ever read or relied on the language in the Free and Promotional Emails.   NBC's Statement of Fact and supporting declarations do not state that any NBC employee read the language in the Free and Promotional Emails. As such, NBC's summary judgment motion cannot establish as a matter of fact that NBC actually read and relied upon language in the Free and Promotional Emails and continued to rely on the language for five years after the language stopped appearing in any communication to NBC.   NBC has not identified a single employee who allegedly understood the language on the Free and Promotional Emails to provide a license to commit copyright infringement, nor any documents that would support NBC's position that NBC employees read and relied upon the language in the Free and Promotional Emails.   As stated above, NBC's employees state that they believed that they could forward copies of COR but were not permitted to share their passwords to the Providence website, but NBC's employees do not state that the basis for this understanding was the language in the Free and Promotional Emails, and in fact do not provide any basis for their mistaken belief.   Stmt. of Fact 21.   Moreover, the veracity of NBC employees' testimony is called into question by NBC's documents. For example, despite Laura Tankenson's declaration that she understood that password sharing was not permitted and her declaration that she never shared her Providence password, on February 19, 2013 Ms. Tankenson sent an email to her team stating that she would be subscribing to COR and "I will forward the login info., once the membership has been processed." Stmt. of Fact 10.

Loeb & Loeb LLP
A Limited Liability Partnership
Including Professional
Corporations

240638071.11
231389-10014

35

CASE NO. 2:23-CV-08551-HDV-SK
NBCU'S MOTION FOR SUMMARY JUDGMENT

NBC never informed Providence that it believed it could forward the COR Copyrighted Works when it obtained its five (5) copy subscription, or at any other time.  Moreover, if NBC believed that it had a license to copy and distribute the COR Copyrighted Works, then it would not have purchased, and annually renewed, a five (5) copy subscription for over a decade.  It is clear that NBC's license defense is a post-hoc creation by attorneys that does not reflect the parties' understanding during the relevant time period.  At the bare minimum, there remains clear issues of fact regarding the alleged existence of an implied license.  However, NBC's implied license affirmative defense should be dismissed as a matter of law because there is no dispute that that Providence lacked actual awareness of NBC's copying prior to 2022.

### C.   NBC'S Estoppel Defense Should Be Dismissed As A Matter of Law.

To assert a valid estoppel defense, Defendants must allege: (1) that Plaintiffs knew of Defendants allegedly infringing conduct; (2) that Plaintiffs intended that their conduct would be acted on or acted in such a way that Defendants had a right to believe it was intended; (3) that Defendants were ignorant of the true facts (i.e., that the use was not permitted); and (4) that Defendants relied to their detriment on Plaintiffs' conduct. *Interscope Recs. v. Time Warner, Inc.*, No. 10-cv-1662, 2010 WL 11505708, at *11 (C.D. Cal. June 28, 2010).  "Whether estoppel is justified in a given case is a question of fact." *United States v. Garan*, 12 F.3d 858, 860 (9th Cir. 1993).

The facts NBC relies on for its estoppel defense are identical to the facts it relies on for its implied license defense, and fails for similar reasons.  NBC cannot satisfy the first prong of the license standard because it cannot show that Providence had knowledge of NBC's infringement prior to May 2022, shortly before Providence contacted NBC about its concerns in July 2022.  Stmt. of Fact 82.  *See Evox Prods. LLC v. Kayak Software Corp.,* No. 15-cv-5053, 2017 WL 5634858, at *8 (C.D. Cal. Apr. 4, 2017) ("[C]onstructive notice is not sufficient to find an implied license"); *Bangkok Broad. & T.V. Co. v. IPTV Corp.*, 742 F. Supp. 2d 1101, 1116 (C.D. Cal.

Loeb & Loeb LLP
A Limited Liability Partnership
Including Professional
Corporations

240638071.11
231389-10014

36

CASE NO. 2:23-CV-08551-HDV-SK
NBCU'S MOTION FOR SUMMARY JUDGMENT

2010) (equitable estoppel dismissed on summary judgment where plaintiff lacked knowledge of the defendant's infringement).   NBC's estoppel defense must also be dismissed as NBC can offer no factual support that Providence had actual knowledge of NBC's infringement prior to May 2022.

NBC also cannot show that Providence intended that the language in the Free and Promotional Emails would give a license to copy and distribute the COR Copyrighted Works.  NBC cannot controvert the fact that Providence did not intend for the language that only appeared in connection with the Free and Promotional Emails to provide a license to copy and distribute the premium COR works.  Stmt. of Fact 83.

NBC cannot satisfy the third prong of the estoppel test.  NBC must show that it "not only lacked actual knowledge of the true facts, but also did not have notice of the facts sufficient to put a reasonably prudent person on inquiry."  *In re Lua*, 529 B.R. 766, 777 (Bankr. C.D. Cal.), *aff'd*, 551 B.R. 448 (C.D. Cal. 2015), *rev'd and remanded on other grounds*, 692 F. App'x 851 (9th Cir. 2017).  First, NBC did have knowledge of the true facts, namely that the COR Copyrighted Works were protected by copyright, especially since NBC is a sophisticated copyright owner and an active copyright plaintiff.  Second, every single COR Copyrighted Work that NBC received contained copyright notices in full accordance with 17 U.S.C. § 404, and warnings against copying, which put NBC on inquiry notice that COR was protected by copyright.  In a seminal decision on equitable estoppel, the Ninth Circuit found that the defendant could not assert equitable estoppel because it was put on inquiry notice of the plaintiff's copyright interest in the works at issue because the work carried a copyright notice.  *Hampton v. Paramount Pictures Corp.*, 279 F.2d 100, 104-105 (9th Cir. 1960).  In *Hampton*, plaintiff Paramount gave Kodascope a license to produce prints of certain silent films for "non-theatrical exhibitions." *Id* at 102. As silent films lost their commercial value, Kodascope began to rent and sell these films without

Loeb & Loeb LLP
A Limited Liability Partnership
Including Professional
Corporations

240638071.11
231389-10014

37

CASE NO. 2:23-CV-08551-HDV-SK
NBCU'S MOTION FOR SUMMARY JUDGMENT

restrictions on their use. *Id*. Eventually, defendant Hampton purchased several of Paramount's films through Kodascope and exhibited them for profit at a specially built silent movie theater.  When Paramount sued Hampton for copyright infringement, Hampton asserted an estoppel defense on the basis that Paramount was aware of the theatrical screenings and took no action. *Id*. at 104.  However, the Ninth Circuit found that Hampton could not show that it was ignorant of the true facts because the films in question contained a copyright notice.  *Id*.  The Ninth Circuit found that:

> Paramount's assertion of copyright was clearly printed on the film in question in strict accordance with statutory requirements. Paramount had the right to assume that this printed assertion of right, which was flashed on the screen every time the film was shown, provided ample notice to Hampton of Paramount's interest in the film.

*Id*. Having been charged with inquiry notice by the copyright notice displayed on the subject works, the Ninth Circuit found that "Hampton could easily have ascertained the facts by making inquiry of Paramount."  *Id*. ("The doctrine of equitable estoppel does not erase the duty of due care and is not available for the protection of one who has suffered loss solely by reason of his own failure to act or inquire.").

Similarly, here, every COR Copyrighted Work at issue in this case contained copyright notices and warning, which put NBC on notice that the works are protected by copyright.  Just as the Ninth Circuit held in *Hampton*, the estoppel defense is not available to NBC, whose "ignorance" of the facts was caused solely by its own failures.

Finally, NBC cannot satisfy the fourth prong of the estoppel analysis that NBC relied on the language in the Free and Promotional Emails.  NBC has put forth **no** evidence that any employee of NBC ever read the language contained in the Free and Promotional Emails, let alone interpreted the language as providing permission to

Loeb & Loeb LLP
A Limited Liability Partnership
Including Professional
Corporations

240638071.11
231389-10014

38

CASE NO. 2:23-CV-08551-HDV-SK
NBCU'S MOTION FOR SUMMARY JUDGMENT

copy the premium COR publication and relied on it for the same. NBC's estoppel defense should be dismissed as a matter of law.

### D. Providence's Claim Is Not Barred By The Doctrine Of Unclean Hands.

To establish unclean hands, a defendant must demonstrate (1) inequitable conduct by the plaintiff; (2) that the plaintiff's conduct directly relates to the claim which it has asserted against the defendant; and (3) plaintiff's conduct injured the defendant. *Oracle Am., Inc. v. Hewlett Packard Enter. Co.*, No. 16-cv-01393, 2017 WL 2311296, at *2 (N.D. Cal. May 26, 2017). The unclean hands defense is "recognized only rarely, when the plaintiff's transgression is of serious proportions and relates directly to the subject matter of the infringement action." *Dream Games of Arizona, Inc. v. PC Onsite*, 561 F.3d 983, 990–91 (9th Cir. 2009) (quoting 4 Nimmer on Copyright § 13.09[B]). The application of the unclean hands doctrine raises primarily a question of fact. *Dollar Sys., Inc. v. Avcar Leasing Sys., Inc.*, 890 F.2d 165, 173 (9th Cir. 1989).

As a court in this District explains, "[i]n the rare instances where courts have recognized the unclean hands defense as potentially viable, the transgression has involved misuse of the process of the courts, fraud in the procurement of the right asserted, misrepresentations to the court and opposing party about the nature of the right, or obtaining information regarding the defendant's work through unfair means." *Taylor Holland LLC v. MVMT Watches, Inc.*, No. 2:15-cv-03578, 2016 WL 6892097, at *12 (C.D. Cal. Aug. 11, 2016).

NBC cannot prevail on its unclean hands defense because it cannot show that it has been injured by Providence. "The defense of unclean hands may be asserted in a copyright infringement action only where the defendant can show that he has personally been injured by the plaintiff's conduct." *Oracle Am., Inc.*, 2017 WL 2311296, at *3 (quoting *Broderbund Software, Inc. v. Unison World, Inc*., 648 F.

Loeb & Loeb LLP
A Limited Liability Partnership
Including Professional
Corporations

240638071.11
231389-10014

39

CASE NO. 2:23-CV-08551-HDV-SK
NBCU'S MOTION FOR SUMMARY JUDGMENT

Supp. 1127, 1138 (N.D. Cal. 1986)).  In its Amended Answer, NBC failed to plead any alleged injury resulting from Providence's conduct, and in its Motion for Summary Judgment fails to identify any "injury" that NBC has suffered because of Providence's alleged unclean hands, other than the present lawsuit for damages for NBC's infringement.  However, "the filing of a lawsuit cannot itself form the basis of an unclean hands defense."  *Taylor Holland LLC*, 2016 WL 6892097, at *12.  When a defendant alleges that the copyright owner purportedly authorized the use of a copyrighted work and then brings a copyright infringement claim, as NBC does here, the "injury" is not inadequate authorization but rather the filing of a lawsuit, which as a matter of law does not meet the legal standard.  *Id.*  Since NBC does not identify any alleged injury aside from the present lawsuit, it cannot prevail on its unclean hands defense.  NBC's unclean hands defense must be dismissed as a matter of law.

**E.** **There is a Question of Fact as to Whether Providence's Claims Are Barred By The Statute Of Limitations.**

To prevail on its statute of limitations affirmative defense, NBC bears the burden of proving that there is no genuine dispute that Providence knew or should have known of NBC's infringement prior to July 12, 2019—three years before the effective date of the July 12, 2022 tolling agreement.  *Entous v. Viacom Int'l, Inc.*, 151 F. Supp. 2d 1150, 1154 (C.D. Cal. 2001) ("The statute of limitations constitutes an affirmative defense upon which the defendant has the burden of proof . . . ."); *Starz Ent., LLC v. MGM Domestic Television Distribution, LLC*, 39 F.4th 1236, 1237 (9th Cir. 2022) (a copyright infringement claim accrues "when the copyright holder knows or reasonably should have known than an infringement occurred.").

When a party discovers, or reasonably should have discovered, the alleged infringement "is an 'actual or constructive knowledge' standard."  *UMG Recordings, Inc. v. Glob. Eagle Ent., Inc.*, 2016 WL 3457179, at *1 (C.D. Cal. Apr. 20, 2016) (internal citations omitted).  "Actual discovery is just what it sounds like;

Loeb & Loeb LLP
A Limited Liability Partnership
Including Professional
Corporations

240638071.11
231389-10014

40

CASE NO. 2:23-Cv-08551-HDV-SK
NBCU'S MOTION FOR SUMMARY JUDGMENT

'constructive' discovery refers to the date on which the plaintiff as a reasonably diligent plaintiff should have discovered that the defendants were violating its rights." *UMG Recordings, Inc. v. Glob. Eagle Ent., Inc.*, 2016 WL 3457179, at *1 (C.D. Cal. Apr. 20, 2016) (internal citations omitted).

Importantly, the determination of whether a plaintiff had actual or constructive knowledge of alleged infringement is a question of fact that can rarely be decided on summary judgment. *See Mavrix Photo, Inc. v. Rant Media Network, LLC*, 2020 WL 8028098, at *3 (C.D. Cal. Nov. 2, 2020) ("Under the discovery rule, the Ninth Circuit has read section 507(b) to permit damages outside of the three-year window 'if the copyright plaintiff was unaware of the infringement, and that lack of knowledge was reasonable under the circumstances'—a highly fact-bound inquiry."); *Free Speech Sys., LLC v. Menzel*, 390 F. Supp. 3d 1162, 1170 (N.D. Cal. 2019) ("reasonableness of discovering copyright infringement is generally a question of fact."); *Eid v. Alaska Airlines, Inc.*, 621 F.3d 858, 868 (9th Cir. 2010) (*quoting Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1157 (9th Cir. 2009)) ("[S]ummary judgment is generally an inappropriate way to decide questions of reasonableness because the jury's unique competence in applying the reasonable man standard is thought ordinarily to preclude summary judgment.").

Here, NBC fails to identify any communication, event, or fact originating from NBC that would have given Providence actual knowledge of NBC's wide-scale infringement prior to May 2022. *See generally* NBC's Stmt. of Facts. In the history of NBC's subscription to COR, no NBC employee ever informed Providence that NBC was copying and distributing copies of COR. Stmt. of Fact 84. The record shows that Providence did not have *actual knowledge* of NBC's infringement until May of 2022, which is within the three-year statute of limitations calculated from the effective date of the tolling agreement, namely July 12, 2019. Stmt. of Fact 82. Therefore, NBC's summary judgment motion turns on whether Providence had *constructive*

Loeb & Loeb LLP
A Limited Liability Partnership
Including Professional
Corporations

240638071.11
231389-10014

41

CASE NO. 2:23-CV-08551-HDV-SK
NBCU'S MOTION FOR SUMMARY JUDGMENT

*knowledge* of NBC's infringement prior to July 12, 2019. This question presents, at minimum, an issue of material fact that cannot be decided on summary judgment, and NBC's motion should be denied.

Providence generally presumes that its customers are law abiding non-infringers, and there was no indication that NBC was a serial infringer prior to Providence's discovery of NBC's infringement in May 2022. *Id.* In fact, NBC subscribed to five copies of COR, which gave the false impression that NBC was complying with the law by purchasing the appropriate number of subscriptions. Stmt. of Fact 85. Providence did not obtain actual knowledge of NBC's infringement until May 2022, when Providence first learned "that NBC's designated recipients were routinely forwarding the Registered COR Works through analysis of email data from the delivery of the COR publication to NBC. . . ." Stmt. of Fact 82. NBC's infringement occurred behind NBC's secure corporate firewalls that Providence had no access to, and NBC never indicated to Providence in any way that it was infringing COR. Tellingly, NBC has not produced any evidence to dispute any of these facts. *See generally* NBC's Stmt. of Fact. Thus, there is no evidence that Providence had actual knowledge of NBC's infringement prior to May 2022, which is well within the effective date of the July 12, 2022 tolling agreement. *See* Stmt. of Fact 75.

Instead, NBC's statute of limitations affirmative defense is based entirely on NBC's theory of constructive knowledge. A party "'is deemed to have had constructive knowledge if it had enough information to warrant an investigation which, if reasonably diligent, would have led to discovery of the [claim].'" *Media Rts. Techs., Inc. v. Microsoft Corp.*, 922 F.3d 1014, 1024 (9th Cir. 2019) (*quoting Pincay v. Andrews*, 238 F.3d 1106, 1110 (9th Cir. 2001)). NBC's argument for constructive knowledge rests on data Providence received from its email delivery service, Lyris. Lyris is software designed and marketed as a bulk email delivery service, not as a copyright infringement detection tool. Stmt. of Fact 86. NBC's

Loeb & Loeb LLP
A Limited Liability Partnership
Including Professional
Corporations

240638071.11
231389-10014

42

CASE NO. 2:23-CV-08551-HDV-SK
NBCU'S MOTION FOR SUMMARY JUDGMENT

alleged claims that Lyris data provided Providence with constructive knowledge of NBC's infringement, is a disputed question of fact.

Regardless, Providence did not learn that Lyris had complex information concerning the IP addresses of Providence's subscribers or that the information could possibly suggest infringement until 2020, which is still within the three-year statute of limitations period. The fact that Providence did not understand every feature of Lyris is reasonable under the circumstances and there is disputed issue of fact that Providence should have known of the data relating to NBC prior to 2020. Lyris is not a copyright infringement detection software, and there is no record that users of the Lyris platform should have knowledge information within Lyris would suggest infringement. Providence is a small publisher and, due to Providence's small size of approximately four (4) full time employees, Providence lacks the internal resources for an internal IT team. *See* Stmt. of Fact 87. Instead, Providence relies on Lyris, an email delivery service vendor, to deliver the publications it provides to its customers. However, Lyris lacks the capability to generate comprehensive reports summarizing statistics across the entire tracked pdfs. To use Lyris to learn of possible infringement, Providence would have been required to manually review all logs to detect if any customer had forwarded attachments since the previous check, a time intensive process simply not feasible for a company of Providence's size. It would be unreasonable to expect Providence to preemptively review the Lyris records for all its customers when there is no reason to suspect infringement.

Nor does Providence have an obligation to continuously monitor its Lyris data to ensure its customers are not violating Providence's copyrights, unless there is an independent reason to suspect infringement. It is well-settled in this Circuit that the duty of diligence "must be triggered by some event or series of events that comes to the attention of the aggrieved party." *Stokes v. Honeydu, Inc.*, No. 22-cv-5598, 2023 WL 2628685, at *1 (C.D. Cal. Feb. 9, 2023) (emphasis added) (quoting *Starz Ent.,*

Loeb & Loeb LLP
A Limited Liability Partnership
Including Professional
Corporations

240638071.11
231389-10014

43

CASE No. 2:23-Cv-08551-HDV-SK
NBCU'S MOTION FOR SUMMARY JUDGMENT

*LLC v. MGM Domestic Television Distribution, LLC*, 510 F. Supp. 3d 878, 888 (C.D. Cal. 2021), *aff'd*, 39 F.4th 1236 (9th Cir. 2022); *see Kuhmstedt v. Enttech Media Grp., LLC*, 2022 WL 1769126, at *4 (C.D. Cal. Apr. 11, 2022) ("[the duty of diligence] is only triggered by some event that calls their attention to the possibility of infringement – it is not some boundless duty to monitor every possible outlet for infringement at all times"); *Starz Ent., LLC v. MGM Domestic Television Distribution, LLC*, 510 F. Supp. 3d 878, 888 (C.D. Cal. 2021), *aff'd*, 39 F.4th 1236 (9th Cir. 2022) ("The duty of diligence does not create a duty to continuously monitor a licensor to ensure compliance with its obligations, absent any reason to otherwise suspect a breach. The law does not inject such paranoia into the licensor-licensee relationship.").

Here, there was no event or series of events that would have alerted Providence that NBC was infringing Providence's copyrights in COR prior to Providence's discovery of NBC's infringement in May 2022.  Providence had no way of knowing that it had been injured specifically by NBC prior to May 2022 because NBC never told Providence of its infringement, because of NBC's concealment of its infringement on NBC's secure systems which were inaccessible to Providence, and because NBC purchased five subscriptions, which gave the false impression that NBC had purchased the appropriate number of subscriptions for its needs.  Stmt. of Fact 85. Providence's use of Lyris for email distribution prior to May 2022 does not, as NBC argues, equate to constructive knowledge of NBC's infringement.  Lyris does not market its services as a copyright enforcement tool. Stmt. of Fact 86.  Thus, Providence could not have reasonably known of NBC's infringement simply because Providence relied on Lyris to deliver the publications it provides to its customers, especially in the absence of any triggering event specific to NBC.

Nor did Providence's general understanding in 2020 that Lyris technology could detect copyright infringement, or Providence's audit of its online subscription delivery records which revealed that a customer unrelated to this case (which was part

Loeb & Loeb LLP
A Limited Liability Partnership
Including Professional
Corporations

240638071.11
231389-10014

44

CASE NO. 2:23-CV-08551-HDV-SK
NBCU'S MOTION FOR SUMMARY JUDGMENT

of a separate lawsuit) reasonably give rise to constructive knowledge that *NBC* was infringing Providence's copyrights.  Importantly, there was no triggering event that would have placed Providence on notice to investigate NBC's activities, and Providence does not have the obligation to unremittingly monitor customers, like NBC, for potential infringement absent some indicator that the customer is copying and forwarding Providence's publication.  Given these undisputed facts, it defies logic to suggest that Providence should have had specific knowledge of NBC's infringement, which occurred on NBC's secure and private corporate network, simply because Providence became aware in 2020 that Lyris could be used to detect copyright infringement or because Providence conducted an audit which revealed infringement by a customer unrelated to this case.  Moreover, even assuming, arguendo, that Providence was aware of NBC's infringement in 2020, which Providence was not, 2020 is within three years of the effective date of the July 12, 2022 tolling agreement and, thus such knowledge (which Providence did not possess) would not render Providence's copyright infringement claims against NBC as untimely.

Likewise, neither Providence's correction of a typographical error stating that the Cal-OSHA Reporter may be forwarded in the transmittal emails of Providence's promotional publications in July 2017 (works which are not part of this case), nor Providence's inclusion in its privacy policy that Lyris data is being used "for the purpose of tracking open rates," establish that Providence had constructive knowledge of *NBC's* infringement.

The only event that reasonably triggered Providence's suspicions of NBC's infringement occurred in May 2022, when Providence conducted a review and analysis of data provided by Lyris upon receiving feedback from a non-customer that abuse of the distribution policy was taking place.  In an effort to track down potential leaks, Providence first learned that NBC had been improperly distributing COR for several years, as evidenced by logs contained within Lyris dating back to NBC's

Loeb & Loeb LLP
A Limited Liability Partnership
Including Professional
Corporations

240638071.11
231389-10014

45

CASE NO. 2:23-CV-08551-HDV-SK
NBCU'S MOTION FOR SUMMARY JUDGMENT

initial subscription to the premium newsletter. After this discovery, Providence's counsel promptly sent an initial investigation letter to NBC in July 2022 and the parties entered a tolling agreement on July 12, 2022. *See* Stmt. of Fact 75. Providence thus acted reasonably and diligently at all times.

Accordingly, NBC has not—and, indeed, cannot—establish that Providence had actual knowledge of NBC's infringement prior to May 2022, as NBC has no evidence to the contrary. At a minimum, whether Providence had constructive knowledge prior to July 12, 2019, which Providence did not, is a material issue of fact that cannot be resolved on summary judgment. Thus, as a matter of law, NBC has failed to make any showing that Providence had actual or constructive knowledge of NBC's infringement prior to May 2022.

## F. Providence Is Not Pursuing Statutory Damages For Works That Were Registered More Than Three Months From Publication.

NBC's inclusion of its affirmative defense that Providence cannot recover for untimely registered works in its summary judgment motion is improper, as Providence's counsel clearly advised NBC's counsel that Providence is not seeking statutory damages for any works which were not registered within three months of publication. However, as Providence's counsel also communicated to NBC's counsel during the meet and confer prior to NBC moving for summary judgment, Providence is still entitled to recover damages for those works, namely, actual damages and defendant's profits from the infringement. *See Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 708 n. 5 (9th Cir. 2004) (where statutory damages are unavailable, a plaintiff can recover only its actual damages as a result of the infringement and defendant's profits from the infringement). Therefore, NBC's affirmative defense—that Providence is not entitled to any damages for untimely registered works—is not only improper and a waste of judicial economy but without merit, and NBC cannot prevail on this affirmative defense.

Loeb & Loeb LLP
A Limited Liability Partnership
Including Professional
Corporations

240638071.11
231389-10014

46

CASE NO. 2:23-CV-08551-HDV-SK
NBCU'S MOTION FOR SUMMARY JUDGMENT

## IV.    CONCLUSION

In view of the above, any reasonable fact finder must conclude that there exist significant and numerous material issues of fact as to whether Providence's claims are barred by the statute of limitations.    Accordingly, NBC's Motion for Summary Judgment on the statute of limitations defense should be denied.  Moreover, as shown above, NBC lacks factual and legal support for its defenses of express license, implied license, estoppel, and unclean hands, and these defenses should be dismissed.


Dated:  January 2, 2025

By:    */s/ Robert L. Powley*
Robert L. Powley (admitted *pro hac vice*)
rlpowley@powleygibson.com
Stephen M. Ankrom (admitted *pro hac vice*)
smankrom@powleygibson.com
**POWLEY & GIBSON, P.C.**
60 Hudson Street, Suite 2203
New York, New York 10013
Telephone: (212) 226-5054
Facsimile: (212) 226-5085

**AND**

Christopher D. Henderson
chris@cdhlawoffices.com
**LAW OFFICES OF CHRISTOPHER D. HENDERSON**
3780 Kilroy Airport Way
Suite 200
Long Beach, California 90806
Tel.: (562) 256-7045
Fax: (562) 600-2876

*Attorneys for Plaintiff*
*PROVIDENCE PUBLICATIONS, LLC*

Loeb & Loeb LLP
A Limited Liability Partnership
Including Professional
Corporations

240638071.11
231389-10014

47

CASE NO. 2:23-Cv-08551-HDV-SK
NBCU'S MOTION FOR SUMMARY JUDGMENT

1

**DEFENDANT'S REPLY**

2    **I.    INTRODUCTION**

3         Providence's opposition fails to present a material issue of fact on any point

4    and summary judgment should be granted.  The title of the allegedly registered

5    publication that Providence claims to be infringed in this case is the "**Cal-OSHA**

6    **Reporter**."  The relevant copyright registrations in this case refer to the "**Cal-OSHA**

7    **Reporter**."  The emails delivering the work come from the "**Cal-OSHA Reporter**

8    Newsdesk" and say "Here is your [current] edition of **Cal-OSHA Reporter**."  While

9    Providence tries to muddy the waters by calling certain emails "Free and

10   Promotional," it is undisputed that it promoted licenses to NBCU, with the verbatim,

11   clear and specific promise that "The **Cal-OSHA Reporter** may be forwarded . . . ."

12   It is also undisputed that NBCU thereafter purchased a license and that Providence

13   never told NBCU there were **any other license terms** let alone something contrary to

14   its earlier promise, despite the fact that it **actively tracked and collected data about**

15   **email forwards** for the entirety of 2013-2022.

16        The evidence before the Court is clear – and Providence's claims are barred, in

17   whole or in part, by a host of legal doctrines, including license, implied license,

18   estoppel, unclean hands and the statute of limitations.  The Court should grant

19   NBCU's motion.

20   **II.    ARGUMENT**

21        **A.    Providence Presents No Evidence That Forwarding Was Not**

22              **Permitted Under The Express License.**

23        As NBCU purchased a license to the Cal-OSHA Reporter, **Providence** bears

24   the burden of proving that "forwarding" was a use beyond the scope of the license.

25   *E.g., Netbula, LLC v. Bindview Dev. Corp.*, 516 F. Supp. 2d 1137, 1150 (N.D. Cal.

26   2007); *Bourne v. Walt Disney Co.*, 68 F.3d 621, 631 (2d Cir. 1995).

27

28

Loeb & Loeb LLP
A Limited Liability Partnership
Including Professional
Corporations

240638071.11
231389-10014

48

CASE NO. 2:23-CV-08551-HDV-SK
NBCU'S MOTION FOR SUMMARY JUDGMENT

Providence fails to carry this burden. *Netbula*, is particularly instructive here. 516 F. Supp. 2d 1137. In that case, the plaintiff asserted that a defendant was infringing its copyrights by virtue of excessive use and distribution of a software. *Id.* at 1142. There were no written copies of a license agreement, and Plaintiff's principal had no recollection of selling a license, but there was a line item in the plaintiff's records suggesting that the defendant's predecessor-in-interest had previously purchased a "limited client distribution license" and one "developer license" several years prior. *Id.* at 1143. A dispute arose about the defendant's use of the software, and the plaintiff demanded that the defendant provide detailed information about deployment, runtime, and the number of machines using the software. *Id.* The defendant provided information and offered to pay for an additional number of users beyond what the plaintiff believed were authorized, but the plaintiff disputed the accuracy of the information provided and brought suit. *Id.*

The defendant moved for summary judgment on the basis that a license had been purchased at some time in the past and the plaintiff had no evidence that defendant's use exceeded the scope of the license. *Id.* at 1147. The plaintiff argued that the defendant had the burden to establish that its use of the software was authorized. *Id.* at 1147-48. The Court rejected the plaintiff's argument, holding that, where the issue was the scope of the license, the **<u>plaintiff</u>** bears the burden of proving that the alleged use was beyond its scope. *Id.* at 1150-51

In reaching its holding, the court found that the following "evidence" of alleged license restrictions was insufficient to create material issue of fact: (1) plaintiff sending "standard" form license on disks sent to customers, where a customer could install and use the software without needing to read or accept any terms or conditions of use; (2) plaintiff publishing a license form on its website two years after sale of the product to defendant; and (3) two lines of text appearing in the software stating it was a "one user" license, but having no specific limitation on distribution. *Id.* at 1151-53.

Loeb & Loeb LLP
A Limited Liability Partnership
Including Professional
Corporations

240638071.11
231389-10014

49

CASE NO. 2:23-CV-08551-HDV-SK
NBCU'S MOTION FOR SUMMARY JUDGMENT

1    The court rejected these after-the-fact attempts to define license limitations, and
2    granted summary judgment for the defendant. *Id.* at 1153.

3         Like the plaintiff in *Netbula*, Providence cannot carry its burden here.  It is
4    undisputed that Providence granted NBCU a license – it alleges NBCU purchased
5    subscriptions, its website calls subscriptions "licenses," and its own expert confirmed
6    that NBCU was granted a license.  SUF 13, *see also* Densen Decl., Ex. J at ¶ 23.
7    While Providence claims that NBCU's license was limited to five "copies" with no
8    forwarding—except it admits that it **affirmatively promoted** the Cal-OSHA Report
9    by specifically referring to the publication by name, stating "The **Cal-OSHA**
10   **Reporter** may be forwarded" on a non-profit basis.  SUF 5, 7-9, 20, 40, 60.  NBCU
11   thereafter purchased a license, and its members believed that forwarding was
12   permitted.  SUF 13.  Critically, Providence cannot point to any evidence whatsoever
13   that it **ever communicated a restriction** on that language to NBCU.  SUF 22-25, 62.

14        Providence filed suit seeking purported "infringement" damages from 2013-
15   2022.  On the eve of filing of this motion, Providence conceded that the hundreds of
16   alleged forwarding "infringements" that occurred between 2013 and July of 2017
17   were permitted, because it included express language on its communications through
18   that date stating that the copyrighted works "may be forwarded."  SUF 61.  Now,
19   having conceded that it cannot prevail on most of its claims of infringement,
20   Providence argues that the removal of that language from its communications with
21   NBCU "revoked" its prior license.  Providence is wrong.  As a matter of law, a non-
22   exclusive license is irrevocable—and Providence cannot unilaterally alter the terms
23   after the fact.  *See Asset Mktg. Sys. v. Gagnon*, 542 F.3d 748, 757 (9th Cir. 2008).

24        Further, if Providence had changed the terms of its license in 2017, then it
25   should easily be able to point to evidence of such a change—but it cannot.  Providence
26   **never** told NBCU that it had any other understanding of the terms of the license.  SUF
27   22-25, 62.  It never once told NBCU that it needed to accept updated terms and

Loeb & Loeb LLP
A Limited Liability Partnership
Including Professional
Corporations

240638071.11
231389-10014

50

CASE NO. 2:23-CV-08551-HDV-SK
NBCU'S MOTION FOR SUMMARY JUDGMENT

conditions (in fact, it has none).  *Id.*  This Court ordered Providence to produce any such documents showing restrictions on forwarding, or any change in its license terms—and it produced **nothing**.  SUF 22-25, 40. 59-60, 62.  Even in opposition to this Motion, Providence fails to provide any testimony that it ever communicated alternate license terms—because it did not do so.

Under the law, it is Providence's burden to demonstrate that forwarding is outside the scope of the license.  Providence fails to adduce any evidence that such a restriction was communicated to NBCU at the time it purchased a license or any time since.  It is also undisputed that, both before and after NBCU purchased its license, Providence represented, in writing that "The Cal-OSHA Reporter may be forwarded." SUF 5, 7-9, 20, 40, 60.  Those were the terms of the license, those terms were never revised or revoked, and Providence's infringement claims must be dismissed.

**B.**   **Providence Fails To Negate The Existence Of An Implied License.**

In addition to an express license, NBCU clearly had an implied license, and Providence has failed to identify any material issue of fact disputing the existence of an implied license.

Providence tries to argue there was no meeting of the minds regarding an implied license because "Providence never intended to provide NBCU an implied license to copy."  Opp. at 35:5-6.  However, Providence acknowledges that the existence of an implied license is measured by a party's objective manifestations, not subjective intent.  Opposition at 32:24-33:1 (citing *Interscope Recs. v. Time Warner, Inc.*, No. 10-cv-1662, 2010 WL 11505708, at *3 (C.D. Cal. June 28, 2010).  There is no dispute that Providence objectively stated, "The Cal-OSHA Reporter may be forwarded …" *E.g.*, SUF 5-9.  NBCU also understood that non-profit forwarding was permitted.  SUF 21.  Providence has no evidence to dispute the existence of this permission to forward, so it proffers an irrelevant argument: that NBCU never told it that it thought it could forward the Cal-OSHA Reporter.  This is a smokescreen.  As

Loeb & Loeb LLP
A Limited Liability Partnership
Including Professional
Corporations

240638071.11
231389-10014

51

CASE NO. 2:23-CV-08551-HDV-SK
NBCU'S MOTION FOR SUMMARY JUDGMENT

discussed above, it is **Providence's** burden to prove that a use was beyond the scope of the license; there would be absolutely no reason for NBCU to tell Providence of a use that was consistent with what Providence affirmatively told its customers. Whether Providence secretly had a different intent and had mistakenly told NBCU forwarding was permitted is irrelevant. *See e.g., Meyer v. Benko*, 55 Cal. App. 3d 937, 942-44 (1976) (unilateral mistake does not invalidate an agreement).

Next, Providence tries to impute an "actual knowledge" requirement into finding an implied license. This is not the law. An implied license exists when "*the totality of the parties' conduct indicates an intent to grant such permission*," actual specific knowledge is not a required element. *Interscope*, 2010 U.S. Dist. LEXIS 151460, at *11 (emphasis original); *see Field v. Google Inc.*, 412 F. Supp. 2d 1106, 1116 (D. Nev. 2006) (finding implied license based on a general knowledge of how the opposing party would use works and the failure to prevent it). Moreover, the undisputed evidence shows that Providence **did** know that its customers were forwarding the Cal-OSHA Reporter. *See* Section C below.

### C.    Providence Fails To Present Facts To Invoke The Discovery Rule.

Providence's claims are barred by the statute of limitations. There is no dispute that Providence has been tracking "forwards" of the Cal-Osha Reporter since 2013. SUF 26-31, 33. Providence's primary argument is to assert that **it did not review its own data** until either 2020, or 2022.[1] Providence, however, does not submit any admissible evidence to support either of those purported delayed "discovery" dates. In fact, the only admissible evidence shows that it actively collected data regarding supposed "forwards" at all relevant times, and simply did not claim that such forwarding was impermissible until 2022. *Id.* Its claims should be dismissed.

---

[1] Providence appears to claim that because of the 2022 tolling agreement, any discovery after 2019 preserves its claims. However, Providence has not shown that the tolling agreement covers pre-2019 claims—it does not. The parties had not discussed any alleged infringement prior to 2019 at the time of the agreement. NBCU will provide the earlier correspondence to the Court if requested for the limited purpose of identifying which claims are covered by the tolling agreement.

Loeb & Loeb LLP
A Limited Liability Partnership
Including Professional
Corporations

240638071.11
231389-10014

52

CASE NO. 2:23-CV-08551-HDV-SK
NBCU'S MOTION FOR SUMMARY JUDGMENT

1    The discovery rule is an **exception** to the statute of limitations and the burden

2    of proof lies with the **plaintiff** seeking to invoke it. *See e.g.*, *Keilholtz v. Lennox*

3    *Hearth Prods.*, No. C 08-00836 CW, 2009 U.S. Dist. LEXIS 81108, *9 (N.D. Cal.

4    Sept. 8, 2009). The cases Providence relies on do not say that the issue of the delayed

5    discovery cannot be decided, or is even disfavored, at the summary judgment stage.

6    *Free Speech Sys., LLC v. Menzel*, 390 F. Supp. 3d 1162, 1170 (N.D. Cal. 2019)

7    involved a motion to dismiss, not summary judgment, and the Court declined to

8    consider evidence, and was only ruling as a matter of law based on the pleadings.

9    *Mavrix Photo, Inc. v. Rant Media Network, LLC*, No. CV 19-7270-DMG (AFMx),

10    2020 U.S. Dist. LEXIS 248485, at *8-9 (C.D. Cal. Nov. 2, 2020) also involved a

11    motion to dismiss. Indeed, courts do decide issues concerning the discovery rule at

12    the summary judgment stage. "Though statute of limitations questions often involve

13    questions of fact, such factual questions may be decided as a matter of summary

14    judgment if reasonable minds can reach but one conclusion on them." *Precision*

15    *Airmotive Corp. v. Rivera*, 288 F. Supp. 2d 1151, 1153 (W.D. Wash. 2003) (internal

16    citations omitted). When a party has all the information it needs to discover alleged

17    wrongdoing, Courts will find that the cause of action has accrued **regardless** of

18    whether the plaintiff submits a declaration simply stating they were unaware of, or

19    were not looking for, the alleged wrongdoing. *Id.*

20    Here—the undisputed evidence demonstrates that Providence collected data on

21    alleged "forwards" starting in 2013. SUF 26-31, 33. Providence does not dispute that

22    it used software, which prominently displayed a "Forwards" metric on its home

23    screen, to insert tracking pixels into its emails to NBCU and others at that time. SUF

24    30 (*see specifically*, Densen Decl. ¶ 18, Ex. L).[2] There is also no dispute that, for

25    years, Providence communicated that the "**Cal-OSHA Reporter** may be forwarded,"

---

26    [2] Nor is there a dispute that Providence claims it disclosed its data collection practices
27    in its privacy policy—something that could only be true if Providence was aware of
its email data collection practices. SUF 74; *see also* SUF 32 (Providence's dispute
28    and response claiming to have disclosed it was tracking emails).

Loeb & Loeb LLP
A Limited Liability Partnership
Including Professional
Corporations

240638071.11
231389-10014

53

CASE NO. 2:23-CV-08551-HDV-SK
NBCU'S MOTION FOR SUMMARY JUDGMENT

and that it claims to have removed that language from its email communications in July of 2017.  SUF 20, 78.  Providence has submitted declarations from its principal, Mr. Debber, but he conspicuously fails to provide any explanation of the reason why Providence removed the "may be forwarded language" from its emails in 2017.  The evidence is clear; Providence, at all relevant times at least since 2013, possessed alleged "forwarding" data, **and Providence used the very same data (in 2023) to allege infringement in its Complaint**.  SUF 26-27.

Providence has not submitted any evidence to explain why it took **ten years** to review its own data and to allege "infringement" by forwarding.  The sole evidence Providence attempts to offer concerning its lack of knowledge is a single, self-serving, conclusory statement from Mr. Debber (who refused to appear for deposition), that Providence first learned of the alleged forwards in 2022.  Mr. Debber does not lay any foundation for why he can make this statement, but even if he did, it is insufficient to create a triable issue of fact. *El-Shawary v. U.S. Bank Nat'l Ass'n*, No. 21-36011, 2022 U.S. App. LEXIS 34636, at *3 (9th Cir. Dec. 15, 2022) ("[W]holly uncorroborated testimony does not create a triable issue."); *Netbula*, 516 F. Supp. 2d at 1147 ("bare assertions, standing alone, are insufficient to create a material issue of fact.").

Mr. Debber's unsupported assertion provides no factual detail concerning his alleged unawareness.  Providence fails to present any evidence whatsoever regarding its long-time use of the Lyris tracking software, nor does Providence state how Mr. Debber supposedly first "learned" of his own data.  And notably, Providence does not explain why, in 2017, it removed the language expressly permitting forwarding in its customer emails.  Providence has not been transparent with the Court, and is attempting to avoid dismissal by providing the Court with unsupported, and inherently unbelievable, statements regarding its purported lack of knowledge of its own data.

Even if the Court were to credit Providence's claim that it did not "learn" of the import of its own data until May 2022—the discovery rule still does not salvage its

Loeb & Loeb LLP
A Limited Liability Partnership
Including Professional
Corporations

240638071.11
231389-10014

54

CASE NO. 2:23-CV-08551-HDV-SK
NBCU'S MOTION FOR SUMMARY JUDGMENT

1  pre-2019 claims because Providence **should have known** about the alleged

2  forwarding.  Invoking the discovery rule requires an objective test of what a

3  reasonable inquiry would have revealed.  *Smothers v. BMW of N. Am., LLC*, No. 18-

4  CV-1391-CAB-AGS, 2019 U.S. Dist. LEXIS 89160, *6 (S.D. Cal. May 28, 2019).

5  The discovery rule cannot be invoked when a party has information in its possession

6  that provides clear notice of the alleged conduct *See e.g.*, *Precision Airmotive*, 288 F.

7  Supp. 2d at 1154 (plaintiff "present[ed] no evidence as to why it could not have

8  discovered the infringement within the limitations period."); *Saaremets v. Whirlpool*

9  *Corp.*, No. S-09-2337 FCD/EFB, 2010 U.S. Dist. LEXIS 26165, at *17-18 (E.D. Cal.

10 Mar. 18, 2010) (discovery rule did not apply when "plaintiff's own representations

11 clearly indicate that plaintiff had 'the opportunity to obtain knowledge from sources

12 open to his investigation'"); *Minden Pictures, Inc. v. Complex Media, Inc.*, No. 22-

13 CV-4069 (RA), 2023 U.S. Dist. LEXIS 52070, at *7 (S.D.N.Y. Mar. 27, 2023)

14 ("Given that Plaintiff's business is designed to protect and enforce the copyrighted

15 works that it licenses, and employs intricate means of doing so, it is not plausible that

16 Plaintiff, in exercising reasonable diligence, would not have discovered the alleged

17 infringing use here until nearly ten years after the infringement occurred.").

18      It is undisputed that Providence purchased and used a software that **tracked**

19 **and collected data on "forwards" in 2006**.  SUF 26-29, 33.  It is undisputed that it

20 used that software to insert tracking pixels into its emails to NBCU in 2013, and

21 collected data at all times thereafter.  *Id.*  Even if it somehow could credibly claim that

22 it used this software, which exists specifically for the purpose of tracking email

23 metrics, completely blind to its capabilities – it still should have raised the issue of

24 forwards no later than 2017, when it admits that it quietly removed the "may be

25 forwarded" language from its emails.

26      There is no genuine dispute of fact regarding the application of the statute of

27 limitations to this case.  Providence, beginning in 2013 and at all relevant times

28

Loeb & Loeb LLP
A Limited Liability Partnership
Including Professional
Corporations

240638071.11
231389-10014

55

CASE No. 2:23-Cv-08551-HDV-SK
NBCU'S MOTION FOR SUMMARY JUDGMENT

1  thereafter, had access to the "forwarding" data that it used to claim "infringement" in

2  this case.  Providence failed to timely raise its claims, and all alleged infringements

3  that occurred prior to July 2019 (three years before it entered into a tolling agreement

4  with NBCU) are clearly barred by the statute of limitations.

5  **D.    NBCU Is Entitled To Summary Judgment On Its Estoppel Defense.**

6  Providence has not created an issue of fact regarding NBCU's estoppel defense.

7  All four prongs are self-evidently met: (1) as discussed above, there is no genuine

8  dispute that Providence knew of the alleged forwarding; (2) it is clear that Providence

9  intended NBCU to forward the Cal-OSHA Reporter, because it told it to; (3) there is

10  uncontroverted testimony from multiple NBCU employees that they were ignorant of

11  the fact that Providence claims forwarding was not permitted (nor was there any

12  reason to suspect forwarding was not permitted after Providence not only allowed it,

13  but encouraged it for years, while the "premium" content they believed they were not

14  permitted to share was restricted on Providence's password protected website); and

15  (4) NBCU relied to its detriment on Providence's conduct and silence by renewing its

16  license each year.  Providence's reliance on *Hampton v. Paramount Pictures Corp.*,

17  279 F.2d 100, 104-105 (9th Cir. 1960) to try and raise an "inquiry notice" issue as to

18  the third factor is misplaced.  Unlike in *Hampton*, here, Providence made affirmative

19  representations to its customers that the Cal-OSHA Reporter could be forwarded.

20  **E.    NBCU Is Entitled To Summary Judgment On Unclean Hands.**

21  Providence disputes that NBCU was injured by Providence's unclean hands

22  (except by the filing of this lawsuit), and relies on *Taylor Holland LLC v. MVMT*

23  *Watches, Inc.*, No. 2:15-cv-03578-SVW-JC, 2016 U.S. Dist. LEXIS 187379, at *26

24  (C.D. Cal. Aug. 11, 2016) for the supposed proposition that the filing of a lawsuit

25  cannot form the basis of an unclean hands defense.  However, that case specifically

26  did not state this proposition as a rule a law, and simply failed to find "injury" based

27  on the specific facts presented by that case.  Indeed, other courts have expressed that,

28

Loeb & Loeb LLP
A Limited Liability Partnership
Including Professional
Corporations

240638071.11
231389-10014

56

CASE NO. 2:23-CV-08551-HDV-SK
NBCU'S MOTION FOR SUMMARY JUDGMENT

where plaintiffs attempt to "lay a trap" for infringement, a defense may sound in unclean hands.  *See Interscope*, 2010 U.S. Dist. LEXIS 151460, at *43; *Taylor Holland* also noted that the trial court has "significant discretion in [the] determination" over what constitutes egregious conduct sufficient to trigger the defense.  *Id.* at *26.  For the reasons discussed above and in NBCU's opening brief, Providence's claims are barred by the doctrine of unclean hands.

**F.**    **Providence Does Not Dispute That It Failed To Timely Register.**

Providence does not dispute that it failed to timely register 31 of its works, and agrees that it cannot obtain statutory damages for any alleged infringement of these works.  Accordingly, the Court should grant partial summary judgement on this issue.

## III.    CONCLUSION

The undisputed evidence establishes that Providence, both expressly and impliedly, granted NBCU a license.  There is no dispute that, before NBCU purchased its license, Providence promoted the Cal-OSHA Reporter by saying that it "may be forwarded."  Accordingly, this motion should be granted in its entirety and this action should be dismissed.

In the alternative, the Court should grant NBCU's motion in part, and dismiss Providence's claims for copyright infringement occurring prior to July 12, 2019 as untimely as Providence has no evidence sufficient to invoke the discovery rule.

Finally, at a minimum, NBCU is entitled to partial summary judgment on all claims for infringement prior to 2017.  Providence admits that it was actively informing NBCU that it could forward the Cal-OSHA Reporter until that time, and it has conceded that it cannot prevail on those claims.

Dated:  January 9, 2025

LOEB & LOEB LLP
DAVID GROSSMAN
TODD J. DENSEN


By:    */s/ David Grossman*
David Grossman
Attorneys for Defendant
NBCUNIVERSAL MEDIA, LLC

Loeb & Loeb LLP
A Limited Liability Partnership
Including Professional
Corporations

240638071.11
231389-10014

57

CASE NO. 2:23-Cv-08551-HDV-SK
NBCU'S MOTION FOR SUMMARY JUDGMENT