# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

PROVIDENCE PUBLICATIONS, LLC,

    Plaintiff,

        v.

NBCUniversal Media, LLC,

    Defendant.

Case No. 2:23−cv−08551−HDV−E

**JOINT BRIEF RE PLAINTIFF PROVIDENCE PUBLICATIONS, LLC'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

The Hon. Hernán D. Vera

Hearing Date: February 20, 2025
Hearing Time: 10:00 a.m.

Trial Date: May 27, 2025

# <u>TABLE OF CONTENTS</u>

I.   INTRODUCTION .......................................................................................... 1

II.  LEGAL STANDARD .................................................................................... 1

III. ARGUMENTS ............................................................................................... 2

    A.   NBC's Defense That Its Infringement Was Innocent Should Be
Dismissed as a Matter of Law................................................................ 2

    B.   The Record Is Devoid of Any Facts to Support the Defense of
"Invalidity and/or Unenforceability," and This Defense Fails as a
Matter of Law......................................................................................... 3

    C.   There is No Evidence to Support NBC's Affirmative Defense that
Providence's Copyrights Are Not registered, Are Invalid or Not
Properly Obtained, And/Or Were Not Registered More Than Three
Months After First Publication, and the Defense Should Be Dismisse.. 4

    D.   NBC's Defense of "Fair Use" Fails as a Matter of Law......................... 4

        1.   Purpose and Character of the Use ............................................... 5

        2.   The Nature of the Copyrighted Works........................................ 5

        3.   Amount and Substantiality of the Use ....................................... 5

        4.   Market Harm ............................................................................... 6

    E.   "Failure to Mitigate Damages" is Not an Available Defense................ 6

    F.   There is No Evidence to Support NBC's Affirmative Defense that
Providence has Failed to Mark Its Copyrighted Material, and the
Defense Should be Dismissed................................................................ 8

    G.   The Record is Devoid of Any Facts to Support the Defense of
"Copyright Misuse" and "Unclean Hands" and This Defense Fails as a
Matter of Law......................................................................................... 9

    H.   NBC's Affirmative Defenses of "Acquiescence, Ratification, Consent,
Laches, Waiver, and/or Estoppel" Fail as a Matter of Law................ 11

IV. CONCLUSION ............................................................................................ 13

1

**Plaintiff's Reply in Support of Motion for Partial Summary Judgment**

2

I.      INTRODUCTION AND FACTUAL BACKGROUND ..............................39

3

II.     ARGUMENT ...................................................................................42

4

     A.     Partial Summary Judgment On NBCU's Affirmative Defenses Is Proper

5

        ..........................................................................................42

6

        1.     NBC's Affirmative Defenses of Acquiescence, Ratification,

7

           Laches, and Consent Fail as a Matter of Law. .........................42

8

        2.     NBC Has Not and Cannot Rebut the Presumptions of Validity of

9

           Providence's Copyright Registrations. .....................................44

10

        3.     There Are No Material Issues of Fact Concerning NBCU's Sixth

11

           Affirmative Defense, Fair Use...................................................45

12

        4.     Failure to Mitigate is Not a Valid Defense...............................47

13

        5.     Unclean Hands and Copyright Misuse Are Not Valid and

14

           Applicable Defenses. ................................................................48

15

III.    CONCLUSION ..............................................................................48

16

17

18

19

20

21

22

23

24

25

26

27

28

1

# DEFENDANT'S TABLE OF CONTENTS

2

I.    INTRODUCTION ............................................................ 157

3

II.   FACTUAL BACKGROUND ................................................ 19

4

    A.    Providence Promises The COR "May Be Forwarded." ........................ 19

5

    B.    Providence Never Communicates Any Other License Terms. ........... 180

6

    C.    Providence Tracks Its Customer's Emails. ......................................... 191

7

    D.    Providence Begins Suing Its Customers. ............................................ 202

8

    E.    Providence's Harassing Litigation Tactics. ....................................... 202

9

    F.    Providence Fails To Appear At Its Depositions. ............................... 213

10

    G.    Providence Fails To Meet And Confer Regarding This Motion. ....... 224

11

III.  ARGUMENT ................................................................. 246

12

    A.    Providence's Motion Is Unnecessary. ............................................... 246

13

    B.    Providence's Motion Is Improper. ..................................................... 268

14

    C.    Partial Summary Judgment On NBCU's Affirmative Defenses Is Improper And Unnecessary ............................................................. 2729

15

16

        1.    NBCU, not Providence, is entitled to summary judgment on NBCU's second affirmative defense .................................. 2729

17

18

        2.    There are material issues of fact concerning NBCU's fourth and fifth affirmative defenses. ................................ 291

19

        3.    There are material issues of fact concerning NBCU's sixth affirmative defense. .......................................... 313

20

21

        4.    NBCU does not intend to assert its seventh and ninth affirmative defenses at trial. .................................. 346

22

        5.    Failure to mitigate is a valid defense. .................................. 346

23

        6.    Unclean Hands and Copyright Misuse are valid and applicable defenses. ............................................... 3739

24

IV.   CONCLUSION ............................................................. 380

25

26

27

28

1

2

## PLAINTIFF'S TABLE OF AUTHORITIES

Cases

3

*Adams v. Agrusa*, 2016 WL 7665410 (C.D. Cal. July 1, 2016) ................................. 10

4

*Advanced Cardiovascular Sys., Inc. v. Medtronic, Inc.*, 1996 WL 467273 (N.D. Cal. 1996) ................................................................................................ 15

5

6

*AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*, 626 F.3d 699 (2d Cir. 2010) ...................................................................................................... 8

7

*Bass v. Syracuse Univ.*, 2020 WL 4934585 (N.D.N.Y. Aug. 24, 2020) .................. 47

8

*Bell v. Wilmott Storage Servs., LLC*, 12 F.4th 1065 (9th Cir. 2021) ......................... 2

9

*BPI Sports, LLC v. Ellis*, 2014 WL 12573993 (C.D. Cal. Aug. 1, 2014) ................................................... 3

10

11

*California Brewing Co. v. 3 Daughters Brewing LLC*, 2016 WL 4001133 (E.D. Cal. 2016) ....................................................... 14, 47

12

*Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569 (1994) ........................................ 7

13

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ................................................. 2

14

*Classical Silk, Inc. v. Dolan Grp., Inc.*, No. 14-cv-09224, 2016 WL 11755590 (C.D. Cal. May 4, 2016) ................................................................................ 15, 51

15

16

*Creative Photographers, Inc. v. Brock Collection, LLC*, 2021 WL 3568243 (C.D. Cal. July 7, 2021) ...................................................................... 13, 14, 46, 47

17

*Davis v. Hollywood & Ivar, LLC*, 2021 WL 4816823 (C.D. Cal. 2021) ................. 16

18

*Desert Eur. Motorcars, Ltd. v. Desert Eur. Motorcars, Inc.*, 2011 WL 3809933 (C.D. Cal. 2011) .......................................................................................... 15

19

*Deveraux v. Abbey*, 263 F.3d 1070 (9th Cir. 2001) .................................................... 2

20

*Dr. Seuss Enterprises, L.P. v. Penguin Books USA, Inc.*, 109 F.3d 1394 (9th Cir. 1997) ..................................................................................................... 50

21

22

*Energy Intel. Grp., Inc. v. Kayne Anderson Cap. Advisors, L.P.*, 948 F.3d 261, (5th Cir. 2020) ................................................................................................. 51

23

*Field v. Google Inc.*, 412 F. Supp. 2d 1106, 1116 (D. Nev. 2006) .......................... 47

24

25

*GE Capital Commercial, Inc. v. Worthington Nat. Bank*, 2011 WL 5025153 (N.D. Tex. Oct. 20, 2011) .................................................. 7

26

*Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539 (1985)....... 7, 50

27

*Harrington v. Dugar*, 2024 WL 3001482 (C.D. Cal. May 14, 2024) ..................... 11

28

*Interscope Recs. v. Time Warner, Inc.*, No. 10-cv-1662, 2010 WL 11505708 (C.D. Cal. June 28, 2010) ........................................................................... 11, 52

*J&J Sports Prods., Inc. v. Juarez*, 2016 WL 795891 (S.D. Cal. Mar. 1, 2016)........ 46

*Lewis v. Activision Blizzard, Inc.*, 634 F. App'x 182 (9th Cir. 2015)........................ 48

*Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) .......... 2

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 454 F. Supp. 2d 966 (C.D. Cal. 2006) ................................................................................................................ 11

*Michael Grecco Prods., Inc. v. Livingly Media, Inc.*, 2021 WL 2546749 (C.D. Cal. Apr. 16, 2021) ....................................................................................................... 12

*New Tradition Media, LLC v. Rittersbacher Sunset, LLC, et al.*, 2023 WL 8351523 (C.D. Cal. Oct. 13, 2023) ...................................................................................... 11

*Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663 (2014) .............. 15, 16, 46, 47

*Pfizer, Inc. v. Int'l Rectifier Corp.*, 685 F.2d 357 (9th Cir. 1982) ........................... 12

*Pinkette Clothing, Inc. v. Cosm. Warriors Ltd.*, 894 F.3d 1015 (9th Cir. 2018)....... 52

*Roley v. New World Pictures, Ltd.*, 19 F.3d 479 (9th Cir. 1994) .............................. 16

*Rosen v. Masterpiece Mktg. Grp., LLC*, 222 F. Supp. 3d 793 (C.D. Cal. 2016) ...... 15

*Rosen v. Movie Times, Inc.*, 2021 WL 1338960 (N.D. Cal. Apr. 9, 2021) ................. 2

*S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081 (9th Cir. 1989) ...................................... 4

*Sega Enterprises Ltd. v. Accolade, Inc.*, 977 F.2d 1510 (9th Cir. 1992) .................. 49

*Seller Agency Council, Inc. v. Kennedy Ctr. for Real Estate Educ., Inc.*, 621 F.3d 981 (9th Cir. 2010) .............................................................................................. 14

*Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417 (1984).................... 6

*Starship, LLC v. Ghacham, Inc.*, No. 21-cv-04665, 2023 WL 5670788 (C.D. Cal. July 17, 2023)..................... 5

*Trujillo v. Yates*, 2010 WL 1173020 (E.D. Cal. Mar. 23, 2010) ................................................... 1

*U.S. v. Griffin*, 84 F.3d 912 (7th Cir. 1996) ........................................................... 42

*United Fabrics Int'l, Inc. v. C&J Wear, Inc.*, 630 F.3d 1255 (9th Cir. 2011) ............ 4

*Whirl v. Kern*, 407 F.2d 781 (5th Cir. 1968) ............................................................. 7

*Worldwide Church of God v. Philadelphia Church of God, Inc.*, 227 F.3d 1110 (9th Cir. 2000).............................................................................................................. 6

**Statutes**

17 U.S.C. § 101.......................................................................................................... 45

17 U.S.C. § 107............................................................................................................ 4

17 U.S.C. § 109 ................................................................................................... 5

17 U.S.C. § 401(d) .............................................................................................. 3

17 U.S.C. § 410(c) .......................................................................................... 3, 40

17 U.S.C. § 412 ................................................................................................... 4

17 U.S.C. § 501(a) .............................................................................................. 9

17 U.S.C. § 504(c)(2) ...................................................................................... 3, 9

1

## DEFENDANT'S TABLE OF AUTHORITIES

2

## Cases

3

*Bass v. Syracuse Univ.*,
    No. 5:19-cv-566 (TJM/ATB), 2020 U.S. Dist. LEXIS 152607 (N.D.N.Y.

4

    Aug. 24, 2020) .................................................................................................. 30

5

*Bourne v. Walt Disney Co.*,
    68 F.3d 621 (2d Cir. 1995) ............................................................................... 26

6

7

*Classical Silk v. Dolan Grp.*,
    No. CV 14-09224-AB (MRWx), 2016 U.S. Dist. LEXIS 203961 (C.D. Cal.
    May 4, 2016) .............................................................................................. 37, 38

8

9

*Desire, LLC v. Manna Textiles, Inc.*,
    986 F.3d 1253 (9th Cir. 2021)......................................................................... 37

10

*Divine Dharma Meditation Int'l, Inc. v. Inst. of Latent Energy Studies*, No. 19-
    55264, 2021 U.S. App. LEXIS 25145 (9th Cir. Aug. 23, 2021) .................. 35

11

*Field v. Google, Inc.*,
    412 F. Supp. 2d 1106, (D. Nev. 2006) ............................................... 26, 27, 30

12

13

*Gladwell Gov't Servs., Inc. v. Cty. of Marin*,
    265 Fed. Appx. 624 (9th Cir. 2008) ............................................................... 31

14

*Great Minds v. Office Depot, Inc.*,
    945 F.3d 1106 (9th Cir. 2019).......................................................................... 26

15

16

*Harper House, Inc. v. Thomas Nelson, Inc.*,
    889 F.2d 197 (9th Cir. 1989).......................................................................... 34

17

*Hitek Software LLC v. Timios, Inc.*,
    No. CV 12-709 CAS (AJWx), 2012 U.S. Dist. LEXIS 86560 (C.D. Cal.

18

    June 18, 2012) ................................................................................................. 38

19

*Interscope v. Time Warner, Inc.*,
    No. CV 10-1662 SVW (PJWx), 2010 U.S. Dist. LEXIS 151460 (C.D. Cal.

20

    June 28, 2010) ....................................................................................... 26, 27, 39

21

*Keane Dealer Servs., Inc. v. Harts*,
    968 F. Supp. 944 (S.D.N.Y. 1997).................................................................. 26

22

23

*Kelly v. Arriba Soft Corp.*,
    336 F.3d 811 (9th Cir. 2003)........................................................................... 34

24

*Malibu Media, LLC v. Julien*,
    No. 1:12-cv-01730-TWP-MJD, 2013 U.S. Dist. LEXIS 133288 (S.D. Ind.

25

    Sep. 17, 2013)........................................................................................... 30, 37

26

*Malibu Media, LLC v. Peterson*,
    No. 16-CV-786 JLS (NLS), 2017 U.S. Dist. LEXIS 66170 (S.D. Cal. May

27

    1, 2017) ........................................................................................................... 38

28

*Malibu Media, LLC v. Zumbo*,
  No. 2:13-cv-729-JES-DNF, 2014 U.S. Dist. LEXIS 82272 (M.D. Fla. June
  17, 2014) ................................................................................................................. 21

*Medlock v. Host Int'l, Inc.*,
  No. 1:12-cv-02024-JLT, 2013 U.S. Dist. LEXIS 61866 (E.D. Cal. Apr. 29,
  2013) ....................................................................................................................... 28

*Michael Grecco Prods. v. Livingly Media*,
  No. CV 20-0151 DSF (JCx), 2021 U.S. Dist. LEXIS 117652 (C.D. Cal.
  Apr. 16, 2021) ......................................................................................................... 22

*Mon Cheri Bridals, LLC v. Cloudflare, Inc.*,
  No. 19-cv-01356-VC (TSH), 2021 U.S. Dist. LEXIS 65446 (N.D. Cal. Apr.
  1, 2021) ............................................................................................................. 20, 37

*Murphy v. Trader Joe's*,
  No. 16-cv-02222-SI, 2017 U.S. Dist. LEXIS 7754 (N.D. Cal. Jan. 19,
  2017) ....................................................................................................................... 38

*Omega S.A. v. Costco Wholesale Corp.*,
  776 F.3d 692 (9th Cir. 2015) ................................................................................. 22

*Petrella v. MGM*,
  572 U.S. 663 (2014) .......................................................................................... 30, 38

*Satis Vacuum Indus. Vertriebs, A.G. v. Optovision Techs., Inc.*,
  Civil Action No. 3:99-CV-2147-M, 2001 U.S. Dist. LEXIS 15043 (N.D.
  Tex. July 26, 2001) ................................................................................................. 30

*Sega Enters. v. Accolade, Inc.*,
  977 F.2d 1510 (9th Cir. 1992) ............................................................................... 34

*Sisyphus Touring, Inc. v. TMZ Prods., Inc.*,
  208 F. Supp. 3d 1105, 1112 (C.D. Cal. 2016) ...................................................... 31

*Sony Corp. of Am. v. Universal City Studios, Inc.*,
  464 U.S. 417 (1984) ............................................................................................... 34

*Stevens v. Corelogic, Inc.*,
  194 F. Supp.3d 1046 (S.D. Cal. 2016) .................................................................. 26

*Sw. Mfg. LLC v. Wilmar LLC*,
  No. CV 22-8541-MWF (PDx), 2024 U.S. Dist. LEXIS 126279 (C.D. Cal.
  July 16, 2024) ......................................................................................................... 31

*Vernor v. Autodesk, Inc.*,
  621 F.3d 1102 (9th Cir. 2010) ............................................................................... 22

**Statutes**

17 U.S.C. § 412 .............................................................................................................. 22

17 U.S.C. § 107 .............................................................................................................. 33

Fed. R. Civ. P. 30(b)(6) ................................................................................17, 24, 32

**<u>Other Authorities</u>**

4 Nimmer on Copyright § 13F.08 ..........................................................................35

Ninth Circuit Model Jury Instructions § 17.35........................................................37

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**

## IV.    INTRODUCTION

NBC has asserted, inter alia, the following affirmative defenses: (1) "the doctrines of acquiescence, ratification, consent, laches, waiver, and/or estoppel"; (2) "the copyrights that are relied on are invalid and/or unenforceable"; (3) "the copyrights upon which [Providence's] claims rely are not registered, have registrations which are invalid or not properly obtained, and/or were registered more than three months after first publication"; (4) "the doctrine of fair use"; (5) "the doctrine of innocent infringement"; (6) that "[Providence] failed to mitigate its damages"; (7) that "[Providence] failed to properly mark its alleged copyrighted material and failed to give Defendant sufficient notice of its copyright"; and (8) "the doctrine of copyright misuse and unclean hands." (Stmt. of Facts 77.).  As set forth in greater detail below, each of these affirmative defenses raised by NBC are not supported by the factual record in this case or fail as a matter of law.  Accordingly, summary judgment should be entered dismissing these eight affirmative defenses. The only remaining affirmative defenses raised by NBC are based on the Copyright Act's statute of limitations and that the copyrighted works were expressly or impliedly licensed or authorized, which are the subject of NBC's motion for summary judgment.

## V.    LEGAL STANDARD

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. Proc. 56(c).  "An issue of fact is 'genuine' if 'there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way.'" *Trujillo v. Yates*, 2010 WL 1173020, at *2 (E.D. Cal. Mar. 23, 2010) (internal citations omitted).  "A fact is 'material' if, under the applicable substantive law, it is 'essential to the proper disposition of the claim.'" *Id.*  Entry of summary judgment is appropriate against a party who fails to make a showing sufficient to establish the existence of an element on which that party will bear the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A party opposing a motion for summary judgment may

not rest upon allegations or pleadings, but must set forth specific facts showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Deveraux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001).

## VI.    ARGUMENTS

### A.    NBC's Defense That Its Infringement Was Innocent Should Be Dismissed as a Matter of Law

NBC asserts an affirmative defense based on NBC's state of mind that should be dismissed because it is not a defense to infringement.    Additionally, NBC's innocent infringement defense is unavailable as a matter of law because every issue of COR NBC infringed carried a copyright notice. (Stmt. of Facts 79).

"[C]opyright infringement is a strict liability tort" and thus Providence does not need to prove NBC's mental state to prosecute a copyright claim. *Bell v. Wilmott Storage Servs., LLC*, 12 F.4th 1065, 1081 (9th Cir. 2021). "The defendant's intent is simply not relevant: The defendant is liable even for 'innocent' or 'accidental' infringements." *Biller v. Peter Rodgers Org., Ltd.*, 2006 WL 8443516, at *5 (C.D. Cal. Jan. 19, 2006), aff'd, 281 F. App'x 659 (9th Cir. 2008) (internal citations omitted).  Willfulness is only relevant to the discretionary determination of whether to enhance or reduce the statutory damage range after the plaintiff establishes liability. *See Rosen v. Movie Times, Inc.*, 2021 WL 1338960, at *5 (N.D. Cal. Apr. 9, 2021). Therefore, NBC's assertions regarding its state of mind have no impact on NBC's liability, and is not a proper affirmative defense.

Moreover, innocent infringement is unavailable to NBC as a matter of law because each of the COR works NBC infringed contained a proper copyright notice. (Stmt. of Facts 79.)  *See also BPI Sports, LLC v. Ellis*, 2014 WL 12573993, at *3 (C.D. Cal. Aug. 1, 2014) (holding a defendant in a copyright infringement suit may not "claim to be an innocent infringer to mitigate actual or statutory damages if he had access to the published copy of the work that bore a copyright notice.").  The range of statutory damages for non-willful infringement is between $750 per work to

$30,000 per work.  If the infringer sustains the burden of proving that it was not aware and had no reason to believe that its acts constituted infringement, the statutory damage minimum is lowered to $200 per work.  17 U.S.C. § 504(c)(2).  However, if a notice of copyright appears on the published work to which a defendant in a copyright infringement suit had access, "no weight shall be given to such a defendant's interposition of a defense based on innocent infringement in mitigation of actual or statutory damages . . . ." 17 U.S.C. § 401(d).  NBC's knowledge or intent is irrelevant to the application of Section 401(d), which plainly precludes the "innocent infringement" defense in this suit.  *See BPI Sports, LLC v. Ellis*, 2014 WL 12573993, at *3 (C.D. Cal. Aug. 1, 2014).  There is no dispute that every COR work delivered to NBC contained a proper copyright notice fully in compliance with Section 401 of the Copyright Act, and therefore the innocent infringement defense is not available to NBC as a matter of law.  NBC's defense based on innocent infringement (Defense No. 7) should be dismissed as a matter of law.

**B.**    **The Record Is Devoid of Any Facts to Support the Defense of "Invalidity and/or Unenforceability," and This Defense Fails as a Matter of Law**

NBC's fourth affirmative defense asserts that Providence's copyrights are invalid and/or unenforceable because the works contain material which is not protectable under copyright law.  Providence owns copyright registrations covering each COR work at issue in this case. (Stmt. of Facts 78.)  *See also* Ex. C to Complaint (Dkt. No. 2-2 and 2-3).  A copyright registration from the United State Copyright Office is "prima facie evidence of the validity of the copyright and the facts stated in the certificate."  17 U.S.C. § 410(c); *see also S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1085 (9th Cir. 1989).  NBC has the "burden of rebutting the facts set forth in the copyright certificate."  *United Fabrics Int'l, Inc. v. C&J Wear, Inc.*, 630 F.3d 1255, 1257 (9th Cir. 2011); *S.O.S.*, 886 F.2d at 1085–86.

NBC cannot rebut the presumption of validity afforded by Providence's copyright registrations.  NBC cannot point to any testimony; expert opinion, fact, or

any evidence whatsoever to challenge the presumption that Providence's registrations are valid and subsisting.  Accordingly, NBC's affirmative defense of invalidity and/or unenforceability should be dismissed.

**C.**  **There is No Evidence to Support NBC's Affirmative Defense that Providence's Copyrights Are Not registered, Are Invalid or Not Properly Obtained, And/Or Were Not Registered More Than Three Months After First Publication, and the Defense Should Be Dismissed**

NBC's fifth affirmative defense assert that Providence's claims are barred because some of works at issue were not registered within three months from the date of first publication.  This is not a valid affirmative defense because it does not bar any of Providence's claims or excuse NBC's infringement if NBC prevails on the defense. If a copyright owner registers a work more than three months after the first publication of the work, it does not impact liability, only the copyright owner's remedies. *Starship, LLC v. Ghacham, Inc.*, No. 21-cv-04665, 2023 WL 5670788, at *9 (C.D. Cal. July 17, 2023); 17 U.S.C. § 412.  If a work is not registered within three months of first publication, the copyright owner will not be entitled to statutory damages or attorney's fees for infringements that occurred prior to the date of registration. 17 U.S.C. § 412.  However, a copyright owner's rights in the corresponding work remain and they may seek actual damages for infringement.  NBC's additional fifth affirmative defenses that Providence's copyrights are not registered, are invalid or not properly obtained are fully addressed in Section B above.  Therefore, Providence respectfully requests that summary judgment be granted regarding NBC's fifth affirmative defense.

**D.**  **NBC's Defense of "Fair Use" Fails as a Matter of Law**

NBC's Sixth Affirmative Defense alleges that Providence's claims "are barred, in whole or in part, by the doctrine of fair use." Dkt. 20, p. 10.  The Copyright Act provides that "the fair use of a copyrighted work ... for purposes such as criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research, is not an infringement of copyright." 17 U.S.C. § 107.  For a

fair use defense, the courts will evaluate the following statutory factors: "(1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work." *Id*.

### 1.    Purpose and Character of the Use

NBC's use of COR was entirely commercial: NBC's Environment, Health & Safety Department forwarded COR as a commercial function of NBC's business. "[E]very commercial use of copyrighted material is presumptively an unfair exploitation of the monopoly privilege that belongs to the owner of the copyright." *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 450 (1984).

### 2.    The Nature of the Copyrighted Works

The nature of the copyrighted works "typically has not been terribly significant in the overall fair use balancing." *Triller Fight Club II LLC v. H3 Podcast*, 2023 WL 11877604, at *7 (C.D. Cal. Sept. 15, 2023) (*quoting Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 803 (9th Cir. 2003)). Providence's analysis and interpretation of events, its choice of words and manner of expression embody the creativity and originality in each COR work. Providence's authorship also extends to the selection of and emphasis to particular events and developments, and the way Providence coordinated and arranged the articles in each COR work. *See* exemplary copies of the COR publication attached as Ex. E to the Brook Declaration. This factor weighs against a finding of fair use.

### 3.    Amount and Substantiality of the Use

The third factor examines the extent to which the copyrighted image was duplicated. See 17 U.S.C. § 109. Here, it is uncontroverted that NBC infringed the entire COR work. (Stmt. of Fact 73). "While 'wholesale copying does not preclude fair use per se, copying an entire work militates against a finding of fair use.'" *Worldwide Church of God v. Philadelphia Church of God, Inc.*, 227 F.3d 1110, 1118

(9th Cir. 2000) (citations omitted).  Moreover, "the fact that a substantial portion of the infringing work was copied verbatim is evidence of the qualitative value of the copied material, both to the originator and to the plagiarist who seeks to profit from marketing someone else's copyrighted expression." *Id.* (*citing Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 565 (1985)).  Accordingly, the third factor weighs against fair use.

### 4.    Market Harm

The last factor "requires courts to consider not only the extent of market harm caused by the particular actions of the alleged infringer, but also 'whether unrestricted and widespread conduct of the sort engaged in by the defendant ... would result in a substantially adverse impact on the potential market' for the original." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 590 (1994).  NBC's infringement of Providence's COR works harmed the market for Providence's COR works and the value because by distributing COR beyond the five-party subscription that NBC paid for, NBC harmed Providence's ability to sell subscriptions to other parties.  Therefore, NBC's infringement of COR harmed the market for or value of Providence's COR works, and thus this factor weighs in favor of Providence.

Accordingly, Providence requests that summary judgment be granted regarding NBC's fair use affirmative defense.

### E.    **"Failure to Mitigate Damages" is Not an Available Defense**

The duty to mitigate arises only when a plaintiff has actual knowledge of its injury.  *Whirl v. Kern*, 407 F.2d 781, 797-98 (5th Cir. 1968); *see also GE Capital Commercial, Inc. v. Worthington Nat. Bank*, 2011 WL 5025153, at *3 (N.D. Tex. Oct. 20, 2011) ("the doctrine of mitigation of damages is applicable only if the victim of the wrongdoer's act has knowledge of the fact which makes mitigation or avoidance of the consequences necessary"); *AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*, 626 F.3d 699, 738 (2d Cir. 2010) (rejecting argument that defendant could have mitigated harm that it had no knowledge of).  To require otherwise would put the

unreasonable burden on a copyright owner to be constantly mitigating against any and all potential, but unidentified, injuries.

Here, Providence was not aware of NBC's infringement until in or about May, 2022.  (Stmt. of Facts 74.)  NBC's infringement took place on its secure computer networks, and NBC never informed Providence that it was copying and distributing COR.  (Stmt. of Facts 83.)  NBC cannot point to any material fact showing that Providence had actual knowledge of NBC's infringement.

Additionally, the mitigation doctrine is not applicable in a case where, like here, the wrongdoer faults the plaintiff for not taking action to prevent future acts of copyright infringement.  The failure to mitigate damages defense "refers to methods of apportioning damages in light of a plaintiff's reasonable efforts to reduce loss after an injury occurs, not before." *Energy Intel. Grp., Inc. v. Kayne Anderson Cap. Advisors, L.P.*, 948 F.3d 261, 274 (5th Cir. 2020).

Mitigation thus involves actions taken (or not taken) that would lessen the harm resulting from an injury that has already occurred. The duty to mitigate damages can only arise after an injury occurs, not before. *Kayne Anderson*, 948 F.3d at 274.  A plaintiff's unreasonable failure to prevent a future injury implicates the doctrine of contributory fault rather than mitigation.  Dan Dobbs, Remedies § 3.7 at 187 (1973) ("[T]he contributory negligence defense looks to the plaintiff's pre-tort conduct, while the avoidable consequences defense looks to his post-tort conduct").  Contributory fault is inapplicable to copyright infringement claims. *Interplan Architects, Inc. v. C.L. Thomas, Inc.*, 2010 WL 4366990, at *48 (S.D. Tex. Oct. 27, 2010).

Each issue of COR is a separate and individual work. Furthermore, every act of infringement of an issue of COR is an independently actionable legal wrong giving rise to a separate harm. *Kayne Anderson*, 948 F.3d at 274. NBC's infringing conduct, therefore, did not consist of a single continuing harm, but rather a series of discrete and separate acts of infringement resulting from NBC's copying and distribution of each new daily issue of COR over a period of years.

NBC's mitigation defense fails as a matter of law because NBC cannot produce any evidence identifying what steps or actions Providence could have taken to mitigate or lessen its damages from NBC's infringement (as opposed to preemptively preventing future infringements). There is no evidence in the record of any actions Providence could have taken to mitigate the harm resulting from infringements that NBC had already committed, nor is there any evidence that there was any further harm after the initial infringement. Despite the foregoing, Providence did take preventative steps to address copyright infringement. Every issue of COR contained copyright notices. (Stmt. of Facts ¶ 79).

However, actions Providence could have taken prior to infringement and preemptive measures are not mitigating actions. NBC's mitigation defense (Defense No. 8) should be dismissed because NBC never advised Providence of its internal distribution and therefore, Providence did not have the requisite knowledge of the injury necessary to trigger the duty to mitigate. (Stmt. of Facts 11-16, 74, 83.) Additionally, NBC cannot point to any act or omission whereby Providence failed to mitigate harm resulting from an infringement NBC had previously committed (as opposed to preventing future infringements).

**F.** **There is No Evidence to Support NBC's Affirmative Defense that Providence has Failed to Mark Its Copyrighted Material, and the Defense Should be Dismissed**

NBC's Ninth Affirmative Defense alleges that Providence "failed to properly mark its alleged copyrighted material." (Defense No. 9). However, failure to mark is unavailable to NBC as a matter of law because each of the COR works NBC infringed contained a proper copyright notice. (Stmt. of Facts 79). *See also Adams v. Agrusa*, 2016 WL 7665410, at *2 (C.D. Cal. July 1, 2016), aff'd, 693 F. App'x 563 (9th Cir. 2017) (internal citations omitted) ("An effective notice requires: (1) the symbol ©, the word "copyright", or the abbreviation "copr."; (2) the year of first publication of the work; and (3) the name of the owner of the copyright in the work.").

Here, NBC's threadbare allegation that Providence "failed to properly mark its alleged copyrighted material" provides no facts or legal theories as to why NBC alleges that Providence's copyrights in COR were not properly marked. Further, failure to mark is not an affirmative defense to copyright infringement because the legal consequence for failing to mark a copyrighted work simply provides the possibility, but does not mandate, for a lower minimum statutory damages for innocent infringement. 17 U.S.C. § 504(c)(2). It does not defeat liability. Therefore, Providence respectfully requests that summary judgment be granted regarding NBC's Ninth Affirmative Defense.

## G.    The Record is Devoid of Any Facts to Support the Defense of "Copyright Misuse" and "Unclean Hands" and This Defense Fails as a Matter of Law

To establish an affirmative defense of copyright misuse, NBC bears the burden to show either (1) that Providence violated antitrust laws; (2) that Providence illegally extended its monopoly beyond the scope of the copyright; or (3) violated the public policies underlying copyright laws. *Omega S.A. v. Costco Wholesale Corp.*, 776 F.3d 692, 700 (9th Cir. 2015). It bears noting that courts have held that the affirmative defense of copyright misuse is subsumed in the unclean hands defense." *TSX Toys, Inc. v. 665, Inc.*, 2015 WL 12746211, at *9 (C.D. Cal. 2015). Thus, NBC's "copyright misuse" Affirmative Defense (Defense No. 10) is "duplicative" of its "unclean hands" Affirmative Defense. Courts have recognized the affirmative defense of unclean hands "when the plaintiff's transgression is of serious proportions and relates directly to the subject matter of the infringement action." *See Dream Games of Arizona, Inc. v. PC Onsite*, 561 F.3d 983, 990–91 (9th Cir. 2009).

There are no material facts that show that Providence extended its monopoly beyond the scope of its copyright grants or made any misrepresentations at all, let alone serious misrepresentations. (Stmt. of Facts ¶¶ 75-76.) Providence seeks only to enforce its statutorily-granted exclusive right to reproduce its copyrighted works against infringers as authorized by the Copyright Act. *Id.*; 17 U.S.C. § 501(a). A

plaintiff's enforcement of its copyrights does not constitute copyright misuse or unclean hands. *See*, *e.g.*, *Harrington v. Dugar*, 2024 WL 3001482, at *2 (C.D. Cal. May 14, 2024); *New Tradition Media, LLC v. Rittersbacher Sunset, LLC, et al.*, 2023 WL 8351523, at *8 (C.D. Cal. Oct. 13, 2023); *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 454 F. Supp. 2d 966, 998 (C.D. Cal. 2006).

Since Providence's claims are well within the purpose of the Copyright Act, NBC cannot and has not alleged that Providence violated antitrust laws. *Interscope Recs. v. Time Warner, Inc.*, No. 10-cv-1662, 2010 WL 11505708, at *10 (C.D. Cal. June 28, 2010) (holding that enforcing one's copyright does not give rise to an antitrust violation or misuse defense) (internal citations omitted).

Nor has NBC met its burden of proof that Providence illegally extended its monopoly beyond the scope of its copyrights.  Providence owns valid copyright registrations which it alleges NBC has infringed.  (Stmt. of Facts 78).  To prevail on a defense of misuse or unclean hands, this District requires a defendant alleging misuse or unclean hands grounded in the plaintiff's enforcement of its intellectual property rights to demonstrate that the plaintiff's conduct is inequitable, where "only a showing of wrongfulness, willfulness, bad faith, or gross negligence, proved by clear and convincing evidence, will establish sufficient culpability for invocation of the doctrine of unclean hands." *Michael Grecco Prods., Inc. v. Livingly Media, Inc.*, 2021 WL 2546749, at *8 (C.D. Cal. Apr. 16, 2021) (*citing Pfizer, Inc. v. Int'l Rectifier Corp.*, 685 F.2d 357, 359 (9th Cir. 1982)).

NBC cannot show any facts by clear or convincing evidence of any level of wrongdoing by Providence, much less the heightened standard required by the Ninth Circuit.  NBC has produced no evidence showing that Providence has sought to enforce rights not specifically granted by the Copyright Act, which allows authors to protect the very assets they work diligently to create.  (Stmt. of Facts ¶¶ 75-76.)

Here, the evidence demonstrates that NBC engaged in a pattern of copying Providence's copyrighted publications, despite notice of Providence's rights in those publications and elsewhere, over a period of several years.  (Stmt. of Facts 6-73).

Indeed, despite knowledge of Providence's copyrights, and that forwarding copies of Providence's publications violated those copyrights, NBC continued to copy Providence's publications and hid it from Providence for many years. (Stmt. of Facts 81-83.)  Providence's claims of copyright infringement are supported by the facts which establish NBC's pattern of systematic infringement of each of Providence's claimed copyright registrations.  (Stmt. of Facts 6-73.)  Under the circumstances, there is no genuine issue of material fact to demonstrate that Providence acted in bad faith and with an improper purpose in bringing this lawsuit.

NBC's Answer alleges Providence is in violation of the California Consumer Privacy Act, Cal. Civ. Code §§ 1798.100 *et seq.* ("CCPA") as part of NBC's unclean hands defense.  However, NBC has not produced any facts that would show that the CCPA even applies to Providence as a threshold matter. (Stmt. of Facts 84-86.)

Therefore, Providence respectfully requests that summary judgment be granted regarding NBC's eighth affirmative defense of copyright misuse and unclean hands.

## H. NBC's Affirmative Defenses of "Acquiescence, Ratification, Consent, Laches, Waiver, and/or Estoppel" Fail as a Matter of Law

NBC's Second Affirmative Defense alleges that "Plaintiff's claims are barred, in whole or in part, by the doctrines of acquiescence, ratification, consent, laches, waiver, and/or estoppel."  Dkt. 20, p. 9.

Acquiescence is not a valid defense to a claim of copyright infringement.  *See Creative Photographers, Inc. v. Brock Collection, LLC*, 2021 WL 3568243, at *2 (C.D. Cal. July 7, 2021).  Therefore, NBC's acquiescence affirmative defense should be stricken as legally insufficient.  Notwithstanding the foregoing, to establish an acquiescence defense, a defendant must establish that "(1) the senior user actively represented that it would not assert a right or a claim; (2) the delay between the active representation and assertion of the right or claim was not excusable; and (3) the delay caused the defendant undue prejudice." *California Brewing Co. v. 3 Daughters Brewing LLC*, 2016 WL 4001133, at *3 (E.D. Cal. 2016) (*quoting Seller Agency*

*Council, Inc. v. Kennedy Ctr. for Real Estate Educ., Inc.*, 621 F.3d 981, 989 (9th Cir. 2010)).  The record is devoid of any such facts.

The defense of ratification is a defense to claims of breach of contract.  *J&J Sports Prods., Inc. v. Juarez*, No. 15-CV-1477, 2016 WL 795891, at *1 (S.D. Cal. Mar. 1, 2016) ("Juarez's affirmative defense[] … eleven (ratification) [is] normally [a] defense[] in contract law, but J & J Sports has not alleged a breach of contract and Juarez hasn't alleged facts to suggest [this] affirmative defenses [is] material.").  Here, Providence alleges copyright infringement, not breach of contract.  (Stmt. of Facts 76.)  As such, NBC's ratification defense is wholly immaterial to Providence's copyright infringement claim.  Therefore, NBC's ratification affirmative defense should be stricken as immaterial.

Consent is not valid defenses to a claim of copyright infringement.  *See Creative Photographers v. Brock Collections, LLC*, 2021 WL 3568243, at *2 (C.D. Cal., 2021).  Therefore, NBC's consent affirmative defense should be stricken as legally insufficient.  Notwithstanding the foregoing, the defense of "consent" requires the party asserting it to allege facts establishing that the copyright claimant actively consented to the infringing conduct and when.  *California Brewing Co.*, 2016 WL 4001133, at *3 .  The record is devoid of any such facts.

The doctrine of laches is legally insufficient, as laches is not a defense to copyright infringement.  *See Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 667, 679 (2014) ("[W]e adhere to the position that, in face of a statute of limitations enacted by Congress, laches cannot be invoked to bar legal relief"); *see also Classical Silk, Inc. v. Dolan Grp., Inc.*, 2016 WL 11755590, at *4 (C.D. Cal. 2016).  Accordingly, laches is unavailable in copyright infringement cases.  Notwithstanding the foregoing, laches requires a defendant to allege "neglect or delay in bringing suit to remedy an alleged wrong, which taken together with lapse of time and other circumstances, causes prejudice to the adverse party and operates as an equitable bar." *Desert Eur. Motorcars, Ltd. v. Desert Eur. Motorcars, Inc.*, 2011 WL 3809933, at *3 (C.D. Cal. 2011) (*quoting Advanced Cardiovascular Sys., Inc. v. Medtronic, Inc.*,

1996 WL 467273, at *4 (N.D. Cal. 1996). There is no evidence in the record that the doctrines of laches applies to the case at bar.

To establish waiver, NBC has the burden of proving that Providence "intentionally relinquished or abandoned a known right." *Desert Eur. Motorcars, Ltd.*, 2011 WL 3809933, at *2; *see also Rosen v. Masterpiece Mktg. Grp., LLC*, 222 F. Supp. 3d 793, 804-05 (C.D. Cal. 2016) (striking affirmative defense of waiver of copyright). The Copyright Act "does not provide for waiver of infringing acts within the limitations period if earlier infringements were discovered and not sued upon." *Roley v. New World Pictures, Ltd.*, 19 F.3d 479, 481 (9th Cir. 1994). The record is devoid of any evidence that the doctrine of waiver applies to this case.

Estoppel applies "when a copyright owner engages in intentionally misleading representations concerning his abstention from suit, and the alleged infringer detrimentally relies on the copyright owner's deception." *Petrella*, 572 U.S. at 665; *see also Davis v. Hollywood & Ivar, LLC*, 2021 WL 4816823, at *6 (C.D. Cal. 2021). The record is devoid of any evidence that estoppel applies to this case.

Therefore, Providence respectfully submits that summary judgment be granted regarding NBC's affirmative defenses that "Plaintiff's claims are barred, in whole or in part, by the doctrines of acquiescence, ratification, consent, laches, waiver, and/or estoppel."

## VII. <u>CONCLUSION</u>

For the reasons set forth above, Providence respectfully requests that the Court grant Providence's Motion for Partial Summary Judgment and enter an Order dismissing NBC's affirmative defenses of (1) "the doctrines of acquiescence, ratification, consent, laches, waiver, and/or estoppel"; (2) "the copyrights that are relied on are invalid and/or unenforceable"; (3) "the copyrights upon which [Providence's] claims rely are not registered, have registrations which are invalid or not properly obtained, and/or were registered more than three months after first publication"; (4) "the doctrine of fair use"; (5) "the doctrine of innocent infringement"; (6) that "[Providence] failed to mitigate its damages"; (7) that

"[Providence] failed to properly mark its alleged copyrighted material and failed to give Defendant sufficient notice of its copyright"; and (8) "the doctrine of copyright misuse and unclean hands."

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

### I.    INTRODUCTION

Providence's Motion for Partial Summary Judgment should be denied. Providence has litigated this case with one purpose – to harass NBCU by forcing it to incur unnecessary costs, in the hopes that its meritless claims will result in an undeserved windfall.  Providence is not entitled to any such windfall because its infringement claims are objectively unreasonable.  Providence sells licenses to use its website which include a subscription to "Cal/OSHA" newsletters for approximately $200-$400 per site member.  It solicited NBCU to purchase a multi-user license with the express representation that its newsletters "may be forwarded" on a non-profit basis.  At all relevant times, Providence maintained marketing software that purportedly tracked "forwards" of the emails containing its newsletters.  Yet, after soliciting NBCU's purchase, Providence never informed NBCU that it had changed the terms of its license, and no longer agreed that its newsletters "may be forwarded."

Then, ten years after NBCU agreed to purchase a license, Providence asserted that it was entitled to millions of dollars in statutory damages for supposed "infringement."  Shockingly, the allegedly infringing conduct consists of the very forwarding that Providence stated, in writing, was permitted.  Providence has utilized this tactic against multiple customers, many of which, unfortunately, do not have the resources to fight against Providence's harassing litigation tactics. Providence's owner, Dale Debber, is a frequent litigant in his own right, and yet he refused to appear for his noticed deposition.  Providence also refused to produce another employee for deposition and a witness for a duly-noticed 30(b)(6) deposition.  Further, after being ordered to produce evidence of its revenues, and of any statements that it made to NBCU indicating that forwarding was not permitted, Providence refused to produce any revenue documentation, and also was unable to

1  produce a single document showing that it ever informed NBCU that that the

2  forwarding that it had expressly sanctioned was not allowable—because it never did.

3      Several weeks ago, NBCU notified Providence that it would be moving for

4  summary judgment on the readily-apparent defenses of license, implied license,

5  estoppel, unclean hands, statute of limitations, and failure to properly register its

6  works, but Providence claimed to be unable to meet and confer.  The following

7  week, two days before summary judgment briefs were due, Providence finally

8  agreed to meet and confer on NBCU's motion, and concurrently announced that it

9  was planning on filing its own motion with regard to some of NBCU's affirmative

10 defenses.  The filing of a summary judgment motion with regard to affirmative

11 defenses is wasteful and unnecessary, and NBCU told Providence that the issues

12 presented by its purported motion would be addressed, by rule, during the

13 mandatory meet and confer in connection with the creation of the Final Pretrial

14 Conference Order (during which the parties decide which affirmative defenses will

15 remain in the case given the claims and evidence remaining for trial).  Providence

16 refused to follow this procedure, and insisted on filing a wasteful and immaterial

17 motion for partial summary judgment.

18      Providence's motion for partial summary judgment should be denied as moot

19 because the undisputed facts show that NBCU was authorized to engage in the

20 forwarding that is at the heart of this case.  Indeed, the night before summary

21 judgment motions were due to be exchanged, Providence conceded that it cannot

22 prevail on any of its claimed infringements between 2013 and July of 2017 –

23 because it was during that time period that Providence's emails contained an express

24 statement that its newsletters could be forwarded.  Providence, however, is asserting

25 that it is nevertheless entitled to maintain infringement claims against the very use it

26 expressly approved based on the argument that, in mid-2017, Providence

27 surreptitiously removed the "may be forwarded" language from its emails.  This

28 concession will not salvage Providence's untenable claims.  They must be dismissed

1  – the law does not permit a copyright owner to deliberately encourage a specific use,

2  and then sue its licensee for "infringement."

3      Providence's partial summary judgment motion should also be denied on the

4  merits, as the defenses at issue clearly apply to the facts of this case.

5  **II.    FACTUAL BACKGROUND**

6      **A.    Providence Promises The COR "May Be Forwarded."**

7      Providence regularly sends email news bulletins covering occupational health

8  and safety laws and regulations to professionals working in occupational health and

9  safety roles.  Defendant's Statement of Undisputed Facts ("DSUF") 87.  In these

10  bulletins, Providence solicits sales of "site licenses" and of Providence's weekly

11  publication called the Cal-OSHA Reporter ("COR").  DSUF 88.

12      For years, Providence sent such solicitations to Defendant NBCU and others.

13  DSUF 89.  On December 21, 2012, Providence sent an email with to NBCU's Laura

14  Tankenson stating, "The News Digest provides daily, comprehensive access to

15  important events in the world of occupational health and safety … Timely California

16  news and other original content are covered in our premium edition.  Cal-OSHA

17  Reporter, since 1972, is the most widely read publication in occupational safety and

18  health in California."  DSUF 90.  The email also contains hyperlinks labeled "Email

19  to a Colleague" and "Get Your Own," and concludes with a solicitation: "Visit

20  www.cal-osha.com/subscribe.aspx to order the premium version of the Cal-OSHA

21  Reporter … **The Cal-OSHA Reporter may be forwarded, copied or distributed**."

22  *Id.*  Tankenson forwarded the email to her team, pointing to a news item and noting,

23  "FYI – a couple of interesting articles."  DSUF 91.

24      This type of solicitation was not uncommon.  DSUF 92.  Providence sent

25  Tankenson another email several months earlier promoting the Cal-OSHA Reporter

26  and, again stating that "**The Cal-OSHA Reporter may be forwarded, copied or**

27  **distributed**."  DSUF 93.

28

**B.    Providence Never Communicates Any Other License Terms.**

On February 19, 2013, after Tankenson received yet another email from Providence promoting the COR and again promising that "**The Cal-OSHA Reporter may be forwarded, copied or distributed**."  DSUF 94.  Tankenson forwarded the email to her team and noted: "Several interesting articles.  Also, based on your votes/feedback, I will be getting a membership for the Cal-OSHA reporter."  DSUF 95.

Providence's website refers to its "premium" content as a "Site License," and a "multi-copy license."  DSUF 96.  Providence provides annual pricing based on the number of site "members."  DSUF 97.  After receiving the February 19, 2013 email, NBCU purchased a license.  DSUF 98.  NBCU made a senior employee on each of several teams the "members" with accounts to access the password-protected sections of Providence's website, as those were the individuals who might need and be interested in the more detailed information contained in the "premium" content.  DSUF 99.  NBCU's site members received accounts with passwords to access Providence's website, and did not share those credentials (nor does Providence allege any password sharing or unauthorized site access).  DSUF 100-102.

For each issue of the COR, Providence sends members an electronic "Premium Summary Version" and a PDF version.  DSUF 103.  From 2013 until June 30, 2017, Providence's emails transmitting the "Premium Summary Version" again **confirmed** that "**The Cal-OSHA Reporter may be forwarded**..."  DSUF 105.

The employees at NBCU who had password-protected access to Providence's website and received the COR believed that the only restriction on the license was the use of their login for the website and that they were permitted to forward and share the COR with their colleagues.  DSUF 106.  At no point did **anyone** from Providence ever send NBCU any other license terms or conditions.  DSUF 107-108  No one at Providence ever communicated to NBCU that forwarding the COR was

not permitted under NBCU's license, that Providence ever modified the scope of

NBCU's license, or that Providence changed its policy permitting forwarding.

DSUF 108.  While Providence claims it surreptitiously stopped including statements

that the COR may be forwarded in post-June 2017 email messages to customers, it

never replaced that statement with anything that told NBCU that license terms had

changed or that the COR could no longer be forwarded.  DSUF 107-109.  When

purchasing or renewing the license, Providence did not require NBCU to accept any

terms and conditions that said forwarding was not permitted.  DSUF 110.  To this

day, the "Terms and Conditions" section of Providence's website remains blank.

DSUF 111.

### C.    Providence Tracks Its Customer's Emails.

Providence asserts that the factual basis for its infringement claims comes

from "email data" which it collected using an "invisible .gif," known as "tracking

pixel," that it inserted into its emails to NBCU.  DSUF 112.

In 2006, Providence began using a software called "Lyris," also known as

"Aurea Email Marketing," for marketing and delivering the COR.  DSUF 13.

Providence **manually enabled** Lyris's tracking features and used it to embed

tracking pixels into its emails to NBCU that collected "deliverability, open,

clickthrough, and forward metrics."  DSUF 114.  Lyris users, like Providence, "rely

on the functionality of [Lyris's products] for email deliverability and tracking

metrics…."  DSUF 115.  The "Forwards" metric even appears on the home landing

page of Lyris.  DSUF 116.

The Lyris product that Providence used was more expensive and difficult to

implement than alternatives, and the only relevant differentiating feature it offered

over alternatives was the purported ability to track forwards of emails sent using the

tool. DSUF 117.  Using Lyris, Providence has tracked alleged "forwards" of its

emails to NBCU since at least 2013.  DSUF 118.

**D. Providence Begins Suing Its Customers.**

In July of 2022, Providence sent a demand letter to NBCU alleging, for the very first time, that forwarding of the COR constituted copyright infringement. DSUF 119. This was the first time that Providence ever informed NBCU that it believed forwarding of the COR was not permitted under the license—and NBCU immediately ceased any such forwarding. DSUF 107-109, 120. Providence did **not** acknowledge (although it was well aware of its own prior statements and representations) that it had previously stated the opposite. DSUF 4, 93-94, 105. Providence also did not explain why it had waited nearly **ten years** before asserting that forwarding was not permitted, even though it had been consistently tracking "forwards." DSUF 113-118.

Although Providence has set out on a campaign to sue its customers, including NBCU, it did not secure copyright protection for the COR or the articles contained therein. For example, the only document Providence produced concerning the creation of the COR is a single, after-the-fact (and therefore, invalid), work for hire agreement. DSUF 121-122. Providence's copyright registrations also reveal that a meaningful percentage of its applications were not submitted until after the three-month window provided by 17 U.S.C. § 412. *See* DSUF 123-128.

**E. Providence's Harassing Litigation Tactics.**

After this action was initiated, the parties each began meeting and conferring on discovery and case scheduling issues. DSUF 129 In those discussions, counsel for NBCU told counsel for Providence that it believed the case, even if meritorious (which it is not), could not possibly involve significant damages, should settle, and that the case "d[id] not warrant delaying mediation until after significant and costly discovery." DSUF 130.

At the initial scheduling conference on June 18, 2024, Providence asked Judge Vera to set the mediation deadline out for 2025, just before trial. DSUF 131. Judge Vera did not agree to delay mediation and ordered the parties to mediate by

December 15, 2024.  DSUF 132.  After the scheduling conference, Providence ceased meeting and conferring with NBCU on discovery issues and ignored repeated outreach from NBCU to schedule mediation before the parties needed to engage in costly discovery motion practice.  DSUF 133.

Eventually, on October 17, 2024, **five months** after the parties' last email regarding discovery (which Providence failed to respond to), and without having responded to NBCU's inquiries about mediation, Providence served a discovery motion set to be heard just before the fact discovery cutoff (despite the fact that it had not yet produced a single document itself)—forcing the parties to engage in costly, avoidable motion practice.  DSUF 134-135.

At the motion hearing, Judge Kim ordered Providence to produce: (a) its emails to customers saying the COR could be forwarded; (b) "the complete text of the copyright licensing terms or conditions . . . stating the scope and limitations on the use, sharing, or redistribution of the Cal-OSHA reporter that Providence claims (explicitly or implicitly) prevents the forwarding;" and (c) financial documents, with backup, "showing the annual gross revenues from subscriptions" by customers with a number of similar health and safety professionals as NBCU.  DSUF 136.  Following this order, Providence produced more than **1,100** of examples of emails stating that "The Cal-OSHA Reporter may be forwarded" provided that it is not done for profit.  DSUF 137.  Providence also confirmed that it **never sent any communications or documents containing terms or conditions** to any of its licensees stating forwarding was not permitted.  DSUF 138.  Providence did not produce any financial documents at all demonstrating that it has generated any profits or revenues from the COR, and claimed the only documents responsive to the order was a handful of "invoices" to third parties.  DSUF 139.

### F.    Providence Fails To Appear At Its Depositions.

Providence also refused to produce witnesses for duly-noticed depositions. DSUF 140.  On November 6, 2024, NBCU served deposition notices for the

deposition of a corporate representative pursuant to Fed. R. Civ. P. 30(b)(6), Providence's principal, Dale Debber, and one of its employees, Maria Galvez, to proceed on November 18, 19, and 25 respectively.  DSUF 141.  Providence did not serve objections to any of the notices.  DSUF 142.  On November 14, NBCU inquired about who would be appearing on behalf of Providence at the 30(b)(6) deposition and offered to provide information for remote access.  DSUF 143.  Only after that inquiry did Providence state that it would not be producing a witness and, thereafter, it refused to produce **any** of its witnesses at their duly-noticed depositions.[1]  DSUF 144.

### G.    Providence Fails To Meet And Confer Regarding This Motion.

On December 10, 2024 the parties attended private mediation but were unable to resolve the case.  DSUF 145.  The next day, NBCU told Providence that it intended to move for summary judgement and asked for its availability to meet and confer later that day or the next day.  DSUF 146.  Despite being represented by *five* different attorneys, Providence claimed it was not available to meet and confer until the following week.  DSUF 146-147.  When asked, Providence was unable to provide any explanation for this refusal to meet and confer. DSUF 148.

Five days later, Providence stated for the very first time that it also was considering filing a motion for summary judgment.  DSUF 149.  After discussing NBCU's motion for more than an hour, Providence briefly stated that it was considering a on NBCU's affirmative defenses.  DSUF 150.  NBCU explained that the filing of a motion for summary judgment on affirmative defenses would be

---

[1] NBCU objects to Providence's attempt to offer a declaration from Debber in support of the present motion.  Providence failed to produce a corporate representative and Debber for duly noticed depositions without service of objections.  His testimony should be stricken and Providence should be admonished for submitting sworn testimony in support of their motion when they refused – without objection or explanation – to allow him to testify under oath in this case.

wasteful, unnecessary and not for any proper purpose, including because: (1) the proper time to address which affirmative defenses will remain in the case was in connection with the preparation of the Final Pretrial Conference Order, which would take only a few minutes, as opposed to a motion for summary judgment which would take untold hours of counsel's and the Court's time; and (2) its proposed motion could not eliminate any facts or evidence from this lawsuit.  DSUF 151. NBCU also explained how several of the defenses were implicated in the discussion the parties had just had concerning NBCU's motion. DSUF 152.

Two days later, on evening of December 18, Providence informed NBCU that, after a year of litigation, including extensive motion practice and a mediation, it was abandoning **more than half** of the copyright infringement claims in its case. DSUF 153.  Providence acknowledged that it could not prevail on most of its "infringement" claims  because, from 2013 to July of 2017, Providence expressly stated in its communications that "The [COR] may be forwarded…"  Providence now plans to argue that, sometime in the middle of 2017, when it surreptitiously removed that language from its emails, the years of internal forwarding that Providence had encouraged and condoned, suddenly transformed into infringing conduct.  After making this concession, Providence demanded that NBCU withdraw its affirmative defenses by 1:00 p.m. local time the next day—giving NBCU less than 24 hours to consider the application of the affirmative defenses at issue in light of the fact that Providence had expressed that it apparently would not assert infringement from 2013-2017.  DSUF 154.  NBCU informed Providence that this was not a proper meet and confer, did not provide NBCU an opportunity to discuss the matter with its counsel, and that Providence's intention to file a cross-motion for summary judgment on issues that it was told would be raised by NBCU's motion was improper under the Court's procedures.  DSUF 155.

1    Nevertheless, on December 20, **after** the last day permitted under Judge

2    Vera's scheduling order, Providence provided NBCU with a copy of this motion.

3    DSUF 155-158).

4    **III.    ARGUMENT**

5        **A.    Providence's Motion Is Unnecessary.**

6        As an initial matter, the Court need not consider Providence's motion.

7    Providence's infringement claims should be dismissed in their entirety because it is

8    undisputed that Providence granted NBCU an express or implied license to forward

9    the COR.  A claim for copyright infringement "fails if the challenged use of the

10   work falls within the scope of a valid license." *Great Minds v. Office Depot, Inc*.,

11   945 F.3d 1106, 1110 (9th Cir. 2019).  The copyright owner "bears the burden of

12   proving that the defendant's copying was unauthorized." *Bourne v. Walt Disney

13   Co.*, 68 F.3d 621, 631 (2d Cir. 1995).  Moreover, even if Providence disputes the

14   existence of an express license permitting forwarding, an implied license is created

15   "where the copyright holder engages in conduct from which [another party] may

16   properly infer that the owner consents to his use." *Stevens v. Corelogic, Inc*., 194 F.

17   Supp.3d 1046, 1053 (S.D. Cal. 2016).  Additionally, a license is inferred when the

18   copyright holder knows and/or encourages a particular use of a work.  *Interscope

19   Records, Motown Record Co., L.P. v. Time Warner, Inc.*, No. CV 10-1662 SVW

20   (PJWx), 2010 U.S. Dist. LEXIS 151460, at *11(C.D. Cal. June 28, 2010) (citing

21   *Field v. Google, Inc*., 412 F. Supp.2d 1106, 1116 (D. Nev. 2006) ("Consent to use a

22   copyrighted work need not be manifested verbally and may be inferred based on

23   silence where the copyright holder knows of the use and encourages it.")); *see also

24   Keane Dealer Servs., Inc. v. Harts*, 968 F. Supp. 944, 947 (S.D.N.Y. 1997)

25   ("Consent given in the form of mere permission or lack of objection is also

26   equivalent to a nonexclusive license").

27       As discussed in NBCU's motion for summary judgment, Providence spent

28   years telling NBCU and its other customers that "The Cal-OSHA Reporter may be

forwarded" provided it was not distributed for profit.  DSUF 90, 92-94, 103-105.

After receiving solicitations that included this language, NBCU purchased a license

from Providence.  DSUF 94-95, 98.  Providence **never** informed NBCU that

forwarding was not permitted until July 12, 2022, after which, no forwarding

occurred.  DSUF 90, 92-94, 103-105, 107-111.

Moreover, if a plaintiff knows of and does not object to a particular use (or,

like Providence, encourages it), that use is deemed to be licensed and not infringing.

*See Interscope*, 2010 U.S. Dist. LEXIS 151460, at *11 (citing *Field*, 412 F. Supp.2d

at 1116).  The undisputed facts show that Providence was aware of the conduct it

now alleges is improper "forwarding" for years, and even encouraged such use.

DSUF 90, 92-94, 103-105, 113-118.  In 2006, Providence purchased and used the

expensive Lyris email marketing software which had "Forward Tracking" as its

distinguishing feature.  Providence manually enabled Lyris's email tracking

capabilities and, since at least 2013, embedded tracking pixels into its emails to

NBCU.  *Id.*

Providence argues, without any evidentiary foundation, that it was not aware

of the alleged forwarding of the COR.  That assertion is baseless for a number of

reasons.  First, Providence submitted sworn discovery responses in this case denying

that it had not disclosed its forward-tracking practices to NBCU.  DSUF 159.

Obviously, Providence could only "disclose" its tracking practices if it was aware

that it was engaging in such tracking.  Second, whenever Providence used the Lyris

software, the "Forwards" metric was prominently displayed on the software's home

screen.  DSUF 116.  Providence knew or should have known that the forwarding of

the COR (which it actively encouraged for many years) was taking place, and its

claims are legally time-barred.  Further, the fact that Providence repeatedly advised

NBCU that "The Cal-OSHA Reporter may be forwarded," and never said anything

to the contrary until July 12, 2022, mandates a finding that NBCU's license included

non-profit forwarding and Providence's claims must be dismissed.  Those very same

facts also require dismissal based on estoppel and unclean hands – as set forth in detail in NBCU's summary judgment motion.

It is clear that Providence's license to NBCU included the right to "forward" the COR on a not-for-profit basis and, as there are no other allegedly infringing uses, the case should be dismissed with prejudice.

### B.    Providence's Motion Is Improper.

Providence's motion is also procedurally improper.  "[T]he Ninth Circuit has determined it is appropriate to either strike or deny a motion for summary judgment as untimely where it was filed after the deadline." *Medlock v. Host Int'l, Inc*., No. 1:12-cv-02024-JLT, 2013 U.S. Dist. LEXIS 61866, at *3 (E.D. Cal. Apr. 29, 2013).

The scheduling order in this case stated that the final date for hearings on motions for summary judgment is February 20, 2025.  DSUF 156.  The Court's Civil Standing Order states that it requires an extended and modified briefing schedule for motions for summary judgment.  DSUF 157.  Specifically, "No later than sixty-three (63) calendar days before the hearing on the motion, the moving party shall provide to the non-moving party an electronic copy of the opening brief, together with the moving party's portion of the evidentiary appendix and joint appendix of undisputed and disputed facts."  *Id.*  Sixty-three calendar days before the hearing date of the present motion is December 19, 2024.  However, Providence did not serve NBCU with its opening brief, evidentiary appendix, or joint appendix of undisputed and disputed facts until December 20, 2024.  DSUF 158.

Providence's motion has no purpose other than to drive up costs.  Providence failed to timely or adequately meet and confer, waiting until just three days before it was due to even mention it was considering the motion.  DSUF 149, 156-157.  Moreover, many of the affirmative defenses at issue in this motion applied to the **hundreds** of infringement claims that Providence conceded were improper the day before this motion was due—leaving NBCU with no time at all to discuss the issues with its counsel.  DSUF 154.  NBCU also explained to Providence that the present

1  motion would not result in narrowing any issues, and the parties could easily discuss

2  which affirmative defenses would be presented at trial, as parties are required to do,

3  in connection with the creation of the Final Pretrial Conference Order.  DSUF 151.

4  Furthermore, NBCU expressly advised Providence that this Court's Civil Standing

5  Order does not permit cross-motions for summary judgment, yet Providence filed

6  this motion on affirmative defenses that are directly at issue in NBCU's motion for

7  summary judgment (which NBCU had previously informed Providence it was

8  filing).  DSUF 155.

9      Providence does not provide any good cause for its delay and lack of

10  compliance with Court's order and the rules of this Court.  The present motion

11  should be stricken as untimely, improper, and in violation of the Court's Scheduling

12  Order and Civil Standing Order.

13  **C.    Partial Summary Judgment On NBCU's Affirmative Defenses Is**

14  **Improper And Unnecessary**

15      *1.    NBCU, not Providence, is entitled to summary judgment on*

16      *NBCU's second affirmative defense.*

17      This defense asserts that Providence knew of alleged forwarding, and

18  thereafter acquiesced, ratified, or consented to such forwarding, improperly delayed

19  in bringing suit, and/or waived its right to, or is estopped from, asserting

20  infringement.  Providence's request for summary judgment on NBCU's second

21  affirmative defense is frivolous – especially in light of its admission that these

22  defenses are valid with regard to more than half the claims Providence has asserted.

23      Since the filing of the Answer, discovery has revealed that, not only did

24  Providence know of the alleged forwarding, and said nothing about it for a decade, it

25  affirmatively **told** NBCU that it could forward the COR.  Providence clearly

26  acquiesced to forwarding, consented to forwarding, ratified that forwarding was

27  permitted, and waived its right to claim infringement based on forwarding because

28  it: (1) spent a decade tracking forwards, (2) repeatedly told NBCU the COR could

be forwarded during that same period, and (3) never presented NBCU with alternative terms or conditions.

Providence's naked assertions that the record is "devoid" of evidence supporting waiver or estoppel is false for the same reason – Providence knew about the alleged forwarding and actively encouraged it. DSUF 90, 92-94, 103-105, 113-118. It cannot now assert that conduct is actionable. *See e.g.*, *Field*, 412 F. Supp. 2d at 1116-17.

Providence argues that *some* of the principles mentioned in NBCU's second affirmative defense often involve different factual scenarios, but as discussed above, the facts of this case fit squarely into the defenses at issue. Further, the cases Providence cites to contain little to no analysis or factual discussion at all concerning acquiescence, ratification and consent, and other Courts have considered such defenses based on similar underlying conduct in the copyright context. *See Bass v. Syracuse Univ.*, No. 5:19-cv-566 (TJM/ATB), 2020 U.S. Dist. LEXIS 152607, at *19 (N.D.N.Y. Aug. 24, 2020); *Satis Vacuum Indus. Vertriebs, A.G. v. Optovision Techs., Inc*., Civil Action No. 3:99-CV-2147-M, 2001 U.S. Dist. LEXIS 15043, at *38 (N.D. Tex. July 26, 2001) ; *Malibu Media, LLC v. Julien*, No. 1:12-cv-01730-TWP-MJD, 2013 U.S. Dist. LEXIS 133288, at *11-12 (S.D. Ind. Sep. 17, 2013); *see also Field v. Google, Inc*., 412 F. Supp. 2d 1106, (D. Nev. 2006) (noting a party may provide a defense to infringement when they "[c]onsent to use a copyrighted work."). Additionally, contrary to Providence's assertion, the doctrine of laches still has application – both in cases involving extraordinary circumstances and in the context of measuring damages. *See Petrella v. MGM*, 572 U.S. 663, 668(2014) ("a plaintiff's delay can always be brought to bear at the remedial stage."); *id.* at 68 ("In extraordinary circumstances, however, the consequences of a delay in commencing suit may be of sufficient magnitude to warrant, at the very outset of the litigation, curtailment of the relief equitably awardable.").

NBCU's second affirmative defense is self-evidently applicable in this lawsuit, and Providence's Motion should be denied.

### 2. There are material issues of fact concerning NBCU's fourth and fifth affirmative defenses.

Providence has not carried its burden with respect to NBCU's fourth and fifth affirmative defenses concerning invalidity and registration. When moving for summary judgment, a "Plaintiff's conclusory assertions that Defendants lack evidence is insufficient to meet its initial burden as the movant." *Sw. Mfg. LLC v. Wilmar LLC*, No. CV 22-8541-MWF (PDx), 2024 U.S. Dist. LEXIS 126279, at *19-20 (C.D. Cal. July 16, 2024). Here, Providence offers only conclusory assertions that there is "no evidence" of the invalidity of its registrations, but Providence's argument alone is both factually incorrect and procedurally insufficient to carry its burden on summary judgment.

While a copyright registration is *prima facie* evidence of validity, that alone is insufficient to establish its copyrights were properly registered and obtained such that summary judgment on the defense is appropriate. First, NBCU requested in discovery, and Providence agreed to produce, documents relating to the creation and registration of the works and validity of its copyrights, including all deposit copies. DSUF 160. While Providence applied for registration of each issue of the COR as a "work for hire," the only "work for hire" agreement Providence produced in this case (which was not produced until October 23, 2024) was executed after-the-fact, and is therefore legally invalid. DSUF 121-122. It is well settled that an agreement designating that a work is made for hire must be both, in writing, and executed **before** a work is created in order to qualify as a work made for hire under the Copyright Act. *See e.g. Gladwell Gov't Servs., Inc. v. Cty. of Marin*, 265 Fed. Appx. 624, 626 (9th Cir. 2008); *Sisyphus Touring, Inc. v. TMZ Prods., Inc.*, 208 F. Supp. 3d 1105, 1112 (C.D. Cal. 2016). The lone work for hire agreement produced by Providence is invalid as it was signed by the author's widow, years after he created

dozens of writings that were included in the COR and Providence's other newsletters. DSUF 121-122. Providence also produced no employment agreements, or any other documents indicating the identity of its employees, produce any evidence that the scope of the duties of any of its employees included creating any copyrighted portions of the COR. DSUF 161.

Furthermore, Providence failed to object or produce witnesses at duly noticed depositions, depositions that were targeted at this very issue. DSUF 141-144. Providence cannot now seek summary judgment on matters for which it deliberately and improperly sought to stonewall NBCU from obtaining discovery. NBCU served deposition notices on Providence, including for Providence's principal, Dale Debber, its employee, Maria Galvez, and corporate representatives pursuant to Fed. R. Civ. P. 30(b)(6) on topics including "[t]he creation, development and ownership of the COR," "[a]ll copyrights in the COR," and "[a]ll copyright registration submissions relating to the COR." DSUF 141. Providence did not object to the deposition notices, but failed to produce **any** of its witnesses for deposition. DSUF 142-144. Accordingly, not only should the Court strike Debber's declaration seeking to introduce the registrations (*see United States v. Hansen*, 277 F. App'x 692, 693 (9th Cir. 2008)), Providence also cannot argue in good faith that NBCU is unable to present evidence of invalidity or lack of proper registration. The Court should deny Providence's motion for summary judgment concerning validity of its copyrights.

Finally, part of these affirmative defenses go to Providence's failure to timely register its works under 17 U.S.C. § 412, making it ineligible to recover statutory damages. Providence claims NBCU's affirmative defense is invalid on this point because it only applies to remedies, not liability. NBCU's answer specifically states that the defense applies to Providence's claim for statutory damages. *See* Dkt No. 20. Providence has not yet elected to pursue actual damages or statutory damages. If it does elect to pursue statutory damages, then there is no dispute that it is not

1    entitled to statutory damages for at least thirty one issues of the COR which were

2    not registered within three months of publication.  DSUF 123-128.  Providence has

3    now expressly conceded this defense is valid.  DSUF 153.

4        Thus, the Court should deny Providence's motion for summary judgment

5    concerning NBCU's fourth and fifth affirmative defenses.

6        ### 3.    *There are material issues of fact concerning NBCU's sixth*

7                   *affirmative defense.*

8        Providence's request for partial summary judgment on NBCU's sixth

9    affirmative defense of fair use is premature, improperly raised, and in any event

10   must be denied because there are material issues of fact.  Providence's motion for

11   partial summary judgment on fair use makes no sense at this stage because

12   Providence has not established, and does not ask the court to find, an otherwise

13   infringing use for which to apply the fair use framework.  Providence does not move

14   for summary judgment on liability for infringement, nor could it.  As discussed

15   above, and in NBCU's motion for summary judgment, **Providence affirmatively**

16   **licensed forwarding of the COR**.  Moreover, with this motion Providence presents

17   no evidence of the supposed "uses" that it claims cannot establish fair use.

18   Additionally, Providence's claims of infringement for hundreds of its supposedly

19   copyrighted works are **solely** based on unreliable and unpresented "email data" that

20   it claims show "forwards" of emails attaching the COR (but not the COR itself).

21       In any event, there are disputed material facts that preclude dismissal of the

22   fair use defense at this stage.  17 U.S.C. § 107 identifies a non-exclusive list of four

23   factors to evaluate if a particular use qualifies as fair use: "(1) the purpose and

24   character of the use, including whether such use is of a commercial nature or is for

25   nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the

26   amount and substantiality of the portion used in relation to the copyrighted work as a

27   whole; and (4) the effect of the use upon the potential market for or value of the

28   copyrighted work."

On the first factor, Providence asserts that NBCU's use is commercial merely because it is a corporate entity—but this is not the test. "The Supreme Court has rejected the proposition that a commercial use of the copyrighted material ends the inquiry under this factor." *Kelly v. Arriba Soft Corp.*, 336 F.3d 811, 818 (9th Cir. 2003). "Further 'the commercial nature of a use is a matter of degree, not an absolute. . . .'" *Sega Enters. v. Accolade, Inc.*, 977 F.2d 1510, 1522 (9th Cir. 1992). Additionally, courts are "are free to consider the public benefit resulting from a particular use notwithstanding the fact that the alleged infringer may gain commercially." *Id.* at 1523. There is no allegation in this case, nor any evidence, that NBCU in anyway commercialized the COR. The alleged uses, which include directing individuals with responsibilities for worker health and safety to specific OSHA proposals, regulations and decisions (DSUF 167), do not have any intrinsic commercial value. Rather, such a use furthers a public interest in workplace health and safety.

On the second factor, compilations of factual information are entitled to only limited, thin protection under copyright law. *Harper House, Inc. v. Thomas Nelson, Inc.*, 889 F.2d 197, 205 (9th Cir. 1989). Providence's copyrights cover, at most, only the compilation of factual information. DSUF 168; *see also* Section III(C)(2), above (noting that the only work for hire agreement produced by Providence is invalid). Accordingly, this factor weighs heavily in favor of fair use.

On the third factor, Providence acknowledges that reproduction of a work in its entirety does not preclude fair use. *See also*, *e.g.*, *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 449-50 (1984). Providence claims that "NBC infringed the entire COR work." However, Providence failed to present any evidence that any recipients of alleged "forwards" downloaded or accessed the COR. Moreover, the overwhelming majority of Providence's case is based on un-presented "email data" that it alleges show forwarding of an **email**, not the COR itself. DSUF 112. Accordingly, there are material factual matters that the jury must

weigh, including the reliability of the "email data" and what it indicates before this factor may be evaluated.

Despite the fourth factor being considered the most important and "ultimately empirical in nature [which] presents distinctive questions of proof," Providence has produced no evidence whatsoever that it has suffered any market harm, nor is there any reason to believe there is any such harm.  4 Nimmer on Copyright § 13F.08; *see also Divine Dharma Meditation Int'l, Inc. v. Inst. of Latent Energy Studies*, No. 19-55264, 2021 U.S. App. LEXIS 25145, at *5 (9th Cir. Aug. 23, 2021).  First, Providence cannot credibly claim any market harm from forwarding when Providence affirmatively told NBCU and all of its customers that "The [COR] may be forwarded …"  DSUF 90, 92-94, 103-105.  There is also no evidence that, nor does Providence allege, that NBCU forwarded the COR to third-parties, let alone that such forwarding was a market substitute for their purchase of a license.  DSUF 90, 92-94, 103-105.  Additionally, when Providence notified NBCU that its license did not permit its site members to forward the COR, they immediately ceased doing so.  DSUF 120.  In other words, any "forwarding" was not replacing purchase of additional site membership accounts.  Moreover, despite being ordered by Judge Kim to do so, Providence has produced absolutely **no evidence whatsoever** concerning the profits and revenues it earns from the COR.  *See Divine Dharma Mediation*,  2021 U.S. App. LEXIS 25145, at *4 (finding "no significant effect upon the potential market or value of [the work]" where there was no evidence that Plaintiff had "lost and licensing potential" and there was "no evidence of monetary damages."); DSUF 136, 139.  Thus, the fourth and most important fair use factor, weighs in favor of fair use.

Overall, the factors weight in favor of fair use—and so does common sense.  Congress advised that the fair use doctrine is an "equitable rule of reason."  *Sony*, 464 U.S. at 484 n.31.  Here, not only do the factors favor fair use, but the undisputed fact that Providence spent years telling NBCU that **it could forward the COR**

(DSUF 90, 92-94, 103-105), also strongly supports a finding that any "forwarding" was a fair use of the COR. Providence is not entitled to partial summary judgment on this defense.

### 4. *NBCU does not intend to assert its seventh and ninth affirmative defenses at trial.*

NBCU asserted its defenses of improper marking and innocent infringement at the beginning of the case, before Providence had produced copies of the COR containing copyright notices. Providence did not produce any documents in this case, including copies of the registered works it asserts were infringed, until October 23, 2024. DSUF 135. Providence did not inform NBCU that it intended to move for summary judgment on any affirmative defenses until December 16, 2024, three days before this brief was due. DSUF 149, 156-157. At that time, NBCU's counsel informed Providence that there was a cost-effective and simple procedure for the parties to address affirmative defenses in connection with the preparation of the Final Pretrial Conference Order, at which time NBCU would be evaluating and clarifying which defenses it would no longer assert in light of the facts developed in discovery. DSUF 151. NBCU's counsel also informed Providence's counsel that they would confer with NBCU about the affirmative defenses and revert, but that Providence had not provided sufficient time to do so. DSUF 155. Accordingly, there is no dispute for the Court to resolve. Summary judgment is improper as Providence neither: (1) timely or adequately met and conferred, or (2) timely submitted this motion to Defendant. Nevertheless, NBCU has agreed that it will withdraw these defenses in the Final Pretrial Conference Order. Providence's insistence on filing the present motion is clearly designed to drive up costs and waste the Court's resources.

### 5. *Failure to mitigate is a valid defense.*

Providence's argument that failure to mitigate is not a valid defense is flawed and relies on out-of-circuit authority involving claims for statutory damages.

1  However, Providence has not elected statutory damages at this juncture.

2  Furthermore, Providence's failure to mitigate its actual damages remains relevant

3  regardless of its ultimate election, because the amount of its actual damages is

4  relevant to setting the appropriate amount of statutory damages. *See e.g.*, Ninth

5  Circuit Model Jury Instructions § 17.35; *Desire, LLC v. Manna Textiles, Inc*., 986

6  F.3d 1253, 1271 (9th Cir. 2021); *Mon Cheri Bridals, LLC v. Cloudflare, Inc*., No.

7  19-cv-01356-VC (TSH), 2021 U.S. Dist. LEXIS 65446, at *7 (N.D. Cal. Apr. 1,

8  2021); *Julien*, 2013 U.S. Dist. LEXIS 133288, at *6 (declining to strike failure to

9  mitigate in statutory damages case due to its relevance to actual damages). And

10  here, there is clear evidence that Providence did not reasonably mitigate its alleged

11  damages, and it is not entitled to partial summary judgment.

12      First, Providence argues that failure to mitigate does not apply because it was

13  "not aware of NBC's infringement until in or about May, 2022."  Mot. at 7

14  (highlighting in original). Providence offers no admissible evidence to support this

15  apparent lack of knowledge, it failed to appear for deposition on the topic, and the

16  overwhelming evidence makes clear that Providence **did** in fact know, or reasonably

17  should have known, of alleged "forwarding" since the inception of its relationship

18  with NBCU. DSUF 113-118.

19      Next, Providence cites to out-of-circuit authority to argue that the duty to

20  mitigate can only arise after an injury occurs, and since each issue of the COR is a

21  different work, each alleged forward constitutes a separate new injury. This hyper-

22  narrow view of the claims and the failure to mitigate defense flies in the face of the

23  law, the facts, and common sense. Authorities in the Ninth Circuit have rejected

24  motions to strike failure to mitigate defenses based purely on legal grounds, and

25  recognized that it is an available defense and generally a question for the jury. *See*

26  *Classical Silk v. Dolan Grp.*, No. CV 14-09224-AB (MRWx), 2016 U.S. Dist.

27  LEXIS 203961, at *9-13 (C.D. Cal. May 4, 2016).

28

Moreover, courts have found that a mitigation defense may lie if a copyright holder "purposefully avoided taking steps to protect their copyrighted material because it is more profitable to allow their subscribers to distribute content and seek judgments and/or settlements from subscribers." *Malibu Media, LLC v. Zumbo*, No. 2:13-cv-729-JES-DNF, 2014 U.S. Dist. LEXIS 82272, at *10 (M.D. Fla. June 17, 2014). That is precisely what happened here. Providence not only knew that its customers were "forwarding" the COR, it actively encouraged them to do so. DSUF 90, 92-94, 103-105, 113-118. Then, after years of collecting email tracking data, Providence unleashed a wave of lawsuits (and threats of litigation) against its customers in an effort to recover amounts well in excess of the few hundred dollars a year it charges to add site members to its licenses. DSUF 162-166; *see Malibu Media, LLC v. Peterson*, No. 16-CV-786 JLS (NLS), 2017 U.S. Dist. LEXIS 66170, at *17 (S.D. Cal. May 1, 2017) (declining to strike mitigation defense in statutory damages case where Plaintiff alleged it had been monitoring IP addresses for infringement for years without taking action.).

Furthermore, even when a plaintiff's failure to mitigate does not bar liability, it is still a valid affirmative defense for reducing damages. *See Murphy v. Trader Joe's*, No. 16-cv-02222-SI, 2017 U.S. Dist. LEXIS 7754, at *7 (N.D. Cal. Jan. 19, 2017) ; *see also Hitek Software LLC v. Timios, Inc*., No. CV 12-709 CAS (AJWx), 2012 U.S. Dist. LEXIS 86560, at *16 (C.D. Cal. June 18, 2012). The Supreme Court has confirmed that "a plaintiff's delay can always be brought to bear at the remedial stage." *Petrella*, 572 U.S. at 668 (2014); *see also Classical Silk*, 2016 U.S. Dist. LEXIS 203961, at *9 ("[M]itigation of damages in fact is available as a defense to the amount of actual damages sought in a copyright infringement case.")

Providence's complaint seeks both actual and statutory damages. A failure on its part to mitigate potential losses is legally relevant to the potential measure of damages. Therefore, the Court cannot dismiss the defense.

### 6.    *Unclean Hands and Copyright Misuse are valid and applicable defenses.*

Providence does not cite to any authority holding that copyright misuse or unclean hands are inapplicable here, and there is ample factual support for NBCU's tenth affirmative defense in this case.  "Copyright misuse is an equitable defense to copyright infringement which precludes the copyright holder's enforcement of its copyright during the misuse period." *Vernor v. Autodesk, Inc*., 621 F.3d 1102, 1115 (9th Cir. 2010).  While the contours of the defense are still being defined by the courts in this Circuit, this is unquestionably a case that presents a possible application.  Providence's own referenced case law makes clear that "[t]he defense of copyright misuse, however, is not limited to discouraging anti-competitive behavior." *Omega S.A. v. Costco Wholesale Corp*., 776 F.3d 692, 699 (9th Cir. 2015).  Moreover, Courts have held that plaintiffs may not "inequitably la[y] a trap for Defendants, or at least allo[w] Defendants to fall into one, by encouraging the unlicensed use of Plaintiffs' works," and then sue years later for damages for the alleged infringement.  *Interscope*, 2010 U.S. Dist. LEXIS 151460, at *43.

Providence fails to carry its burden to have the tenth affirmative defense dismissed.  Providence has not disproven an essential element, nor has it demonstrated that there are no disputes of material fact concerning this defense.  Providence cites *Michael Grecco Prods. v. Livingly Media*, No. CV 20-0151 DSF (JCx), 2021 U.S. Dist. LEXIS 117652 (C.D. Cal. Apr. 16, 2021) in an effort to mislead the court into thinking there is some heightened standard of proof required to avoid partial summary judgment on the tenth affirmative defense.  Yet, in that case the Court denied a plaintiff's **<u>unopposed</u>** motion for partial summary judgment on the defendant's unclean hands defense.  *Id.* at *21.

Moreover, as discussed at length in NBCU's motion for summary judgment, not only are there ample facts to support NBCU's tenth affirmative defense – NBCU is entitled to summary judgment on that defense.  Providence messaged its

customers that "The [COR] may be forwarded," spent years using invisible "tracking pixels" to collect its customers "email data," then claimed many years later that forwarding was not permitted and attempted to leverage that data in a scheme to generate revenue through threats of litigation. *See* DSUF 90, 92-94, 103-105, 113-118, 162-166.

NBCU is informed and believes that Providence uses customer tracking and threats of litigation as a primary revenue source, potentially generating in excess of what it earns from any legitimate business practices. DSUF 162-166. NBCU does not have definitive information on this issue because, while the Court ordered Providence to produce documents relating to revenue relating to the COR, it refused to do so – only producing a handful of random customer invoices. And Providence, without justification or objection, refused to appear for deposition. *See* DSUF 136, 139.

Providence's admitted practice of informing its customers to forward the COR, and then secretly removing that language from its emails so that it can threaten suit against its own customers for tens of millions of dollars (despite having no possible claim to more than just a few hundred dollars per year in actual damages), clearly presents an issue of fact with regard to the defense of copyright misuse.

## IV.   CONCLUSION

For the foregoing reasons, Providence's motion should be denied in its entirety.

## PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

### I.    INTRODUCTION AND FACTUAL BACKGROUND

NBC is guilty of extensive and systemic copyright infringement, and both the law and facts are strongly against NBC.  Rather than cooperating to seek an efficient resolution of this matter, NBC has resorted to mischaracterizations about Providence. NBC's opposition tracks the old adage:  If the law is against you, pound the facts; if the facts are against you, pound the law; and if both the law and the facts are against you, pound the table and attack your opponent. *See*, *e.g., U.S. v. Griffin*, 84 F.3d 912, 927 (7th Cir. 1996). NBC's strategy is to deflect from its own infringement by falsely portraying Providence as acting in bad faith.  NBC's repeated mischaracterizations are baseless but must be addressed given NBC has made these misstatements a key component of its Opposition.

NBC misleads the Court by attempting to smear Providence as engaging in harassing litigation tactics.  However, Providence took every effort to resolve the dispute without resorting to litigation. After first learning of NBC's infringement in May 2022, Providence wrote to NBC in July 2022 and the parties executed and extended a tolling agreement from July 12, 2022 to October 10, 2023, so that the parties could resolve the matter without litigation.  Opposition to Stmt. of Fact 135. At NBC's request, Providence produced documents informally in December 2023 to facilitate settlement discussions. *Id*.  Even after filing suit, Providence delayed serving the Complaint to allow further settlement discussions and further agreed to extend NBC's time to answer by thirty days. Dkt. No. 14.  Providence's actions consistently sought to resolve this dispute without incurring costs of litigation.

NBC's complaints regarding Providence's discovery conduct are false, and elides NBC's own wrongdoing. In its written discovery responses and during meet and confers, NBC agreed to produce documents responsive to Providence discovery requests, subject to NBC's objections.  Unfortunately, Providence relied on NBC's

representations and did not move to compel production of documents NBC had agreed to provide, to Providence's detriment.  Prior to Judge Kim's November 14, 2024 Order, Providence voluntarily produced over 5,000 pages of documents, while NBC produced none.  Reply to Stmt. of Fact 135.

NBC misleadingly claims that Providence failed to secure copyright protection for COR.  NBC is well-aware that Providence owns valid registrations to the premium COR works at issue, as the copyright registration certificates were attached to the Complaint. Dkt. Nos. 7-2 & 7-3.  Registrations establish prima facie evidence of the validity of the copyright and facts stated in the certificate when registration is made before or within five years of publication. NBC has not met its burden of establishing that Providence did not secure copyright protection. 17 U.S.C. § 410(c).

Providence made every effort to cooperate with NBC to agree on a deposition schedule that worked for both parties and all witnesses. Reply to Stmt. of Fact 74. Given Magistrate Judge Kim's concerns at the November 13, 2024 hearing that it would be a challenge for the parties to complete discovery in the time remaining, Providence aimed to get as much done as possible following the November 13, 2024 hearing. To that end, Providence tried to work cooperatively with NBC to agree on a deposition schedule that worked for both parties and their witnesses, even offering to make witnesses available after the close of discovery.  Reply to Stmt. of Fact 74. However, NBC refused to cooperate at every turn, failing to meet and confer with Providence over NBC's objections to Providence's Rule 30(b)(6) deposition topics, and refusing to produce a Rule 30(b)(6) representative on the noticed December 2, 2024 deposition date.  Reply to Stmt. of Fact 74, 78, 84; Providence's Opposition to NBC's Stmt. Fact 140. Providence in good faith tried to coordinate a schedule that worked for all, including offering dates that Dale Debber and Maria Galvez would be available for deposition, but NBC rebuffed Providence's attempts.  Reply to Stmt. of Fact 74.

To reduce costs and to efficiently utilize the limited days left in discovery, Providence was going to produce Mr. Debber and Ms. Galvez to sit for both their individual depositions and testify to their respective Rule 30(b)(6) topics concurrently. Reply to Stmt. of Fact 74. NBC is aware that Providence made this offer with respect to Mr. Debber.  However, Providence served objections to NBC's Rule 30(b)(6) notice, which had to be resolved, but NBC declined to meet and confer, stating that the 30(b)(6) objections could be revisited following mediation.  *Id.* The parties also discussed conducting depositions after mediation. *Id.* Providence's objections were not resolved, but thereafter, NBC pushed forward with depositions prior to mediation, to prejudice Providence.  *Id.* Providence made Mr. Debber and Ms. Galvez available and offered dates for their depositions.  *Id.*  In contrast, NBC never provided the availability of their witnesses. Instead, NBC relied on its objections to the 30(b)(6) to avoid bringing a witness to the actual deposition, when it refused to even meet and confer about resolving NBC's objections.

Contrary to NBC's misleading assertions, Providence met and conferred with NBC regarding this motion. Opposition to Stmt. of Fact 146, 150, 154, 155.  Both parties had a conference call to discuss their respective Motions for Summary Judgment and Providence set forth the issues it would move on and Providence's basis for the same. *Id.*  Nor is there any basis for NBC's attempt to treat Providence's motion as a cross-motion.   In recognizing the Civil Standing Order and the Court's disfavoring of cross-motions, the parties, at the meet and confer, discussed their respective positions to move for summary judgment, which did not overlap.

Further, Providence did not concede an inability to succeed on its claims for infringement occurring prior to July 1, 2017.  Rather, after the meet and confer on Dec. 16, 2024, Mr. Ankrom stated that Providence would evaluate whether the parties could limit the claims and issues for trial.  Providence did so in the interest of saving costs and narrowing issues for trial without an admission of the validity of NBC's defenses, and Providence expressly reserved all rights to argue against same for the

infringement that occurred after July 1, 2017. Reply to Stmt. of Fact 4; Opposition to Stmt. of Fact 153. Providence likewise expected that NBC would reconsider whether it would withdraw any of its affirmative defenses, as the parties discussed at the December 6 meet and confer. NBC refused to withdraw any of its affirmative defenses prior to the filing deadline. After Providence went to the expense and effort of moving for summary judgment on NBC's affirmative defenses of improper marking and innocent infringement, NBC withdrew these affirmative defenses in its opposition to Providence's summary judgment motion.

Finally, Providence did not untimely file this motion. The motion was served on NBC's counsel on December 19, 2024 via FTP link to accommodate the voluminous papers. On December 20, 2024 at 12:23 a.m. PT, NBC's counsel informed Providence's counsel that Providence was unable to view the memorandum of points and authorities, declarations, evidentiary appendix, or joint appendix of undisputed and disputed facts. Providence's counsel immediately reviewed the FTP folder containing these documents, and all documents were present. However, given NBC's claim that it was unable to view same, within 30 minutes, Providence's counsel provided courtesy copies via email and generated a new FTP link to the folder, which contained the documents. Opposition to Stmt. of Fact 156.

Providence submits that NBC has never accepted responsibility for its acts of infringement, and has instead chosen to aggressively litigate and drive up costs instead of addressing the substance of this dispute and a settlement of the same.

## II.    ARGUMENT

### A.    Partial Summary Judgment On NBCU's Affirmative Defenses Is Proper

#### 1.    NBC's Affirmative Defenses of Acquiescence, Ratification, Laches, and Consent Fail as a Matter of Law.

It is well settled in the Ninth Circuit—and NBC has not cited any case law to the contrary—that acquiescence, ratification, laches, and consent are not valid

defenses to copyright infringement. *See Creative Photographers, Inc. v. Brock Collection, LLC*, 2021 WL 3568243, at *2 (C.D. Cal. July 7, 2021); *J&J Sports Prods., Inc. v. Juarez*, 2016 WL 795891, at *1 (S.D. Cal. Mar. 1, 2016); *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 667, 679 (2014). Nonetheless, these affirmative defenses must fail because NBC has not identified a disputed issue of fact or any evidence supporting these affirmative defenses. Plaintiff has demonstrated an absence of evidence to support these affirmative defenses, and NBC cannot carry the burden of proving these affirmative defenses as a matter of law. *See Pub. Storage v. Charles D. Burrus Fam. Tr.*, 2024 WL 4839376, at *16 (C.D. Cal. Oct. 3, 2024) ("The burden to prove these affirmative defenses at trial is on Defendant; thus, at the summary judgment stage, Plaintiff may simply point to an absence of evidence supporting the affirmative defenses.") (internal citations omitted).

NBC's ratification, consent, and waiver defenses must fail because the case law relied on by NBC confirms that Providence needed *full knowledge* of NBC's infringement to ratify or consent to the infringement or waive its right to enforce its copyrights. *See Bass v. Syracuse Univ.*, 2020 WL 4934585, at *7 (N.D.N.Y. Aug. 24, 2020); *Field v. Google Inc.*, 412 F. Supp. 2d 1106, 1116 (D. Nev. 2006). It is undisputed that Providence first learned of NBC's infringement in May 2022. Stmt. of Facts 74. NBC concedes that it never informed Providence of its infringement. Stmt. of Facts 83.

Likewise, NBC's acquiescence and laches defenses must fail because there is no evidence that Providence affirmatively represented that it would refrain from asserting an infringement claim against NBC, or that Providence delayed in filing suit. *See California Brewing Co. v. 3 Daughters Brewing LLC*, 2016 WL 4001133, at *3 (E.D. Cal. 2016). Laches also fails as a matter of law. Given the "essentially gap-filling" nature of laches, the equitable defense cannot override the statutory text of the Copyright Act, which already accounts for delay through the statute of limitations. *See Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 677 (2014); *see also*

*Creative Photographers, Inc. v. Brock Collection, LLC,* No. 2:20-cv-09261, 2021 WL
3568243, at *2 (C.D. Cal. July 7, 2021). NBC acknowledges that laches cannot be
invoked to bar a claim for damages that accrued within the three-year statutory
damage window, but claims that laches may curtail the relief equitably awardable in
extraordinary circumstances. *See Petrella,* 572 U.S. at 685-86.   However, such
"extraordinary circumstances" are not present here.  Justice Ginsberg provided as an
example a situation where the owners of a copyrighted architectural design, although
aware of an allegedly infringing housing project, delayed suit until the project was
constructed and partially occupied.  The copyright owner would not be entitled to an
order mandating destruction of the housing project. No comparable fact pattern
presents itself in the instant matter.  Accordingly, NBC's affirmative defenses of
acquiescence, ratification, consent, laches, waiver, and estoppel fail as a matter of law.

### 2.    NBC Has Not and Cannot Rebut the Presumptions of Validity of Providence's Copyright Registrations.

NBC has not come forward with evidence to rebut the presumption of validity
of the copyrights in COR granted by Providence's valid U.S. Copyright Registrations,
and NBC's defense should be dismissed.  17 U.S.C. § 410. Providence identified COR
as a work made for hire in its copyright registrations.  NBC's sole argument is to
attack the validity of a work for hire agreement between Providence one contributor,
and claim that Providence incorrectly registered COR as a "work made for hire."  This
is simply not true nor sufficient.  Several Providence employees contribute to COR,
and are listed in the masthead of each premium COR work. Reply to Stmt. of Fact 78.
Every issue of the premium COR works contained contributions by employees acting
in the scope of their employment, and therefore COR is undeniably a "work for hire"
as a matter of law.  Stmt. of Fact. *Id*; Opposition to Stmt. of Fact 121, 161.

According to the Copyright Act, a "work made for hire" can arise in two
scenarios: (1) when a work is created as the result of an express written agreement
between the creator and the party commissioning the work, and (2) when it is created
by an employee as part of the employee's regular duties.  17 U.S.C. § 101; *Lewis v.*

*Activision Blizzard, Inc.*, 634 F. App'x 182, 184 (9th Cir. 2015). NBC's Opposition ignores that "a work prepared by an employee within the scope of his or her employment" is a work made for hire. 17 U.S.C. § 101. Every issue of COR delivered to NBC contained contributions from employees prepared as part of the employees' regular duties. Reply to Stmt. of Fact 78. Thus, each issue of COR is a work made for hire.

NBC has not identified an issue of fact regarding the validity of copyright registration in the COR publication, and as a matter of law, NBC's fifth affirmative defense, alleging invalid registrations and registrations filed more than three months after publication, should be dismissed.

### 3.    There Are No Material Issues of Fact Concerning NBCU's Sixth Affirmative Defense, Fair Use.

Providence's use of COR consisted of copying COR works in their entirety and distributing those copies to dozens of employees instead of purchasing additional subscriptions. *E.g.*, Stmt. of Fact 7. Under no reasonable assessment of the four statutory factors is NBC's infringing use of COR "fair." As to the first factor, the purpose and character of the use, notably, NBC does not argue that its use of COR wasn't commercial. Instead, NBC argues that the Court should consider "the public benefit from a particular use," citing *Sega Enterprises Ltd. v. Accolade, Inc.*, 977 F.2d 1510, 1523 (9th Cir. 1992), *as amended* (Jan. 6, 1993). However, *Sega Enterprises* involved the defendant reproducing copyrighted computer code as an intermediate step to creating wholly new creative works. When evaluating the public benefit from a particular use, the Court distinguished between "copying of works in order to make independent creative expression possible and the simple exploitation of another's creative efforts," because "this growth in creative expression" is what the Copyright Act was intended to promote. *Id.* at 1523-1524. NBC, unlike the *Sega Enterprises* defendant, was not copying premium COR works as an intermediate step to creating wholly new creative expression. Rather, NBC simply exploited Providence's creative efforts by copying and distributing premium COR works so that its employees could

obtain their own copies of the premium COR work for NBC's benefit without NBC having to pay the additional subscription fees. NBC's copying was clearly commercial which weighs against fair use.

The second factor, the nature of the copyrighted work, also weighs against a finding of fair use, although traditionally the second factor has been considered the least significant factor. *Dr. Seuss Enterprises, L.P. v. Penguin Books USA, Inc.*, 109 F.3d 1394, 1402 (9th Cir. 1997). NBC claims that COR is factual in nature, but while COR, as a newsletter, reports on factual matters, it does so by utilizing original creative expression. Providence must determine what matters are significant to report on, recount those matters in an appealing and informative manner, and select and arrange the articles within COR. *See Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 547 (1985) ("Creation of a nonfiction work, even a compilation of pure fact, entails originality.").

As to the third factor, NBC's use was not just substantial, it was total. NBC copied the entire premium COR works in their entirety, which NBC does not dispute. *See* Stmt. of Fact 8-10, 19-22, 24-47, 50-66. NBC's argument that Providence fails to present any evidence that the recipients of the premium COR works "downloaded" or "accessed" COR is misplaced. Providence alleges that NBC infringed its exclusive rights to reproduce and distribute the premium COR, and NBC reproduced the premium COR works by email forwarding, which instantly created copies of COR in the inbox of the recipient. Moreover, it stretches credulity to claim that NBC employees forwarded the COR transmittal email (which contained nothing substantive other than a copyright notice and a link to a privacy policy) only and not the attached COR publication. The third factor weighs against a finding of fair use.

As to market harm, the fourth factor, the harm is apparent, as NBC copied and distributed the premium COR works instead of purchasing additional subscriptions. NBC's claim that there is no evidence of forwarding to third parties is incorrect. *See* Reply to Stmt. of Fact 11-18, 23. There is no issue of fact that NBC's wholesale copying of the premium COR publication was not fair use, and NBC's Fair Use

defense should be dismissed.

### 4.    Failure to Mitigate is Not a Valid Defense.

The duty to mitigate damages arises only after an injury occurs, not before. *Energy Intel. Grp., Inc. v. Kayne Anderson Cap. Advisors, L.P.*, 948 F.3d 261, 274 (5th Cir. 2020); Restatement (Second) of Torts § 918 (1979) ("[O]ne injured by the tort of another is not entitled to recover damages for any harm that he could have avoided by the use of reasonable effort or expenditure *after the commission of the tort*.") (emphasis added). Thus, NBC's theory of mitigation, which involves Providence allegedly failing to take action to prevent NBC's future infringement, must be dismissed as a matter of law. NBC fails to rebut Providence's cited caselaw that the duty to mitigate damages can only arise after an injury occurs, not before, which demolishes NBC's theory of mitigation.

NBC has failed to identify any actions Providence could have taken to mitigate the harm from NBC's past infringements. In response, NBC cites to a single unpublished decision that predated the Circuit Court's decision in the *Energy Intel* case. *Classical Silk, Inc. v. Dolan Grp., Inc.*, No. 14-cv-09224, 2016 WL 11755590 (C.D. Cal. May 4, 2016). *Classical Silk* simply stands for the proposition that mitigation is a recognized defense. *Id.* at *3-4. The decision does not substantively address the application and function of the mitigation defense, and does not refute the position that damages can only be mitigated after an injury occurs. *See id.*

NBC also does not refute the legal authority that Providence must have actual knowledge of NBC's infringement in order for the duty to mitigate to arise. As noted above, NBC's narrative that Providence simply refused to produce Dale Debber at deposition is false, as detailed above, and NBC has no facts to rebut Mr. Debber's testimony that Providence first learned of NBC's infringement in or about May of 2022. Stmt. of Facts 74. Providence cannot mitigate damages resulting from injuries that it was not aware of.

Mitigation is not a valid defense in this action because mitigation is concerned with the reduction of harm from infringements that have already occurred, not

47

preventing future infringements, and because Providence must possess knowledge of NBC's infringement to be expected to mitigate the damages therefrom.

### 5.  Unclean Hands and Copyright Misuse Are Not Valid and Applicable Defenses.

"[O]nly a showing of wrongfulness, willfulness, bad faith, or gross negligence, proved by clear and convincing evidence, will establish sufficient culpability for invocation of the doctrine of unclean hands." *Pinkette Clothing, Inc. v. Cosm. Warriors Ltd.*, 894 F.3d 1015, 1029 (9th Cir. 2018). NBC has failed to demonstrate the level of wrongfulness, willfulness, bad faith, or gross negligence necessary to carry an unclean hands defense in this matter.

NBC relies on *Interscope Recs. v. Time Warner, Inc.*, No. 10-cv-1662, 2010 WL 11505708, at *14 (C.D. Cal. June 28, 2010), but this decision involved a motion to strike, so the case simply stands for the proposition that the defendant had "provided adequate notice" of the basis for its unclean hands defense at the pleading stage. Further, in *Interscope*, the plaintiffs had actual knowledge of the defendants' infringing use of the copyrighted works, which NBC cannot show that Providence had here. Stmt. of Fact 74. NBC's claim that Providence simply failed to appear at deposition and therefore Mr. Debber's declaration is not admissible is false. As discussed above, Providence extended every effort to work together on a mutually agreeable deposition schedule in the limited time available, but NBC refused to cooperate.

## III.  **CONCLUSION**

For the foregoing reasons, Providence's Motion for Summary Judgment should be granted.