JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PROVIDENCE PUBLICATIONS, LLC, | Case No.: 2:23-CV-08551-HDV-SKx |
| Plaintiff, | **ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [50]** |
| v. | |
| NBC UNIVERSAL MEDIA, LLC, | |
| Defendant. | |

## I. INTRODUCTION

This copyright action arises out of Defendant NBC Universal Media, LLC's ("NBC") years-long practice of forwarding by email—to its internal staff—electronic copies of the Cal-OSHA Reporter ("COR") published by Plaintiff Providence Publications, LLC's ("Providence"). In 2013, NBC purchased several subscriptions to Providence's weekly COR for its employees. NBC employees routinely circulated the COR weekly issues amongst themselves pursuant to an express statement by Providence stating that the COR could be forwarded.

At some point in 2017, Providence stopped including that statement (allowing forwarding) in its cover emails, but NBC continued its practice of internal circulation among staff. Providence then initiated this action in 2023, alleging that NBC willfully infringed on its registered copyright through this forwarding practice. Providence avers that at least 47 separate COR works were forwarded 605 times with each work forwarded an average of 12 times.

Before the Court are two Motions for Summary Judgment: (1) NBC's Motion for Summary Judgement on all claims ("NBC MSJ"), and (2) Providence's Motion for Partial Summary Judgment ("Providence MSJ"). For the reasons discussed below, the Court finds that Providence granted an express license to NBC by including clear and unmistakable language that the "Cal-OSHA Reporter may be forwarded, copied, or distributed." *See* NBC MSJ, Declaration of Todd J. Densen ("Densen Decl."), Ex. F. And although Providence removed the forwarding permission statement from its email footers in 2017, it utterly failed to provide any notice to NBC that its licensing terms had ostensibly changed.

NBC's MSJ is therefore granted and the Providence MSJ is denied.

## II. BACKGROUND

Providence operates a website that reports on developments in occupational health and safety laws and regulations, as well as administrative decisions by the California Division of Occupational Safety and Health known as Cal/OSHA. Defendant's Statement of Uncontroverted Facts ("DSUF") ¶ 1 [Dkt. No. 50-2]. Providence publishes and distributes the weekly COR to entities that have purchased site licenses or subscriptions. *Id.* ¶ 3. Providence also sends free and promotional email news bulletins to professionals working in occupational health and safety roles through the daily

2

"News Digest," the "Flash Reports," and the Electronic Summary Version of the COR. *Id.* ¶ 2. For years, Providence sent NBC solicitations to purchase site licenses for the COR. *Id.* ¶¶ 3–4.

On December 21, 2012, Providence sent an email with the subject line "Cal-OSHA Reporter News Digest" to NBC employee Laura Tankenson. *Id.* ¶ 5. At the end of the email it stated:

> Copyright 2012 Providence Publications, LLC. All Rights Reserved. The Cal-OSHA Reporter may be forwarded, copied or distributed subject to the following conditions: (1) The full report including text, graphics and links must be copied without modification and all pages must be included; (2) All copies must contain Providence Publications copyright notices; (3) This document may not be distributed for profit.

*See id.*; NBC MSJ, Declaration of Laura Tankenson, ("Tankenson Decl.") ¶ 2, Ex. A at 341 [Dkt. No. 54-29].

On January 16, 2012, Providence sent another email to Tankenson with a "Flash Reports" news blurb, which also stated:

> Copyright 2012 Providence Publications, LLC. All Rights Reserved. The Cal-OSHA Reporter may be forwarded, copied or distributed subject to the following conditions: (1) The full report including text, graphics and links must be copied without modification and all pages must be included; (2) All copies must contain Providence Publications copyright notices; (3) This document may not be distributed for profit.

*See* DSUF ¶ 8; Tankenson Decl. ¶ 3, Ex. B at 344. Tankenson received another email with the same language on February 19, 2013, which she forwarded to her team with the message "based on your votes/feedback, I will be getting a membership for the Cal-OSHA Reporter. I will forward the login info., once the membership has been processed." *See* DSUF ¶¶ 9–10; Tankenson Decl. ¶ 4, Ex. C at 347, 349.

NBC purchased a site license to receive the COR on February 19, 2013. DSUF ¶ 13. NBC provided a senior employee on each of the production, TV station, corporate, studio lot, and theme park Employee Health and Safety teams with passwords to log on to Providence's website to access the COR. DSUF ¶¶ 14–15.

From 2013 until June 30, 2017, Providence's emails of the free and promotional content

stated that the "Cal-OSHA Reporter may be forwarded, copied, or distributed." *Id*. ¶ 20. Beginning on July 1, 2017, however, the CORs sent to NBC and other subscribers did *not* include the language permitting forwarding. *Id*. ¶¶ 20, 23. But at no point after NBC purchased the COR license, nor when NBC renewed its license, did Providence send any additional license terms or conditions. *Id*. ¶ 22–24. Ultimately, no one at Providence communicated to NBC that Providence modified the scope of NBC's license. *Id*.

In 2006, Providence began using a software called "Lyris" to perform its marketing and delivery function for the COR by creating tracking pixels that collect data, including deliverability, open, clickthrough, and forward metrics. *Id*. ¶ 28–29. Providence, through Lyris, collected email data using an invisible .gif commonly known as a "tracking pixel" that it inserted in emails to its licensees. *Id*. ¶ 26. The tracking pixel data revealed that NBC employees engaged in forwarding of the COR. *Id*. ¶ 27.

In July 2022, Providence sent a demand letter to NBC alleging that NBC's forwarding constituted copyright infringement. *Id*. ¶ 34. NBC immediately ceased forwarding the COR. *Id*. ¶ 35. Providence nonetheless brought this action on October 10, 2023 alleging a single claim for copyright infringement for the previously forwarded CORs dating back to January 2013. *See id.*

NBC filed its Motion for Summary Judgment on January 9, 2025. [Dkt. No. 50]. Providence filed its Motion for Partial Summary Judgment on the same day. *See* [Dkt. Nos. 49, 51]. The Court heard oral argument on both motions on March 6, 2025 and took the matters under submission. [Dkt. No. 60].

**III.   LEGAL STANDARD**

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *accord Wash. Mut. Inc. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011). Material facts are those that may affect the outcome of the case. *Nat'l Ass'n of Optometrists & Opticians v. Harris*, 682 F.3d 1144, 1147 (9th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248.

1     The moving party bears the initial burden of establishing the absence of a genuine issue of
2 material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met
3 its initial burden, Rule 56(c) requires the nonmoving party to "go beyond the pleadings and by her
4 own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate
5 'specific facts showing that there is a genuine issue for trial.'" *Id*. at 324 (quoting Fed. R. Civ. P.
6 56(c), (e)); *see also Norse v. City of Santa Cruz*, 629 F.3d 966, 973 (9th Cir. 2010) (*en banc*) ("Rule
7 56 requires the parties to set out facts they will be able to prove at trial."). "If a party fails to
8 properly support an assertion of fact or fails to properly address another party's assertion of fact . . .
9 the court may . . . consider the fact undisputed." Fed. R. Civ. P. 56(e)(2). The Court need not
10 "comb the record" looking for other evidence; it is only required to consider evidence set forth in the
11 moving and opposing papers and the portions of the record cited therein. Fed. R. Civ. P. 56(c)(3);
12 *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001). The Supreme Court has
13 held that "[t]he mere existence of a scintilla of evidence . . . will be insufficient; there must be
14 evidence on which the jury could reasonably find for [the opposing party]." *Liberty Lobby*, 477 U.S.
15 at 252. "In judging evidence at the summary judgment stage, the court does not make credibility
16 determinations or weigh conflicting evidence." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978,
17 984 (9th Cir. 2007).

18 **IV.    DISCUSSION**

19     **A.    Express License**

20     "A copyright owner may grant a nonexclusive license expressly or impliedly through
21 conduct." *Field v. Google Inc.*, 412 F. Supp. 2d 1106, 1115 (D. Nev. 2006). "[A]nyone who is
22 authorized by the copyright owner to use the copyrighted work in a way specified in [the Copyright
23 Act] ... is not an infringer of the copyright with respect to such use." *Sony Corp. of Am. v. Universal
24 City Studios, Inc.*, 464 U.S. 417, 433 (1984). Stated differently, an infringement claim "fails if the
25 challenged use of the work falls within the scope of a valid license." *Great Minds v. Office Depot,
26 Inc.*, 945 F.3d 1106, 1110 (9th Cir. 2019).

27     As the party alleging an express license, NBC has the burden to identify any license
28 provisions that it believes authorizes its use. *Oracle USA, Inc. v. Rimini St., Inc.*, 6 F. Supp. 3d

5

1086, 1093 (D. Nev. 2014).  If NBC identifies such an express license, Providence may overcome the defense by showing that NBC's conduct exceeded the scope of that provision.  *Id*.

NBC amply meets its initial burden on this record.  NBC cites to **many years** of emails from Providence that explicitly state "the Cal-OSHA Reporter may be forwarded."  *See e.g.*, NBC MSJ, Densen Decl., ¶¶ 10–11, Ex. E at 34, 37, 40, 44; Ex. F at 56, 59, 66.  Each email, until June 30, 2017, contains the provision that "[t]he Cal-OSHA Reporter may be forwarded, copied or distributed subject to the following conditions: (1) The full report including text, graphics and links must be copied without modification and all pages must be included; (2) All copies must contain Providence Publications copyright notice; (3) This document may not be distributed for profit."  *See id*.  Because NBC has identified explicit language establishing an express license permitting the forwarding of the COR, the burden now shifts to Providence to demonstrate that NBC's actions exceeded the scope of this license.

Providence fails to meet this counter burden.  Providence attempts to do so by presenting evidence of the COR copyright notice on each weekly issue, which states that "No part of this material may be reproduced or transmitted in any form or by any means, electronic, optical, mechanical or otherwise, including photocopying or recording, satellite or facsimile transmission, or in connection with an information image or object, storage or retrieval system without written permission from Cal-OSHA Reporter."  *See* NBC MSJ, Declaration of Dale Debber ("Debber Decl.") ¶ 7, Ex. A at 3497 [Dkt. No. 55-38].  Providence argues that this copyright reservation of rights in the COR should be distinguished from the statements permitting the COR to be forwarded, as the notice appears within the COR itself rather than in the promotional materials that highlight its content.  *See* NBC MSJ at 30.  Providence contends that the language relied on by NBC permitted the free and unrestricted forwarding of the **promotional materials only, but not the COR itself**.  NBC MSJ at 31.

The Court finds this argument wholly unpersuasive.

To be clear, Providence, for at least four years from 2013 to 2017, sent statements directly to NBC informing its licensee that the Cal-OSHA Reporter itself could be forwarded.  *See* DSUF ¶ 20.  NBC was entirely within its rights to rely on these statements during this time period.  At no time did

6

Providence provide any clarification that these forwarding rights extended only to the promotional materials and not—as its own email stated—to the Cal-OSHA Reporter itself.

Had Providence intended to permit the forwarding of promotional materials only, it could have easily said so in its communications. Instead, the emails from Providence to NBC consistently stated that the COR could be forwarded. *See* Densen Decl., Ex. F. There is no genuine dispute of material fact here.

Moreover, Providence has not adduced any evidence that NBC's forwarding exceeded the scope of the nonexclusive license. There is no evidence that NBC engaged in unauthorized password sharing, forwarded the COR outside its internal team, or distributed the COR for profit. *See generally*, Complaint. In short, Providence granted NBC a nonexclusive license allowing the forwarding of the COR, and NBC acted within the scope of that license.

**B.      Implied License**

The language expressly permitting NBC to forward the COR was removed from the free and promotional materials on June 30, 2017. DSUF ¶ 20. Thus, any forwarding after that date was done without an express license. NBC avers that the forwarding after June 30, 2017 was nonetheless allowable through an implied license.

"An implied license can be found where the copyright holder engages in conduct from which [the] other [party] may properly infer that the owner consents to his use. Consent to use the copyrighted work need not be manifested verbally and may be inferred based on silence where the copyright holder knows of the use and encourages it." *Field*, 412 F. Supp. 2d at 1115 (D. Nev. 2006). An implied non-exclusive license is granted when "(1) a person (the licensee) requests the creation of a work, (2) the creator (the licensor) makes that particular work and delivers it to the licensee who requested it, and (3) the licensor intends that the licensee-requestor copy and distribute his work." *Asset Mktg. Sys., Inc. v. Gagnon*, 542 F.3d 748, 754–55 (9th Cir. 2008) (quoting *I.A.E, Inc. v. Shaver*, 74 F.3d 768, 776 (7th Cir. 1996)).

When analyzing the third element, "courts consider whether the totality of the parties' conduct indicates that the licensor intended to grant the licensee permission to use the work." *Reinicke v. Creative Empire LLC*, 38 F. Supp. 3d 1192, 1199 (S.D. Cal. 2014), *aff'd*, 669 F. App'x

7

1  470 (9th Cir. 2016) (citing *Michaels v. Internet Entm't Grp., Inc.*, 5 F. Supp. 2d 823, 831
2  (C.D.Cal.1998)).  The relevant intent is the "licensor's objective [not subjective] intent at the time of
3  the creation and delivery." *Gagnon*, 542 F.3d at 756 (9th Cir. 2008).  To determine objective intent,
4  the Ninth Circuit adopted the First and Fourth Circuits' test (the *Gangon* factors) analyzing the
5  following: "(1) whether the parties were engaged in a short-term discrete transaction as opposed to
6  an ongoing relationship; (2) whether the creator utilized written contracts ... providing that
7  copyrighted materials could only be used with the creator's future involvement or express
8  permission; and (3) whether the creator's conduct during the creation or delivery of the copyrighted
9  material indicated that use of the material without the creator's involvement or consent was
10 permissible." *Id*. (citing *John G. Danielson, Inc. v. Winchester-Conant Properties, Inc.*, 322 F.3d
11 26, 41 (1st Cir. 2003); *Nelson–Salabes, Inc. v. Morningside Dev., LLC*, 284 F.3d 505, 516 (4th Cir.
12 2002)).

13    Here, NBC—the licensee—requested the COR by purchasing a license in 2013.  And
14 Providence—the licensor—delivered the COR to NBC weekly.  Therefore, to determine whether the
15 parties agreed to an implied non-exclusive license, the Court's analysis rests on Providence's intent.

16    As to the first *Gangon* factor, the relationship of the parties indicates neither an intent to
17 grant nor deny a license.  A long-term relationship between the parties militates against finding an
18 implied license.  *See Westhoff Vertriebsges mbH v. Berg*, No. 22-CV-0938-BAS-SBC, 2023 WL
19 5811843, at *12 (S.D. Cal. Sept. 6, 2023).  But the Ninth Circuit has found that even though parties
20 have long-term relationships, that alone may not be determinative of the parties' intent.  *See Gagnon*,
21 542 F.3d at 756.  Courts have recognized that "the existence of an ongoing relationship between the
22 parties may be probative of intent to license, lack of intent to license, or it may not be probative of
23 intent at all." *Dennis Fugnetti Photography Tr. v. Bird B. Gone, Inc.*, No. SA-19-CV-00847-CJC-
24 DFMX, 2022 WL 1585747, at *5 (C.D. Cal. Apr. 4, 2022) (quoting *Fontana v. Harra*, No. CV-12-
25 10708-CAS-JCG, 2013 WL 990014, at *7 (C.D. Cal. March 12, 2013)).  Moreover, "the *Gagnon*
26 factors should not be applied rigidly.  They are elastic enough to leave room for those instances
27 where the normative assumptions that underpin the *Gagnon* factors do not adequately explain the
28 putative licensor's objective intent as manifested by the Contract and its conduct." *Westhoff*

*Vertriebsges mbH*, 2023 WL 5811843, at *12.

Here, Providence and NBC's formal relationship began when NBC purchased a COR license in 2013. But in this instance, the relationship between the parties is not indicative of intent. In many cases where this factor is deemed relevant to intent, the analysis of the parties' relationship pertains to "task-specific contracts." *See Fontana*, 2013 WL 990014, at *6 (citing *Nelson–Salabes, Inc.*, 284 F.3d at 516). For example, a "longer ongoing relationship indicates that the parties contemplated that the creator would participate in future projects while short, discrete tasks reveal that the parties only intended the creator's work to be a discrete contribution and that others could use the creator's work in future projects." *See Reinicke*, 38 F. Supp. 3d at 1200. To that end, the first *Gangon* factor does not apply here because NBC and Providence's relationship was not task-specific, and there were no discrete tasks in which copyrighted material was created and infringed upon.

Turning to the second *Gangon* factor, neither party presents evidence of the written contract (or license) agreed upon between the parties. But NBC offers evidence of the free and promotional materials allowing for the COR to be forwarded. And Providence on the other hand presents evidence of the copyright notice on the COR that the "material may not be reproduced or transmitted in any form or by any means." *See* Debber Decl. ¶ 7, Ex. A at 3497. Given the conflicting evidence, and the absence of any written agreement between the parties, this weighs in favor of finding an implied license. *Westhoff Vertriebsges mbH*, 2023 WL 5811843, at *13 ("Defendants correctly concede that the absence of any written agreement between the parties weighs in favor of a finding of implied license.").

And the final *Gangon* factor asks whether Providence's **conduct** "indicated that use of the material without the creator's involvement or consent was permissible." *Gagnon*, 542 F.3d at 756. The Court concludes on this undisputed record—and for three separate reasons—that the answer to this question must be an unqualified "yes."

First, Providence sent NBC a veritable torrent of emails over many years asserting without equivocation that the COR could be forwarded. *See* Densen Decl., Ex. F. Again, that conduct undoubtedly and reasonably indicated to NBC that forwarding was permissible.

Second, Providence used "Lyris" software to embed pixels in the emails of its customers to

9

track "deliverability, open clickthrough, and forward metrics." NBC MSJ at 16; *see also* SUF ¶ 28. This is important because it shows that Providence must have had actual knowledge (again, for many years) that this forwarding practice was common. Providence disclaims this knowledge through a self-serving declaration from its CEO, *see* Providence MSJ, Declaration of Dale Debber ¶ 11–12 [Dkt. No. 51-60], but the Court finds that this denial lacks any credibility. Indeed, there is no evidence from the software provider indicating that Providence never accessed the forwarding metrics. On the other hand, NBC provides evidence of the Lyris user guide from October 2013 establishing that forwarding data *was* available and that Lyris users were greeted with a dashboard showing "forwards" on the homepage when loading up the software. *See* Densen Decl. ¶ 18, Ex. L. at 186. In sum, Providence's use of this software strongly supports a finding that it encouraged *and then tracked* this forwarding by its customers even after quietly removing the forwarding-is-permissible language.

And third, Providence engaged in conduct indicating permissible use by never bothering to send any notices to its customers alerting them to its purported change in copyright authorization.[1] Although NBC presumably renewed its license with Providence in 2017, Providence did not alert NBC that it believed its conduct of distributing the reporter constituted copyright infringement. In fact, Providence did not contact NBC about its potentially infringing conduct until 2022—nine years after NBC first began receiving and forwarding the COR.

In summary, Providence's years-long practice of expressly allowing internal forwarding of the COR, its apparent knowledge that the forwarding practice continued, and its failure to alert NBC of any change in policy—all strongly support a finding of an implied license. *See, e.g., Field*, 412 F. Supp. 2d at 1116 (D. Nev. 2006) ("Consent to use the copyrighted work need not be manifested verbally and may be inferred based on silence where the copyright holder knows of the use and

---

[1] Indeed, Providence was ordered by the Magistrate Judge to produce thousands of pages of its communications with NBC and could not produce a single email or document showing that it had alerted NBC to the ostensible change in policies. *See* Denson Decl. ¶ 9; *see also* NBC MSJ, Declaration of Ilse Bacchus ¶ 3 [Dkt. No. 54-1].

encourages it."); *Keane Dealer Servs., Inc. v. Harts*, 968 F. Supp. 944, 947 (S.D.N.Y. 1997) (copyright owner's knowledge and acquiescence of defendant's use coupled with owner's silence constituted an implied license). There are no material facts in dispute here. NBC has met its *Celotex* burden and is entitled to summary judgment on Providence's copyright claim.

**V.    CONCLUSION**

For the foregoing reasons, NBC's Motion for Summary Judgment is granted.[2]

Dated: March 25, 2025

Hernán D. Vera
United States District Judge

---

[2] Because the Court grants NBC's Motion, the Court does not reach Providence's Motion for Partial Summary Judgment. Providence's MSJ is therefore dismissed as moot.