1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    CENTRAL DISTRICT OF CALIFORNIA

10    PROVIDENCE PUBLICATIONS, LLC,          Case No. 2:23-cv-08551-HDV-SKx

11

12                        Plaintiff,         **ORDER GRANTING DEFENDANT'S
                                             MOTION FOR ATTORNEYS' FEES AND
13                                           COSTS [64]**

14          v.

15

16    NBC UNIVERSAL MEDIA, LLC,

17

18                        Defendant.

19

20

21

22

23

24

25

26

27

28

1

## I.     INTRODUCTION

On March 25, 2025, Defendant NBC Universal Media, LLC ("NBC") obtained summary judgment on the Plaintiff Providence Publications, LLC's ("Providence") single copyright claim. *See* Order Granting Defendant's Motion for Summary Judgment ("Order") [Dkt. No. 63].  NBC now moves for an award of attorneys' fees pursuant to 17 U.S.C. § 505 and Fed. R. Civ. P. 54(d)(2), and costs incurred in defending this action brought under the Copyright Act.  Motion for Attorneys' Fees ("Motion") [Dkt. No. 64].

After weighing the relevant factors, and in the broad exercise of its discretion, the Court concludes that an award of attorneys' fees under 17 U.S.C. § 505 and Fed. R. Civ. P. 54(d)(2) is appropriate.  NBC is the prevailing party and was forced to litigate against a claim that—to a large extent—the Court found objectively unreasonable.  For the reasons discussed below, the Court grants the Motion and awards Defendant NBC Universal Media, LLC attorneys' fees in the amount of $420,505.96.

## II.    BACKGROUND

This copyright action arises out of NBC's years-long practice of forwarding by email—to its internal staff—electronic copies of the Cal-OSHA Reporter ("COR") published by Providence. ("Complaint") ¶¶ 32-34 [Dkt. No. 1].  In 2013, NBC purchased several subscriptions to Providence's weekly COR for its employees. *Id.* at ¶ 23.  NBC employees routinely circulated the weekly issues amongst themselves pursuant to an express statement by Providence affirming that the COR could be forwarded.  NBC's Motion for Summary Judgment ("MSJ") at 2 [Dkt. No. 50].

At some point in 2017, Providence stopped including that statement (allowing forwarding) in its cover emails, but NBC continued its practice of internal circulation among staff. *Id.* at 4–5.  In July 2022, Providence sent a demand letter to NBC alleging that NBC's forwarding constituted copyright infringement. *Id.* at 6.  NBC immediately ceased forwarding the COR.  Providence nonetheless brought this action on October 10, 2023, alleging that NBC willfully infringed on its registered copyright through this forwarding practice. *Id.*  Providence avers that at least 47 separate COR works were forwarded 605 times with each work forwarded an average of 12 times. Complaint at ¶ 32.

2

1    After nearly two years of litigation, encompassing fact and expert discovery, NBC filed its

2    Motion for Summary Judgment on January 9, 2025.  *See* MSJ.  On March 25, 2025, the Court

3    granted NBC's Motion for Summary Judgment.  *See* Order Granting NBC's Motion for Summary

4    Judgment ("Order") [Dkt. No. 63].  The Court found that Providence granted an express and implied

5    license to NBC by including clear and unmistakable language that the "Cal-OSHA Reporter may be

6    forwarded, copied, or distributed."  Order at 2.

7    On April 8, 2025, NBC moved for attorneys' fees and costs under 17 U.S.C. § 505 and Fed.

8    R. Civ. P. 54(d)(2), in the amount of $568,095.92.  *See* Motion. The Court heard oral argument on

9    May 29, 2025, and took the matter under submission.  [Dkt. No. 89].

10   **III.    LEGAL STANDARD**

11   The Copyright Act provides that "the court in its discretion may allow the recovery of full

12   costs by or against any party other than the United States," including "a reasonable attorney's fee to

13   the prevailing party as part of the costs."  17 U.S.C. § 505.  Such fees "are to be awarded to

14   prevailing parties only as a matter of the court's discretion." *Fogerty v. Fantasy, Inc.*, 510 U.S. 517,

15   534 (1994).  District courts are free to award attorneys' fees "as long as they treat prevailing

16   plaintiffs and prevailing defendants alike and seek to promote the Copyright Act's objectives." *Id.* at

17   533; *see also Historical Research v. Cabral*, 80 F.3d 377, 378 (9th Cir. 1996).

18   The objective of copyright law is to "enric[h] the general public through access to creative

19   works," in consequence the "boundaries of copyright law [need to be] demarcated as clearly as

20   possible." *Fogerty*, 510 U.S. at 527.  Thus, "a successful defense of a copyright infringement action

21   may further the policies of the Copyright Act every bit as much as a successful prosecution of an

22   infringement claim by the holder of a copyright." *Id.*

23   **IV.    DISCUSSION**

24   **A.    Awarding Attorneys' Fees**

25   When determining whether to award fees to a prevailing party in a copyright case, courts are

26   given "wide latitude." *Entertainment Research Grp., Inc. v. Genesis Creative Grp., Inc.*, 122 F.3d

27   1211, 1229 (9th Cir. 1997).  To do so, courts consider "(1) the degree of success obtained, (2)

28   frivolousness, (3) motivation, (4) reasonableness of losing party's legal and factual arguments, and

3

1    (5) the need to advance considerations of compensation and deterrence." *Wall Data Inc. v. Los*

2    *Angeles Cnty. Sheriff's Dep't*, 447 F.3d 769, 787 (9th Cir. 2006); *see also Fogerty*, 510 U.S. at 518

3    ("While there is no precise rule or formula for making fee determinations under § 505, equitable

4    discretion should be exercised 'in light of the considerations [the Supreme Court] has identified.'").

5    These factors must be viewed "in light of the Copyright Act's essential goals," which balances

6    "encouraging and rewarding authors' creations while also enabling others to build on that work."

7    *Kirtsaeng v. John Wiley & Sons, Inc.*, 579 U.S. 197, 204–05 (2016); *see also Tresóna Multimedia,*

8    *LLC v. Burbank High Sch. Vocal Music Ass'n*, 953 F.3d 638, 653 (9th Cir. 2020) ("The touchstone

9    of the decision to award attorneys' fees is whether the success[ ] [of the prevailing party], and the

10    circumstances surrounding it, further the Copyright Act's 'essential goals.'" (citation omitted)).

11              **1.**    **Degree of Success**

12        At summary judgment, the Court found that Providence's claim against NBC failed.  *See*

13    Order.  Accordingly, NBC prevailed in this action.  *See Benay v. Warner Bros. Ent.*, No. 05-CV-

14    8508-PSG-FMO, 2008 WL 11338634, at *3 (C.D. Cal. May 6, 2008) ("At summary judgment, the

15    Court found that all Plaintiffs' claims failed as a matter of law.  Thus, this factor weighs in favor of

16    Defendants being granted their attorney's fees."); *Metcalf v. Bocho*, 200 F. App'x 635, 641 (9th Cir.

17    2006) (affirming this factor weighs in favor of the party "who obtained *complete success* on the

18    merits.") (emphasis added).  This factor strongly favors awarding fees.

19              **2.**    **Frivolousness and Objective Unreasonableness**

20        Next, the Court considers the second and fourth factors—frivolousness and reasonableness of

21    the losing party's arguments.  The fourth factor is given "substantial weight." *Shame On You*

22    *Prods., Inc. v. Banks*, 893 F.3d 661, 666 (9th Cir. 2018) (citing *Kirtsaeng*, 579 U.S. at 209).  In

23    analyzing this factor, "a legal argument that loses is not necessarily unreasonable." *Id.*  Instead, a

24    losing party's argument is objectively unreasonable where the party "should have known from the

25    outset that its chances of success in this case were slim to none." *SOFA Ent., Inc. v. Dodger Prods.,*

26    *Inc.*, 709 F.3d 1273, 1280 (9th Cir. 2013).

27        In the Complaint, Providence asserted a single claim for copyright infringement based on

28    NBC's forwarding of the COR.  *See* Complaint.  NBC contends that this claim was objectively

1   unreasonable because Providence had explicitly stated that the COR "may be forwarded, copied, or

2   distributed." *See* Motion at 7.  NBC also notes that, although Providence initially demanded

3   millions of dollars in damages for 466 alleged violations, it agreed to drop nearly half of those

4   claims as improper just before NBC filed its motion for summary judgment.  *Id*.

5           The Court finds that Providence's infringement claims concerning COR forwarding ***prior*** to

6   2017 were objectively unreasonable and frivolous.  Providence sent NBC weekly emails expressly

7   stating that the COR could be forwarded, and NBC relied on that representation in doing so.  *Id.*

8   Asserting copyright infringement based on conduct expressly permitted by Providence's own

9   communications renders its claim both frivolous and without merit.

10          However, the infringement claims based on NBC's forwarding of the COR ***after*** Providence

11  removed the language permitting forwarding are neither frivolous nor objectively unreasonable.

12  Complaint at 10.  Providence holds a valid copyright in the COR, and NBC was distributing that

13  copyrighted material to many employees despite only having purchased five licenses.  *Id.* at 9.  It

14  was not frivolous for Providence to pursue a claim under these circumstances, nor was it objectively

15  unreasonable to do so.  This is not a case where Providence "should have known from the outset that

16  its chances of success were slim to none." *ALS Scan, Inc. v. Cloudflare, Inc.*, No. CV 16-5051-

17  GW(AFMX), 2021 WL 3566409, at *2 (C.D. Cal. Mar. 1, 2021) (citing *SOFA Entertainment, Inc.*,

18  709 F.3d at 1280).  Even if only a portion of the claims were objectively unreasonable, NBC was

19  nevertheless required to defend against all of them through summary judgment, including those that

20  were frivolous.  This factor therefore continues to weigh in favor of awarding attorneys' fees.

21                  **3.      Motivation**

22          Next, courts consider whether the plaintiff engaged in bad faith or held an improper motive

23  in bringing or pursuing the action. *Fogerty*, 94 F.3d at 558.  Courts generally determine that a

24  finding of bad faith can be based on actions that led to the lawsuit as well as the conduct of the

25  litigation. *See Hall v. Cole*, 412 U.S. 1, 15 (1973).

26          Here, Providence asserts that it was motivated by a desire to protect its copyrights and acted

27  in good faith.  Opposition at 13 [Dkt. No. 81].  However, there is some evidence suggesting that

28  Providence pursued this action in bad faith.  Notably, on the eve of summary judgment filings,

1    Providence finally informed NBC of its intent to drop its claims for pre-2017 infringement.  MSJ at

2    1.  But by 2017, Providence was certainly aware that its own emails to its customers stated the COR

3    could be forwarded because Providence removed that language from its emails.  *Id.*  Yet despite this

4    knowledge, Providence continued to litigate those meritless pre-2017 claims for years.  *Id.*

5    Additionally, Providence waited five years after removing the forwarding language before bringing

6    claims against NBC.  *See* Complaint.  While the Court cannot definitively conclude that this delay

7    was intended to increase potential settlement leverage, the timeline undermines Providence's

8    assertion that it was purely motivated by a desire to protect its copyrights.  If that were the case, it

9    likely would not have waited so long to take action.  Furthermore, at the scheduling conference,

10   Providence represented to the Court that the "COR may be forwarded" language was merely a

11   "typo."  This statement was plainly untrue, and Providence did not repeat it in later proceedings.

12   The Court concludes that Providence (to some extent) continued litigating the pre-2017 claims in

13   bad faith.  This supports an award of attorneys' fees.

14                    **4.       Compensation and Deterrence**

15        Finally, considerations of compensation and deterrence support an award of attorneys' fees in

16   this case.  General deterrence is served by awarding fees against a party who pursued an objectively

17   unreasonable claim.  *See Shame On You Prods., Inc.*, 893 F.3d at 668.  "Where a court has already

18   concluded that a plaintiff's claims were unreasonable, considerations of deterrence support an award

19   of attorney's fees."  *Bluprint Clothing Corp. v. Chico's FAS, Inc.*, No. 2:23-CV-04226-JLS-BFM,

20   2024 WL 4720796, at *3 (C.D. Cal. Sept. 4, 2024) (citing to *Washington v. Viacomcbs, Inc.*, 2021

21   WL 6134375, at *3 (C.D. Cal. Dec. 9, 2021)).

22        Providence argues that the Court should consider the potential "chilling effect" of awarding

23   attorneys' fees, noting that it is a small publishing company with limited resources.  *See id.* at 7;

24   Opposition at 17.  However, Providence has not submitted any evidence regarding its financial

25   condition for the Court to meaningfully evaluate whether its resources should weigh against a fee

26   award.  Given the Court's finding that at least half of the asserted claims were objectively

27   unreasonable, the deterrent value of awarding fees weighs in favor of NBC.

28

6

1          **5.      Balancing the Factors**

2          In summary, NBC prevailed in this action.  Providence's legal arguments were unreasonable,

3     and similar conduct and arguments should be deterred.  Moreover, awarding fees in this case furthers

4     the goals of the Copyright Act by preventing frivolous arguments by copyright holders against its

5     licensees.  Balancing these factors, the Court concludes that an award of attorneys' fees under 17

6     U.S.C. § 505 and Fed. R. Civ. P. 54(d)(2) is appropriate.

7          **B.      Calculation of Attorneys' Fees**

8          Determining the amount of an attorneys' fee award begins by calculating the "lodestar."

9     *Caudle v. Bristow Optical Co., Inc.*, 224 F.3d 1014, 1028 (9th Cir. 2000).  To do so, courts multiply

10    the number of hours the attorneys reasonably spent on the litigation by the reasonable hourly rate in

11    the community for similar work.  *McElwaine v. U.S. West, Inc.*, 176 F.3d 1167, 1173 (9th Cir. 1999).

12    District courts may rely "on their own knowledge of customary rates and their experience

13    concerning reasonable and proper fees." *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011).

14         NBC requests recovery of fees for 818.2 hours of work by three attorneys and two

15    paralegals.[1]  Declaration of David Grossman ("Grossman Decl.") ¶¶ 7–13 [Dkt. No. 64-1].  In

16    support of this number, NBC furnishes billing records reflecting 221.9 hours expended by Mr.

17    Grossman, 497.7 hours by Mr. Todd, 48.6 hours by Ms. Kahn, 20.2 hours by Ms. Pettigrew, and

18    29.8 hours by Ms. White.  Grossman Decl. ¶¶ 16–21, ex. B.  Considering this case concluded in a

19    motion for summary judgment after nearly two years of litigation, including multiple depositions, a

20    mediation, and summary judgment briefing, the Court finds that the total of 818.2 hours is

21    reasonable.

22         After setting the reasonable number of hours, courts determine the hourly rate that is

23    reasonable "considering the experience, skill, and reputation of the attorney requesting fees."

24    *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986), *amended*, 808 F.2d 1373 (9th

25

26    _____

27    [1] Fees for support staff such as paralegals may be awarded.  *See Jones v. Corbis Corp.*, No. CV 10-
      8668-SVW CWX, 2011 WL 4526084, at *4–5 (C.D. Cal. Aug. 24, 2011), *aff'd*, 489 F. App'x 155
      (9th Cir. 2012).

28

1   Cir. 1987).  This rate is determined using the prevailing market rates where the district court is

2   located.  *Schwarz v. Sec'y of Health & Hum. Servs.*, 73 F.3d 895, 906 (9th Cir. 1995) (citation

3   omitted).[2]  NBC asks the Court to set an hourly rate of $845.75 for attorney Mr. Grossman, $663.00

4   for Mr. Todd, $556.00 for Ms. Kahn, respectively, and $320.00 for paralegals Ms. Pettigrew and Ms.

5   Brandi.[3]  Grossman Decl. ¶¶ 16–21, Ex. B.  In determining the reasonableness of the hourly rate, the

6   Court may "rely[ ] on [its] own knowledge of customary rates and [its] experience concerning

7   reasonable and proper fees."  *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011).  The Court  is

8   familiar with the hourly rates of attorneys in Los Angeles and finds these rates reasonable given the

9   years of experience and qualifications of counsel and the paralegals.  *See* Grossman Decl. ¶¶ 22–24,

10  Ex. C.

11         Multiplying the 818.2 hours reasonably spent by the reasonable hourly rate for each attorney

12  and paralegal in the Los Angeles area, the Court calculates the lodestar as follows:

| Attorney or Paralegal | Hourly Rate | Hours Billed | Total (Hourly Rate x Hours Billed) |
|---|---|---|---|
| Grossman | $845.75 | 221.9 | $187,671.92 |
| Todd | $663.00 | 497.7 | $329,975.10 |
| Hahn | $556.00 | 48.6 | $27,027.60 |
| Pettigrew | $320.00 | 20.2 | $6,464.00 |
| White | $320.00 | 29.8 | $9,536.00 |
|  |  |  |  |
| TOTAL |  |  | $560,674.62 |

---

[2] When a lawsuit—such as this one—was initially filed in another venue and later transferred, a court need not base the reasonable hourly rate on the fees in the initial district. *Schwarz*, 73 F.3d at 907.

[3] Because the majority of the work was completed in 2024, the Court will use the 2024 hourly rates as the average rate.

1    Providence contends that NBC's requested attorneys' fees are inflated and unreasonable for

2    several reasons.  First, Providence argues that NBC engaged in extensive block billing.  *See*

3    Opposition at 17.  According to Providence, nearly all of NBC's time entries are block billed.  Block

4    billing "makes it more difficult to determine how much time was spent on particular activities," and

5    district courts may reduce such entries to prevent potential overbilling.  *Harolds Stores, Inc. v.*

6    *Dillard Dep't Stores, Inc.*, 82 F.3d 1533, 1554 n.15 (10th Cir. 1996).  Upon review, the Court agrees

7    that a significant portion of NBC's time entries were in fact block billed.  Providence estimates that

8    block billing accounts for approximately $82,395 of the requested fees.  Opposition at 18.

9    Accordingly, the Court imposes a 20% across-the-board reduction to those entries to account for the

10   inefficiencies and lack of transparency associated with block billing.  *See Lahiri v. Universal Music*

11   *& Video Distrib. Corp.*, 606 F.3d 1216, 1223–23 (9th Cir. 2010) ("The district court identified

12   attorneys and paralegals who *1223  were primarily responsible for block billing, and reduced 80%

13   of their billable hours by 30%.").

14   Providence next argues that $13,800 in NBC's billing entries are redacted and must be

15   reduced.  *See* Opposition at 18-19.  The Court agrees that NBC's billing records are heavily

16   redacted, as is evident upon review.  The extent of redactions prevents the Court from fully assessing

17   the reasonableness of certain time entries.  Accordingly, the Court applies an additional 5% across-

18   the-board reduction due to the redactions.  The court notes that a five-percent reduction is a

19   conservative estimate given the excessive redactions.

20   Providence also seeks reductions for time entries related to ministerial or clerical work, intra-

21   office conferences, and vague descriptions.  Opposition at 19-20.  The Court declines to make

22   further adjustments on these bases.  The clerical work cited by Providence appears to involve

23   discovery and filing tasks—activities reasonably billed in litigation.  *Id.*  Intra-office conferences

24   were minimal, and Providence does not argue that the associated fees were excessive or unnecessary.

25   As to vague time entries, that concern is already accounted for in the Court's block billing and

26   redaction-related reductions.

27   Finally, Providence contends that time billed for expert discovery and briefing on the motion

28   to compel was excessive, unnecessary, or duplicative.  *See* Opposition at 20.  The Court disagrees.

9

1    Participation in expert discovery is a routine part of litigation, and NBC was entitled to retain experts

2    even if it ultimately did not rely on them.  Additionally, the motion to compel was fully briefed and

3    adjudicated; there is no basis to exclude this work from the fee calculation.

4        In sum, the Court reduces NBC's request for attorneys' fees for block billing and for redacted

5    entries by 25%.

6    **V.        CONCLUSION**

7        For the foregoing reasons, the Court grants the Motion and awards Defendant NBC Universal

8    Media, LLC attorneys' fees in the amount of $420,505.96.

9

10

11    Dated: June 18, 2025

12                                    Hernán D. Vera
                                      United States District Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28